ATTACHMENT 7

IN THE MATTER OF:                          Subpoena No. CHMK-2025-1
MARK MCNULTY v.
NORTHWESTERN MUTUAL                         EEOC Charge No. 443-20252-01752

## PETITION TO REVOKE SUBPOENA NO. CHMK-2025-1
## OR ALTERNATIVELY PETITION TO MODIFY THE SUBPOENA

Pursuant to 29 C.F.R. § 1601.16(b), The Northwestern Mutual Life Insurance Company ("Northwestern Mutual") submits this petition to revoke the subpoena issued by the EEOC in this action, Subpoena No. CHMK-2025 (attached as Exhibit 1), and in the alternative, petitions to modify the subpoena to conform to the grounds and objections recited in this petition.

### Introduction

For the past 168 years, Northwestern Mutual has earned the respect and admiration of the general public, the Milwaukee community, its policyowners, its multiple regulators, and its peers, by adhering to the highest standards of conduct. Northwestern Mutual understands its unflagging obligations not only as a financial services company and employer, but also as a corporate citizen.

Among these obligations is a duty to ensure the company deters – through lawful, proactive methods and policies – the potential for unlawful discrimination against underrepresented segments of protected classes under state and federal employment law. Northwestern Mutual understands, moreover, that its legal and moral obligation to guard against such discrimination also serves important business objectives.  Northwestern Mutual knows, and best practices and earned wisdom in the business community confirms, that a diverse and inclusive workforce and salesforce drives growth and success.  For these reasons, Northwestern

Mutual has been and will continue to be a vocal advocate for employing all lawful and proactive efforts necessary to promote a diverse and inclusive enterprise, to strengthen a culture of belonging, and to deter unlawful discrimination wherever it may rear its ugly head.

Northwestern Mutual is equally vigilant in ensuring that its efforts to deter unlawful discrimination against underrepresented segments of protected classes does not result in unlawful discrimination against the majority members of those classes. Northwestern Mutual employs seasoned professionals charged with the responsibility of ensuring that only lawful diversity and inclusion measures are pursued, carefully monitoring the evolving legal and administrative landscape to ensure any necessary modifications or refinements are made to these policies and initiatives. As a result of these efforts, Northwestern Mutual is confident it has always charted a lawful course in furtherance of its diversity and inclusion principles and goals.

Notwithstanding a corporate reputation and established track record that are beyond reproach, Northwestern Mutual is confronted with a Title VII claim asserted by an employee who is dissatisfied with his professional advancement in the company, and who has chosen to blame everyone but himself for his lot in life. Although he has been informed early and often that he has not demonstrated the skills necessary to assume the higher leadership role to which he aspires – *a message conveyed to him long before the onset of the allegedly discriminatory treatment he now claims to have suffered* – Mark McNulty claims he has been passed over by lesser qualified female colleagues based on gender, rather than merit. McNulty also inexplicably tosses allegations of race, color, and national origin discrimination into the mix, despite pointing to two white female colleagues and one white male colleague as evidence of the purportedly unlawful preferences that supposedly have precluded his advancement.

Although the weak (indeed, spurious) nature of McNulty's underlying discrimination claim does not dictate the scope of the EEOC's right to access information in an investigation,

the unexplained assertion by the investigator responsible for this investigation that his concerns "obviously" extend beyond McNulty's discrimination claim is particularly alarming here. If McNulty's claim is not the source of the EEOC's unexplained "concerns," this reasonably begs the question, "What *is* the impetus for this intrusive, expansive, and factually unwarranted investigation?" Despite repeated efforts to get an answer to this basic question, the EEOC investigative team has steadfastly refused to provide one. In any event, the subpoena propounded by the EEOC is improper, for multiple reasons.

First, the twenty-one requests for information propounded by the EEOC *before* the issuance of the subpoena that is the subject of this petition, have been reasserted by the EEOC in the subpoena itself without any meaningful modifications in response to the legitimate, substantial objections and concerns conveyed by Northwestern Mutual during the parties' pre-subpoena meet-and-confer discussions. While nearly all of these twenty-one requests would be inappropriate under *any* circumstances, the transparently improper motive and purpose of these requests (as well as the investigation prompting these requests) renders the unlawful scope of this subpoena particularly troubling.

Second, the subpoena is the obvious byproduct of an unlawful presidential Executive Order promulgated on January 21, 2025, issued for the express purpose of reversing decades of EEOC interpretations and opinions concerning public and private diversity and inclusion efforts that had been deemed perfectly lawful under Title VII, and now demanding that the EEOC initiate investigations and proceedings challenging those erstwhile approved employment practices as suddenly *unlawful* under Title VII. Executive Order 14173, titled "*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*," revoked multiple Executive Orders issued by previous administrations seeking to deter unlawful discrimination. Further, Executive Order 14173 included a sweeping mandate to "terminate all 'diversity,' 'equity,' 'equitable

decision-making,' 'equitable deployment of financial and technical assistance,' 'advancing equity,' and like mandates, requirements, programs, or activities, as appropriate." *Id.* at § 3(a)(i)-(iii), § 3(b)(i), and § 3(c)(iii).  What qualifies as "dangerous, demeaning, and immoral race- and sex-based preferences under the guise of so-called 'diversity, equity, and inclusion'" is never defined in the Executive Order, apparently operating under the principle that the EEOC is expected to "know it when it sees it."

Significantly, this January 21, 2025 Executive Order specifically commanded all agencies of the United States government (including the EEOC) to identify targets for enforcement actions to eradicate the "most egregious and discriminatory DEI practitioners" and to take "steps or measures to deter DEI programs or principles" now deemed unlawful by the new administration.  *Id.* at § 4. Each federal agency – including the EEOC – has been ordered to identify nine targets for EEOC investigations into purportedly unlawful "DEI programs."  *Id.* at § 4(b)(iii).  This presidential fiat to "round up the usual suspects," rather than allowing statutorily required sworn claims to dictate whether and against whom an EEOC investigation will be pursued, is equally problematic.

Third, well aware that Section 713 of Title VII provides a safe harbor for employers who have pursued practices "in good faith, in conformity with, and in reliance on any written interpretation or opinion of the Commission," shortly after the January 20, 2025 inauguration, the EEOC promulgated a slew of new pronouncements warning that the very "DEI" practices that the EEOC had endorsed in the past (and in some instances demanded) were now considered unlawful, such as mentoring programs and efforts to ensure diverse hiring slates to prevent unlawful discrimination against underrepresented protected classes.  *See, e.g.*, "*What You Should Know About DEI-Related Discrimination at Work.*"

Further, prior "written interpretations and opinions" of the EEOC that had been issued before January 20, 2025 were branded with warning labels on the EEOC's website advising that these prior written interpretations and opinions concerning Title VII no longer reflected the considered opinion of the EEOC. *See, e.g.*, "*A Message from EEOC Chair Charlotte A. Burros on Expanding Opportunity for All, January 2021-January 2025.*"[1] Employers visiting the EEOC's official website now are confronted with a blue banner disclaiming the contents of the pronouncement and its embedded links:



***

*Id.* While it is the EEOC's prerogative to supplant its prior written interpretations and opinions with new ones pronouncing the opposite, it is grossly inappropriate (and unlawful under Section 713) for the EEOC to take legal action against employers who followed employment practices

---

[1] *See* EEOC Website, https://www.eeoc.gov/wysk/message-eeoc-chair-charlotte-burrows-expanding-opportunity-all-january-2021-january-2025.

that this *same* EEOC (albeit under prior administrations) had deemed lawful – and, indeed, laudable. Yet that is precisely what appears to be happening here.

Fourth, this investigation not only is an afront to Section 713, but also is violative of core principles of Due Process, and the exercise of First Amendment rights in the United States. Under the auspices of a garden variety Title VII complaint from an employee who claims his aspirations for promotion have been unfairly derailed in favor of purportedly lesser qualified female colleagues, the EEOC has instituted an investigation into a broad array of issues, programs, and initiatives that do not have even a tenuous relationship with the specific instances of purportedly discriminatory conduct that the employee, Mark McNulty, has asserted against his employer. Significantly, moreover, the EEOC is proceeding with its examination into company diversity and inclusion initiatives that have no bearing on McNulty's discrimination claim even after receiving the company's position statement, which forcefully refutes McNulty's core allegations, and is replete with contemporaneous documentary corroboration of the company's response. Again, this is because the EEOC's "obvious" (though unarticulated) concerns have nothing to do with McNulty's sworn claim of discrimination.

Fifth, the EEOC has launched this investigation into Northwestern Mutual's employment practices (and well beyond) without the requisite, written charge of discrimination setting forth sworn facts providing the basis for the investigation. No EEOC investigation can be commenced without a corresponding written charge of discrimination setting forth specific "*facts*," asserted under "*oath*," that empower and justify the EEOC's investigation. Worse still, when asked to remedy this deficiency by identifying the particular "Diversity & Inclusion" policies being investigated as potentially unlawful, the EEOC has refused to do so, even on an informal basis. Since the EEOC is charged with the responsibility of ensuring employers do not violate Title

VII, it is remarkable the agency would refuse to apprise an employer of the employment practices it deems to be unlawful.

Northwestern Mutual has done nothing unlawful, and has repeatedly asked the EEOC to identify the basis for its "obvious" concerns about potentially unlawful employment practices by Northwestern Mutual so that the company can evaluate the EEOC's concerns, respond, and defend itself. The EEOC's refusal to do so betrays the bad faith impetus for this investigation. Northwestern Mutual has a right to know why it is being commanded to produce a vast array of documents, data, and executive testimony that have no nexus to the specific, adverse employment decisions Mark McNulty is challenging as unlawfully discriminatory. The Congressionally mandated vehicle for doing so is a sworn charge of discrimination that sets forth those basic facts.

For each of these reasons, and based on the specific, additional objections set forth in this petition, Northwestern Mutual objects to the subpoena, and the investigation itself.

<u>**Categorical Grounds and Objections Directed to**</u>

<u>**Each Request for Information and the Request for Interview**</u>

The following grounds and objections apply to each of the requests for information set forth in the subject subpoena (Exhibit 1), referred to collectively as the "Categorical Grounds and Objections":

1. *Bad Faith Investigation*. This investigation, the preceding requests for information, and the subpoena that is the subject of this petition are being pursued for improper purposes and in bad faith by attempting to (a) evade the statutory prerequisites for commencing an investigation into a purported pattern and practice of discriminatory conduct in violation of Title VII; and (b) deprive Northwestern Mutual of its rights under 42 U.S.C. § 2000e-12(b)(1) to rely on historic EEOC written opinions and interpretations of conduct that the

EEOC had deemed lawful at all times material to Mark McNulty's charge of discrimination. Even if an investigation were prompted by an otherwise valid discrimination charge, a "district court could refuse to enforce [an EEOC] subpoena if the EEOC acted in bad faith in its investigation" of the respondent, because "'a court may not permit its process to be abused.'" *E.E.O.C. v. Michael Const. Co*., 706 F.2d 244, 250 (8th Cir. 1983) (*quoting U.S. v. Powell*, 379 U.S. 48, 58 (1964)). *See also University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 191 (1990) (EEOC subpoena issued for an "illegitimate purpose" will not be enforced); and *E.E.O.C. v. Quad/Graphics, Inc.*, 63 F.3d 642, 645 (7th Cir. 1995) (same).

2. *Exceeds EEOC Authority*. This investigation, the preceding requests for information, and the subpoena that is the subject of this petition exceed the authority of the EEOC because: (a) there is no valid charge of a pattern and practice of unlawful discrimination supported by a sworn statement of *facts*; (b) the EEOC has refused to divulge its factual grounds for pursuing this investigation (*i.e*., by divulging the requisite, specific facts that must be set forth within a valid, sworn charge of discrimination, asserted under oath); and (c) the EEOC has refused to articulate any specific employment practices that give rise to its concerns about a potential pattern and practice of discrimination in violation of Title VII (instead merely pointing to McNulty's reference to his *speculative* "belief" that *undisclosed* elements of a wholly *undefined* company "Diversity & Inclusion policy" has prevented his promotion). *See* June 4, 2025 Heaton Correspondence to Benjamin Lidholm (Exhibit 2); June 11, 2025 email correspondence from Lidholm to Rebeca López (Exhibit 3); June 13, 2025 email correspondence from Heaton to Lidholm (Exhibit 4); June 19, 2025 email correspondence from Heaton to Lidholm (Exhibit 5); June 23, 2025 email correspondence from López to Lidholm (Exhibit 5); and June 27, 2025 email

correspondence from Lidholm to López (Exhibit 5). Northwestern Mutual incorporates by reference the contents of Exhibits 2 through 5 in support of its Categorical Grounds and Objections. Neither Northwestern Mutual nor a reviewing court can determine the potential relevancy of these requests for information (much less evaluate their burdensomeness under the proportionality standards of Rule 26) absent specific facts identifying the employment practices under review.

3. *Section 713 Bars These Proceedings.* Based on Mark McNulty's prior complaints preceding the filing of his charge of discrimination, it is apparent these proceedings seek to challenge employment practices that have been undertaken in good faith reliance upon historic, written interpretations and opinions by the EEOC that the current administration no longer endorses. The EEOC has been provided with these criticisms and company materials referenced by McNulty in response to the requests for information, and (though the EEOC investigative team declined to confirm that fact), the EEOC almost certainly had been provided with copies of these written criticisms *before* Northwestern Mutual ever was apprised of McNulty's discrimination charge. McNulty's pre-charge criticisms are the only logical source of the EEOC's "obvious" concerns. Accordingly, these proceedings are barred by the express terms of 42 U.S.C. § 2000e-12(b)(1).

4. *Unlawful Executive Order No. 14173.* The EEOC's decision to launch a pattern and practice investigation without the requisite, sworn written charge of discrimination supporting that investigation, coupled with its refusal to divulge the factual basis for its investigation and its unexplained pronouncement that this dispute is not "eligible" for mediation, reveal the improper impetus for this investigation and the ensuing, disproportionately burdensome requests for information. *See* January 31, 2025 Executive Order No. 14173, titled, "*Ending Illegal Discrimination and Restoring Merit-Based*

*Opportunity*" (attached as Exhibit 6). *See also Perkins Coie LLP v. U.S. Dep't of Justice*, No. CV 25-716, 2025 WL 1276857 (D.D.C. May 2, 2025).  These proceedings exceed the EEOC's statutory authority, as proceedings instituted in furtherance of Executive Order No. 14173 (which reverse decades of EEOC pronouncements) are barred by the provisions of 42 U.S.C. § 2000e-12(b)(1) (which creates a bullwork against suffering the consequences of the vagaries of changing interpretations by the EEOC).[2]

5. *First Amendment Violation*.  Based upon the preceding improprieties, illegalities, and anomalies, this investigation, the EEOC's propounded requests for information, and the subpoena that is the subject of this petition have been initiated and pursued in furtherance of an unlawful and unconstitutional effort to infringe upon Northwestern Mutual's rights under the First Amendment to the United States Constitution.  Northwestern Mutual has conducted itself lawfully at all times, and looks forward to the opportunity to demonstrate this fact once it has been favored with the factual basis for the pattern and practice investigation that has been launched.  Northwestern Mutual's full-throated support for

---

[2] During the June 12, 2025 meet-and-confer discussion, Northwestern Mutual repeated its willingness to engage in discussions with the EEOC to address and attempt to resolve the source of the EEOC's unarticulated "concerns" about the company's employment practices, noting that the logical starting point would be for the EEOC to identify the purported policies or practices giving rise to its "concerns."  Northwestern Mutual's counsel emphasized that the EEOC and the respondent had a mutual interest in ensuring that the latter's employment practices were consistent with the company's obligations under Title VII, and that a direct discussion between the EEOC and the respondent was the most direct and timely path to ensuring any potentially unlawful employment practices were terminated. However, the EEOC team refused to disclose the employment practices prompting its "concerns" about potential, systemic violations of Title VII, providing no explanation for its refusal.  Such a refusal to engage in discussions and potential conciliation is antithetical to the EEOC's responsibility to attempt to end allegedly unlawful conduct.  As Northwestern Mutual conveyed during the meet-and-confer conference, direct discussions about the specific diversity and inclusion practices or programs prompting the EEOC's concerns would have resulted in one of three outcomes: (1) Northwestern Mutual would convince the EEOC that it had misapprehended the company's policy or that the company's policy actually was lawful; (2) the EEOC would convince Northwestern Mutual that its policy was unlawful and the company would agree to cease and desist; or (3) the parties would agree to disagree and resolve their differences in court.  The EEOC's refusal to apprise Northwestern Mutual of the specific employment practice prompting its "concerns" through a valid, sworn charge of systemic discrimination, coupled with its refusal to identify and discuss the source of its concerns, underscores the importance of initiating an investigation based on a sworn charge of discrimination outlining the *facts* giving rise to the charges.  While McNulty's sworn charge (however meritless) supports his individual claim of discrimination (he claims he was denied advancement to a Vice President position and less qualified women were promoted over him and he also claimed retaliation), there is *no* such sworn statement of "facts" warranting the EEOC's pattern and practice investigation.

*lawful* proactive efforts to ensure underrepresented members of protected classes are not

*unlawfully* left behind is a viewpoint that Executive Order No. 14173 condemns, and will

not tolerate. *See, e.g.*, *Perkins Coie LLP, supra.* These proceedings seek to quelch the

company's viewpoint, and as such, run afoul of the Constitution.

### Additional Objections to Specific Requests

### Request to Interview Amy Hanneman

[T]he Commission requests to interview Amy Hanneman, Vice President of Diversity and Inclusion. The Commission requests she be made available for video interview on July 30, 2025, at 9:00am Central Time.

### Objections and Response to Request for Interview

In addition to relying upon its Categorical Grounds and Objections, Northwestern Mutual

reiterates its previously asserted objections and response to this request for an interview, as set

forth in its June 4, 2025 correspondence to the EEOC. *See* Exhibit 2 at p. 17.

### Document and Data Requests

1. **Request No. 1** – An electronic database of employees in Respondent's Enterprise Compliance Department, and all employees with any compliance responsibility for Northwestern Mutual Investment Services, LLC, Northwestern Mutual Wealth Management Company, Northwestern Mutual Series Fund, including for each employee:

      a.     Name
      b.     Address
      c.     Home phone number
      d.     Cell phone number
      e.     Email
      f.     Current job title
      g.     Any previous job titles during the relevant time period and the date placed in each such job
      h.     Date of hire
      i.     Date of separation and reasons for separation, if applicable
      j.     Race
      k.     Sex
      l.     National origin

**Objections and Response to Data/Document Request No. 1**: In addition to relying

upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously

asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to

the EEOC.  *See* Exhibit 2 at p. 7.  Further, Northwestern Mutual objects to this request as unduly

burdensome and outside the bounds of disclosure based upon the proportionality standards of

Fed. R. Civ. P. 26.

Subject to the objections previously asserted, as supplemented by this petition,

Northwestern Mutual refers the EEOC to the previously produced information responsive to this

request.  *See* McNULTY-EEOC-PROD-000174.

2.      **Request No. 2** – An organizational chart or other document sufficient to show the
reporting hierarchy in Respondent's Enterprise Compliance Department and the reporting hierarchy
for any employee with compliance responsibility for Northwestern Mutual Investment Services,
LLC, Northwestern Mutual Wealth Management Company, Northwestern Mutual Series Fund,
including documents sufficient to illustrate where the Enterprise AML Officer, Senior Directors
and Vice President fit in the reporting hierarchy.

**Objections and Response to Data/Document Request No. 2**: In addition to relying

upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously

asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to

the EEOC.  *See* Exhibit 2 at p. 7.  Subject to and limited by the objections previously asserted, as

supplemented by this petition, Northwestern Mutual refers the EEOC to the previously produced

information responsive to this request.  *See* McNULTY-EEOC-PROD-000175-189.

3.      **Request No. 3** – Job descriptions or other documents sufficient to show the
responsibilities and selection criteria for the following positions: Department Head for Enterprise
Compliance, Senior Directors in Compliance, NMIS CCO, and WMC CCO.

**Objections and Response to Data/Document Request No. 3**: In addition to relying upon

its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously asserted

objections and response to this request, as set forth in its June 4, 2025 correspondence to the EEOC.

*See* Exhibit 2 at p. 7.

Subject to and limited by the objections previously asserted, as supplemented by this petition, Northwestern Mutual refers the EEOC to the previously produced information responsive to this request. *See* McNULTY-EEOC-PROD-000846-900.

4.  **Request No. 4** – A copy of the personnel file for Charging Party, including all performance reviews.

**Objections and Response to Data/Document Request No. 4**: In addition to relying upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to the EEOC. *See* Exhibit 2 at p. 8.

Subject to and limited by the objections previously asserted, as supplemented by this petition, Northwestern Mutual refers the EEOC to the previously produced information responsive to this request. *See* McNULTY-EEOC-PROD-000119-125, 131-134, 313-691.

5.  **Request No. 5** – A copy of the personnel file (excluding leave and benefits information) for the following employees, including documents sufficient to show the race, national origin, and sex of each employee: Jamie Pulsfus (Senior Director promoted to Vice President), Sarah Brach (Senior Director), Paula Storniolo (Senior Director); Jonathan Viard (Senior Director); Nicole Lund (Senior Director promoted to NMIS CCO); Jeff Schloemer (VP, promoted to WMO CCO); Mike Commey [sic] (Vice President); Laila Valters (decisionmaker on promotion); Ray Manista (Chief Legal and Public Affairs Officer); Rebecca Villegas (VP - Enterprise Compliance).

**Objections and Response to Data/Document Request No. 5**: In addition to relying upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to the EEOC. *See* Exhibit 2 at p. 8.

During the meet-and-confer discussions, the EEOC put forward no basis whatsoever for seeking such sensitive, confidential information for any of these identified employees and executives beyond the two individuals believed to be the individuals McNulty is referencing as

achieving promotions at his expense (Pulsfus and Lund). The requests related to these individuals are patently improper.

In an effort to compromise, Northwestern Mutual previously agreed to produce performance reviews for Ms. Lund, Ms. Pulsfus, and Mr. Schloemer (a white male executive who was promoted at the same time as Ms. Lund), so long as the EEOC agreed not to disclose the contents of these files to McNulty. Rather than giving those assurances, the EEOC specifically stated in writing that it reserved the "right" to do so as deemed appropriate to further its investigation. This response to Northwestern Mutual's legitimate efforts to protect its employees from a gross invasion of their right to privacy and confidentiality by avoiding scrutiny of their personnel files by their colleague (McNulty) further evidences the bad faith in play here.

Northwestern Mutual withdraws its effort to compromise, and objects entirely to the production of these materials. The request is unlimited in time or content, nor has the EEOC put forward any basis or rationale for its production. Compliance with this request would impose an unacceptable burden upon Northwestern Mutual, inasmuch as it would expose its employees and executives to the scrutiny of their personnel files by a colleague who harbors animus and ill-will against them. Such consequences would engender distrust, discord, and unacceptable distractions in the work force, creating a burden wholly disproportionate to whatever marginal relevance the data otherwise would hold. Moreover, for the reasons that follow, the requested materials are not properly subject to disclosure in any event.

Here, the EEOC should not be permitted to access these materials (even with appropriate provisions to protect the confidentiality and privacy vis-à-vis McNulty), since none of these individuals are valid comparators for McNulty. McNulty was informed – long before the purportedly unlawful acts of discrimination were allegedly perpetrated against him beginning in June 2020 – that he simply was not qualified for the vice president position to which he aspired.

McNulty was told he did not demonstrate the soft skills required for such a position at Northwestern Mutual, lacking the judgment, perspicuity, and proactivity demanded of Northwestern Mutual vice presidents. These messages were repeated over the years during annual performance reviews, supported by year-end feedback gathered in furtherance of these annual reviews. The EEOC has been provided with these performance reviews and year-end feedback along with McNulty's personnel files, and thus is aware of this point. *See* McNULTY-EEOC-PROD-000100-101, 111-113, 119-125, 131-134, 313-691. Indeed, this point was highlighted in Northwestern Mutual's position statement in response to McNulty's charges, supported by contemporaneous reviews and written feedback. Seventh Circuit precedent permits Northwestern Mutual to rely upon these evaluations in declining to promote McNulty, precluding Pulsfus, Lund, Schloemer, or any other vice president serving as a valid comparator.

For each of the reasons set forth in the company's position statement, McNulty was not qualified for the promotions he sought (rendering material that *already* falls outside the scope of reasonable disclosure an even *less worthy* candidate for disclosure), nor could any prudent and conscientious employer turn these records over to a governmental agency announcing its intention and reserved "right" to share the content of these sensitive materials with McNulty.

6. **Request No. 6** – All of the feedback solicited or received regarding Charging Party, Nicole Lund, and Jeff Schloemer, including feedback from colleagues, direct reports and client constituents.

**Objections and Response to Data/Document Request No. 6**: In addition to relying upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to the EEOC. *See* Exhibit 2 at pp. 9. Northwestern Mutual previously produced responsive information concerning the Charging Party (Mark McNulty). *See* McNULTY-EEOC-PROD-000100-101, 111-113, 692-714.

Northwestern Mutual objects to this request, however, to the extent encompassing Ms. Lund and Mr. Schloemer.

In an effort to compromise, Northwestern Mutual previously agreed to produce such year-end performance feedback concerning Ms. Lund and Mr. Schloemer, so long as the EEOC agreed not to disclose the contents of these materials to McNulty. Rather than giving those assurances, the EEOC specifically stated in writing that it reserved the "right" to do so as deemed appropriate to further its investigation. This response to Northwestern Mutual's legitimate efforts to protect its employees from a gross invasion of their right to privacy and confidentiality by avoiding scrutiny of their personnel files by their colleague (McNulty) further evidences the bad faith in play here.

Northwestern Mutual withdraws its effort to compromise, and objects entirely to the production of these materials. The request is unlimited in time or content, nor has the EEOC put forward any basis or rationale for its production. Compliance with this request would impose an unacceptable burden upon Northwestern Mutual, inasmuch as it would expose its employees and executives to the scrutiny of their personnel files by a colleague harbors animus and ill-will against them. Such consequences would engender distrust, discord, and unacceptable distractions in the work force, creating a burden wholly disproportionate to whatever marginal relevance the data otherwise would hold. Moreover, for the reasons that follow, the requested materials are not properly subject to disclosure in any event.

Here, the EEOC should not be permitted to access these materials (even with appropriate provisions to protect the confidentiality and privacy vis-à-vis McNulty), since neither of these individuals are valid comparators for McNulty. McNulty was informed – long before the purportedly unlawful acts of discrimination were allegedly perpetrated against him beginning in June 2020 – that he simply was not qualified for the vice president position to which he aspired.

McNulty was told he did not demonstrate the soft skills required for such a position at Northwestern Mutual, lacking the judgment, perspicuity, and proactivity demanded of Northwestern Mutual vice presidents. These messages were repeated over the years during annual performance reviews, supported by year-end feedback gathered in furtherance of these annual reviews. The EEOC has been provided with these performance reviews and year-end feedback along with McNulty's personnel files, and thus is aware of this point. *See* McNULTY-EEOC-PROD-000100-101, 111-113, 119-125, 131-134, 313-691. Indeed, this point was highlighted in Northwestern Mutual's position statement in response to McNulty's charges, supported by contemporaneous reviews and written feedback. Seventh Circuit precedent permits Northwestern Mutual to rely upon these evaluations in declining to promote McNulty, precluding Lund, Schloemer, or any other vice president serving as a valid comparator.

For each of the reasons set forth in the company's position statement, McNulty was not qualified for the promotions he sought (rendering material that *already* falls outside the scope of reasonable disclosure an even *less worthy* candidate for disclosure), nor could any prudent and conscientious employer turn these records over to a governmental agency announcing its intention and reserved "right" to share the content of these sensitive materials with McNulty.

Further, Northwestern Mutual objects to this request as unduly burdensome and outside the bounds of disclosure based upon the proportionality standards of Fed. R. Civ. P. 26.

7. **Request No. 7** – All interview notes, investigation materials, communications (including e- mail among the investigative personnel or management, with the Charging Party and with witnesses and decisionmakers), summaries, and analysis of Charging Party's complaints of discrimination including any documents reflecting any actions taken as a result of such complaints, including all documents related to Charging Party's complaints regarding a 2020 Career Distribution presentation and all documents or analysis that Respondent relied upon in sending its e-mail to Charging Party stating that "NM does not believe its Diversity & Inclusion goals are in violation of Title VII."

**Objections and Response to Data/Document Request No. 7**: In addition to relying upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously

asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to the EEOC. *See* Exhibit 2 at pp. 9-10. Further, Northwestern Mutual objects to this request as unduly burdensome and outside the bounds of disclosure based upon the proportionality standards of Fed. R. Civ. P. 26.

Subject to and limited by the objections previously asserted, as supplemented by this petition, Northwestern Mutual refers the EEOC to the previously produced information responsive to this request. *See* McNULTY-EEOC-PROD-000715-845.

8.     **Request No. 8** – A copy of any affirmative action plans that exist or existed during the relevant period.

**Objections and Response to Data/Document Request No. 8**: In addition to relying upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to the EEOC. *See* Exhibit 2 at p. 10.

9.     **Request No. 9** – Any documents showing any analysis that Respondent relied upon to develop its Diversity & Inclusion policies or programs, including any analysis that shows that Respondent had engaged in past discrimination or any other basis that Respondent believes supports favoring employees of a certain race, sex, national origin, or sexual orientation.

**Objections and Response to Data/Document Request No. 9**: In addition to relying upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to the EEOC. *See* Exhibit 2 at pp. 10-11. Further, the meaning and scope of the phrase "Diversity & Inclusion policies or programs" is too indefinite to formulate a response. Finally, Northwestern Mutual objects to this request as unduly burdensome and outside the bounds of disclosure based upon the proportionality standards of Fed. R. Civ. P. 26.

10.     **Request No. 10** – Any documents showing any complaints made to Respondent from any employee, contractor or other individual or any person or entity representing such individuals or speaking on behalf of them regarding Respondent's Diversity & Inclusion policies

or training or any employment opportunity (including employee training, compensation or new business support) awarded or offered on the basis of diversity & inclusion.

**Objections and Response to Data/Document Request No. 10**: In addition to relying upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to the EEOC. *See* Exhibit 2 at pp. 11-12. Further, the meaning and scope of the phrases "Respondent's Diversity & Inclusion policies" and "on the basis of diversity & inclusion" are too indefinite to formulate a response. Finally, Northwestern Mutual objects to this request as unduly burdensome and outside the bounds of disclosure based upon the proportionality standards of Fed. R. Civ. P. 26.

11. **Request No. 11** – Documents sufficient to show all training offered to any employees from January 2022 to the present where race, national origin, sex, or sexual orientation is any sort of criteria or consideration for participation including "Field Diversity & Inclusion Early Career Advisor Programs," which were described as follows in an email to Charging Party:

> Early Career Connections (Asian, Black, Hispanic, two or more races) Supplemental training and community-building curriculum for individuals who identify as Hispanic, Asian, Black/African American, or two or more races advisors. Includes both in-person events and virtual meetings featuring field experts with opportunities for Q&A.
>
> LGBTQ+ Study Group Professionally facilitated small group support for LGBTQ+ advisors with emphasis on increasing productivity and building community alongside access to experienced mentors working in LGBTQ+ markets.
>
> 3Rising Woman Program Supplemental training and small group support for woman advisors, focused on creating community, enhancing performance, and driving retention of women.

**Objections and Response to Data/Document Request No. 11**: In addition to relying upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously

asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to the EEOC. *See* Exhibit 2 at p. 12.

Further, this request directed to the recruiting, development, and retention of independent contractor financial advisors patently exceeds the investigatory authority of the EEOC and is patently irrelevant to McNulty's sworn charge of discrimination.

Finally, Northwestern Mutual objects to this request as unduly burdensome and outside the bounds of disclosure based upon the proportionality standards of Fed. R. Civ. P. 26.

12. **Request No. 12** – An electronic database of all the employees who participated in any of the training offered from January 2022 to the present where race, national origin, sex or sexual orientation was a criteria or consideration for participation including the "Field Diversity & Inclusion Early Career Advisor Programs," including for each employee who participated:

      a.     Name
      b.     Address
      c.     Home phone number
      d.     Cell phone number
      e.     Email
      f.     Current job title
      g.     Any previous job titles during the relevant time period and the date
               placed in each such job
      h.     Date of hire
      i.     Date of separation and reasons for separation, if applicable
      j.     Race
      k.     National origin
      l.     Sex
      m.     Sexual orientation

**Objections and Response to Data/Document Request No. 12**: In addition to relying upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to the EEOC. *See* Exhibit 2 at pp. 12-13.

Further, this request directed to the training of independent contractor financial advisors patently exceeds the investigatory authority of the EEOC and is patently irrelevant to McNulty's sworn charge of discrimination.

Finally, Northwestern Mutual objects to this request as unduly burdensome and outside the bounds of disclosure based upon the proportionality standards of Fed. R. Civ. P. 26.

13. **Request No. 13** – Documents sufficient to identify any training comparable to the Field Diversity & Inclusion Early Career Advisor Programs taking place between January 2022 and the present that did not use race, national origin, sex or sexual orientation as a criteria or consideration for participation.

**Objections and Response to Data/Document Request No. 13**: In addition to relying upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to the EEOC. *See* Exhibit 2 at p. 13.

Further, this request directed to the training of independent contractor financial advisors patently exceeds the investigatory authority of the EEOC and is patently irrelevant to McNulty's sworn charge of discrimination.

Finally, Northwestern Mutual objects to this request as unduly burdensome and outside the bounds of disclosure based upon the proportionality standards of Fed. R. Civ. P. 26.

14. **Request No. 14** – An electronic database of the employees who participated in any training taking place between January 2022 and the present comparable to the Field Diversity & Inclusion Early Career Advisors Program that did not use race, national origin, sex or sexual orientation as a criteria or consideration for participation including, for each employee, the following information:

      a.      Name
      b.      Address
      c.      Home phone number
      d.      Cell phone number
      e.      Email
      f.      Current job title
      g.      Any previous job titles during the relevant time period and the date placed in each such job
      h.      Date of hire
      i.      Date of separation and reasons for separation, if applicable
      j.      Race
      k.      National origin
      l.      Sex

m.    Sexual orientation

**Objections and Response to Data/Document Request No. 14**: In addition to relying

upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously

asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to

the EEOC.  *See* Exhibit 2 at pp. 13-14.  Further, this request directed to the training of

independent contractor financial advisors patently exceeds the investigatory authority of the

EEOC and is patently irrelevant to McNulty's sworn charge of discrimination. Finally,

Northwestern Mutual objects to this request as unduly burdensome and outside the bounds of

disclosure based upon the proportionality standards of Fed. R. Civ. P. 26.

15.    **Request No. 15** – Northwestern Mutual D&I Report and any other reports or
summary documents dated between January 2022 and the present that consolidate information
about diversity and inclusion at Respondent.

**Objections and Response to Data/Document Request No. 15**: In addition to relying

upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously

asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to

the EEOC.  *See* Exhibit 2 at pp. 14-15.  Further, the reference to a "D&I Report" as well as the

meaning and scope of the phrase "diversity and inclusion" are too indefinite to formulate a

response. Finally, Northwestern Mutual objects to this request as unduly burdensome and outside

the bounds of disclosure based upon the proportionality standards of Fed. R. Civ. P. 26.

16.    **Request No. 16** – Documents that show the structure and function of Respondent's
Sustained Action for Racial Equity Initiative (described in more detail here Our Commitment to
Combat Racism and Inequality, a Message From Our CEO Northwestern Mutual and here
innv.northwesternmutual.com/blog/sare-generates-broad-impact-on-black- field-force-black-
communities), including, for the period January 2022 to the present, documents that show
Respondent's advisors who participated in the initiative (including documents that explain the
role of former CEO John Schlifske and current CEO Tim Gerend), any accomplishments or
reports from the initiative, the budget, and staffing and programs available to employees through
the initiative, including SARE's Next Level Mentoring Program, which provides mentors to
"emerging black talent."

**Objections and Response to Data/Document Request No. 16**: In addition to relying

upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously

asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to

the EEOC.  *See* Exhibit 2 at p. 14.  Further, because this request is not directed to any

employment practices or the factual grounds for McNulty's claim of discrimination, nor does the

requested information fall within the purview of the EEOC authority to investigate claims of

discrimination against employees, the request exceeds the investigatory authority of the EEOC

and is patently irrelevant to McNulty's sworn charge of discrimination. Finally, Northwestern

Mutual objects to this request as unduly burdensome and outside the bounds of disclosure based

upon the proportionality standards of Fed. R. Civ. P. 26.

17.     **Request No. 17** – Documents that relate to Respondent's strategy for "Pursuing
Diversity & Inclusion as a Growth Strategy," including, for the period January 2022 to the
present, all training provided to management or to Northwestern Mutual advisors regarding this
strategy, and any documents that show Respondent's analysis of customer preference regarding
working with advisors that share the same race, national origin, sex or sexual orientation of the
customer, and any documents showing how Respondent responded to any such customer
preference.

**Objections and Response to Data/Document Request No. 17**: In addition to relying

upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously

asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to

the EEOC.  *See* Exhibit 2 at p. 15.  Further, this request directed to the recruiting, development,

and retention of independent contractor financial advisors patently exceeds the investigatory

authority of the EEOC and is patently irrelevant to McNulty's sworn charge of discrimination.

Finally, Northwestern Mutual objects to this request as unduly burdensome and outside the

bounds of disclosure based upon the proportionality standards of Fed. R. Civ. P. 26.

18.     **Request No. 18** – An electronic database of recipients of Respondent's Diversity
& Inclusion Champion Award from January 2022 to the present and all documents showing the
nomination and selection process including the criteria that are used to select the recipients,
including for each recipient:

     a.    Name

b.      Address
c.      Home phone number
d.      Cell phone number
e.      Email
f.      Current job title
g.      Any previous job titles during the relevant time period and the date placed in each such job
h.      Date of hire
i.      Date of separation and reasons for separation, if applicable
j.      Race
k.      National origin
l.      Sex
m.      Sexual orientation
n.      Description of the basis for selection for the award
o.      Benefits received as a result of the award.

**Objections and Response to Data/Document Request No. 18**: In addition to relying upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to the EEOC.  *See* Exhibit 2 at p. 15.  Further, this request directed to the recruiting, development, and retention of independent contractor financial advisors patently exceeds the investigatory authority of the EEOC and is patently irrelevant to McNulty's sworn charge of discrimination.

19.      **Request No. 19** – Documents sufficient to identify the performance management system and/or human resource information system used by Respondent from January 2022 to the present and the various metrics tracked by the system, including documents sufficient to identify the systems used by Respondent to track Diversity & Inclusion progress and goals.

**Objections and Response to Data/Document Request No. 19**: In addition to relying upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to the EEOC.  *See* Exhibit 2 at pp. 15-16. Further, Northwestern Mutual objects to this request as unduly burdensome and outside the bounds of disclosure based upon the proportionality standards of Fed. R. Civ. P. 26.

20.      **Request No. 20** – An electronic database of each woman or person of color retained or promoted by any employee or manager for whom that employee or manager gets credit for or receives positive feedback in accord with Respondent's "Diversity & Inclusion

People Leader Toolkit" attached to Respondent's position statement as Ex. 27, from January 2022 to the present, which provides goals with suggested metrics including "promoting and implementing the development and advancement of women and people of color." For each such woman or person of color, provide the following and all documents showing the feedback received:

      a.     Name
      b.     Address
      c.     Home phone number
      d.     Cell phone number
      e.     Email
      f.     Current job title
      g.     Any previous job titles during the relevant time period and the date placed in each such job
      h.     Date of hire
      i.     Date of separation and reasons for separation, if applicable
      j.     Race
      k.     National origin
      l.     Sex
      m.     The names, race, national origin, sex and job titles of the other employees who applied for the promotion or opportunity that the employee identified in sub-part a received.

**Objections and Response to Data/Document Request No. 20**: In addition to relying upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to the EEOC. *See* Exhibit 2 at p. 16. Further, Northwestern Mutual objects to this request as unduly burdensome and outside the bounds of disclosure based upon the proportionality standards of Fed. R. Civ. P. 26.

    21.    **Request No. 21** – An electronic database listing each employee who received positive feedback, from January 2022 to the present, for sponsoring a "woman or a person of color who is not already on your team for promotion/new role/opportunity or increas[ing] their visibility with a special project that is reflected in their performance plan" in accord with Respondent's "Diversity & Inclusion People Leader Toolkit" attached to Respondent's position statement as Ex. 27, which provides goals with suggested metrics. For each such employee, provide the following information and all documents showing the feedback:

      a.     Name of employee who received the positive feedback
      b.     Address
      c.     Home phone number
      d.     Cell phone number
      e.     Email

f.       Current job title

g.      Any previous job titles during the relevant time period and the date placed in each such job

h.      Date of hire

i.       Date of separation and reasons for separation, if applicable

j.       Race

k.      National origin

l.       Sex

m.     The names of the employee who was sponsored, and their race, national original, sex and job title.

**Objections and Response to Data/Document Request No. 21**: In addition to relying upon its Categorical Grounds and Objections, Northwestern Mutual reiterates its previously asserted objections and response to this request, as set forth in its June 4, 2025 correspondence to the EEOC. *See* Exhibit 2 at pp. 16-17. Further, Northwestern Mutual objects to this request as unduly burdensome and outside the bounds of disclosure based upon the proportionality standards of Fed. R. Civ. P. 26.

Dated at Milwaukee, Wisconsin, this 3rd day of July, 2025.

GODFREY & KAHN, S.C.

By: _____

*Paul F. Heaton*

Paul F. Heaton
State Bar No. 1000858
Rebeca M. López
State Bar No. 1084842

Attorneys for Respondent, The Northwestern Mutual Life Insurance Company

<u>P.O. ADDRESS</u>:
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
Phone:  414-273-3500
Fax:  414-273-5198
pheaton@gklaw.com
rlopez@gklaw.com

# Exhibit 1

# UNITED STATES OF AMERICA

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# SUBPOENA

TO:   Timothy J. Gerend

Chairman, President, and Chief Executive Officer

Northwestern Mutual

720 East Wisconsin Ave.

Milwaukee, Wisconsin 53202

NO.   CHMK-2025-1

IN THE MATTER OF:
Mark McNulty v
Northwestern Mutual

Charge No. 443-2025-01752

Having failed to comply with previous request(s) made by or on behalf of the undersigned Commission official, YOU ARE HEREBY REQUIRED AND DIRECTED TO:

☒Testify before:   ☐Produce and bring   ☒Mail/Upload the documents described below to:

☐Produce access to the evidence described below for the purpose of examination or copying to:

Benjamin Lidholm, Investigator with the U. S. Equal Employment Opportunity Commission, located at

310 West Wisconsin Avenue, Suite 500, Milwaukee, WI 53203 on or before July 22, 2025.

The evidence required is:
See attachment. All evidence shall be complete and unredacted.

In addition, the Commission requests to interview Amy Hanneman, Vice President of Diversity
and Inclusion. The Commission requests she be made available for video interview on July 30, 2025, at 9:00am Central Time.

cc: Rebeca M. Lopez, Esq.
Godfrey Kahn
833 East Michigan Street, Suite 1800
Milwaukee, Wisconsin 53202

☐(ADA) 42 U.S.C. 12117(a)   ☒(Title VII) 42 U.S.C. 2000e-9   ☐(ADEA) 29 U.S.C. 626(a)   ☐(EPA) 29 U.S.C.209   ☐(GINA) 42 U.S.C. 2000ff-6

ISSUING OFFICIAL (Typed name, title and address)
Amrith Kaur Aakre, District Director
Equal Employment Opportunity
Commission
JCK Federal Building
230 South Dearborn St., Suite 1866
Chicago, IL 60604

ON BEHALF OF THE COMMISSION

*Amrith K. Aakre*

06/27/2025
Date

**Relevant period- January 1, 2020, to present**.

1. An electronic database[1] of employees in Respondent's Enterprise Compliance Department, and all employees with any compliance responsibility for Northwestern Mutual Investment Services, LLC, Northwestern Mutual Wealth Management Company, Northwestern Mutual Series Fund, including for each employee:
   a. Name
   b. Address
   c. Home phone number
   d. Cell phone number
   e. Email
   f. Current job title
   g. Any previous job titles during the relevant time period and the date placed in each such job
   h. Date of hire
   i. Date of separation and reasons for separation, if applicable
   j. Race
   k. Sex
   l. National origin

2. An organizational chart or other document sufficient to show the reporting hierarchy in Respondent's Enterprise Compliance Department and the reporting hierarchy for any employee with compliance responsibility for Northwestern Mutual Investment Services, LLC, Northwestern Mutual Wealth Management Company, Northwestern Mutual Series Fund, including documents sufficient to illustrate where the Enterprise AML Officer, Senior Directors and Vice President fit in the reporting hierarchy.

3. Job descriptions or other documents sufficient to show the responsibilities and selection criteria for the following positions: Department Head for Enterprise Compliance, Senior Directors in Compliance, NMIS CCO, and WMC CCO.

4. A copy of the personnel file for Charging Party, including all performance reviews.

5. A copy of the personnel file (excluding leave and benefits information) for the following employees, including documents sufficient to show the race, national origin, and sex of each employee: Jamie Pulsfus (Senior Director promoted to Vice President), Sarah Brach (Senior Director), Paula Storniolo (Senior Director); Jonathan Viard (Senior

---

1 The term "electronic database" means an electronic file uploaded to the EEOC Respondent Portal, that consists of the records described above wherein the records are divided into fields separated by a delimiter and every record has the same sequence of fields. Acceptable file formats include MS Excel Files (.xls, .xlsx), MS Access database (.accdb, .mdb) comma separated values file (.csv), or comma delimited text file (.txt). (Contact the EEOC representative to discuss other acceptable file formats.) Image files (such as .pdf or .tiff files) and printed copies of the database do not satisfy this definition of an electronic database. If any codes are used in the database (e.g. "F" for "Female") provide in a separate electronic database the definition of all codes.

Director); Nicole Lund (Senior Director promoted to NMIS CCO); Jeff Schloemer (VP, promoted to WMO CCO); Mike Commey (Vice President); Laila Valters (decisionmaker on promotion); Ray Manista (Chief Legal and Public Affairs Officer); Rebecca Villegas (VP -Enterprise Compliance).

6. All of the feedback solicited or received regarding Charging Party, Nicole Lund, and Jeff Schloemer, including feedback from colleagues, direct reports and client constituents.

7. All interview notes, investigation materials, communications (including e- mail among the investigative personnel or management, with the Charging Party and with witnesses and decisionmakers), summaries, and analysis of Charging Party's complaints of discrimination including any documents reflecting any actions taken as a result of such complaints, including all documents related to Charging Party's complaints regarding a 2020 Career Distribution presentation and all documents or analysis that Respondent relied upon in sending its e-mail to Charging Party stating that "NM does not believe its Diversity & Inclusion goals are in violation of Title VII."

8. A copy of any affirmative action plans that exist or existed during the relevant period

9. Any documents showing any analysis that Respondent relied upon to develop its Diversity & Inclusion policies or programs, including any analysis that shows that Respondent had engaged in past discrimination or any other basis that Respondent believes supports favoring employees of a certain race, sex, national origin, or sexual orientation.

10. Any documents showing any complaints made to Respondent from any employee, contractor or other individual or any person or entity representing such individuals or speaking on behalf of them regarding Respondent's Diversity & Inclusion policies or training or any employment opportunity (including employee training, compensation or new business support) awarded or offered on the basis of diversity & inclusion.

11. Documents sufficient to show all training offered to any employees from January 2022 to the present where race, national origin, sex, or sexual orientation is any sort of criteria or consideration for participation including "Field Diversity & Inclusion Early Career Advisor Programs," which were described as follows in an email to Charging Party:

> Early Career Connections (Asian, Black, Hispanic, two or more races)
> Supplemental training and community-building curriculum for individuals who identify as Hispanic, Asian, Black/African American, or two or more races advisors. Includes both in-person events and virtual meetings featuring field experts with opportunities for Q&A.
>
> LGBTQ+ Study Group
> Professionally facilitated small group support for LGBTQ+ advisors with emphasis on increasing productivity and building community alongside access to experienced mentors working in LGBTQ+ markets.

3Rising Women Program
Supplemental training and small group support for women advisors, focused on creating community, enhancing performance, and driving retention of women.

12. An electronic database of all the employees who participated in any of the training offered from January 2022 to the present where race, national origin, sex or sexual orientation was a criteria or consideration for participation including the "Field Diversity & Inclusion Early Career Advisor Programs," including for each employee who participated:
    a.  Name
    b.  Address
    c.  Home phone number
    d.  Cell phone number
    e.  Email
    f.  Current job title
    g.  Any previous job titles during the relevant time period and the date placed in each such job
    h.  Date of hire
    i.  Date of separation and reasons for separation, if applicable
    j.  Race
    k.  National origin
    l.  Sex
    m.  Sexual orientation

13. Documents sufficient to identify any training comparable to the Field Diversity & Inclusion Early Career Advisor Programs taking place between January 2022 and the present that did not use race, national origin, sex or sexual orientation as a criteria or consideration for participation.

14. An electronic database of the employees who participated in any training taking place between January 2022 and the present comparable to the Field Diversity & Inclusion Early Career Advisors Program that did not use race, national origin, sex or sexual orientation as a criteria or consideration for participation including, for each employee, the following information:
    a.  Name
    b.  Address
    c.  Home phone number
    d.  Cell phone number
    e.  Email
    f.  Current job title
    g.  Any previous job titles during the relevant time period and the date placed in each such job
    h.  Date of hire
    i.  Date of separation and reasons for separation, if applicable
    j.  Race

k. National origin
l. Sex
m. Sexual orientation

15. Northwestern Mutual D&I Report and any other reports or summary documents dated between January 2022 and the present that consolidate information about diversity and inclusion at Respondent.

16. Documents that show the structure and function of Respondent's Sustained Action for Racial Equity Initiative (described in more detail here Our Commitment to Combat Racism and Inequality, a Message From Our CEO | Northwestern Mutual and here innv.northwesternmutual.com/blog/sare-generates-broad-impact-on-black-field-force-black-communities), including, for the period January 2022 to the present, documents that show Respondent's advisors who participated in the initiative (including documents that explain the role of former CEO John Schlifske and current CEO Tim Gerend), any accomplishments or reports from the initiative, the budget, and staffing and programs available to employees through the initiative, including SARE's Next Level Mentoring Program, which provides mentors to "emerging black talent."

17. Documents that relate to Respondent's strategy for "Pursuing Diversity & Inclusion as a Growth Strategy," including, for the period January 2022 to the present, all training provided to management or to Northwestern Mutual advisors regarding this strategy, and any documents that show Respondent's analysis of customer preference regarding working with advisors that share the same race, national origin, sex or sexual orientation of the customer, and any documents showing how Respondent responded to any such customer preference.

18. An electronic database of recipients of Respondent's Diversity & Inclusion Champion Award from January 2022 to the present and all documents showing the nomination and selection process including the criteria that are used to select the recipients, including for each recipient:
a. Name
b. Address
c. Home phone number
d. Cell phone number
e. Email
f. Current job title
g. Any previous job titles during the relevant time period and the date placed in each such job
h. Date of hire
i. Date of separation and reasons for separation, if applicable
j. Race
k. National origin
l. Sex

m.    Sexual orientation
n.    Description of the basis for selection for the award
o.    Benefits received as a result of the award.

19. Documents sufficient to identify the performance management system and/or human resource information system used by Respondent from January 2022 to the present and the various metrics tracked by the system, including documents sufficient to identify the systems used by Respondent to track Diversity & Inclusion progress and goals.

20. An electronic database of each woman or person of color retained or promoted by any employee or manager for whom that employee or manager gets credit for or receives positive feedback in accord with Respondent's "Diversity & Inclusion People Leader Toolkit" attached to Respondent's position statement as Ex. 27, from January 2022 to the present, which provides goals with suggested metrics including "promoting and implementing the development and advancement of women and people of color." For each such woman or person of color, provide the following and all documents showing the feedback received:
    a.    Name of employee promoted or retained
    b.    Address
    c.    Home phone number
    d.    Cell phone number
    e.    Email
    f.    Current job title
    g.    Any previous job titles during the relevant time period and the date placed in each such job
    h.    Date of hire
    i.    Date of separation and reasons for separation, if applicable
    j.    Race
    k.    National origin
    l.    Sex
    m.    The names, race, national origin, sex and job titles of the other employees who applied for the promotion or opportunity that the employee identified in sub-part a received.

21. An electronic database listing each employee who received positive feedback, from January 2022 to the present, for sponsoring a "woman or a person of color who is not already on your team for promotion/new role/opportunity or increas[ing] their visibility with a special project that is reflected in their performance plan" in accord with Respondent's "Diversity & Inclusion People Leader Toolkit" attached to Respondent's position statement as Ex. 27, which provides goals with suggested metrics. For each such employee, provide the following information and all documents showing the feedback:
    a.    Name of employee who received the positive feedback
    b.    Address

c.    Home phone number
d.    Cell phone number
e.    Email
f.    Current job title
g.    Any previous job titles during the relevant time period and the date placed in each such job
h.    Date of hire
i.    Date of separation and reasons for separation, if applicable
j.    Race
k.    National origin
l.    Sex
m.    The names of the employee who was sponsored, and their race, national origin, sex and job title.

# Exhibit 2



833 EAST MICHIGAN STREET, SUITE 1800
MILWAUKEE, WISCONSIN 53202-5615

TEL · 414.273.3500    FAX · 414.273.5198

WWW · GKLAW.COM

Direct: 414-287-9601
pheaton@gklaw.com

June 4, 2025

**VIA EEOC RESPONDENT PORTAL**
  **and EMAIL (benjamin.lidholm@eeoc.gov)**

Mr. Benjamin Lidholm
Federal Investigator
U. S. Equal Employment Opportunity Commission
310 W. Wisconsin Avenue, Suite 500
Milwaukee, WI 53203

Re:    McNulty v. Northwestern Mutual
       EEOC Case No.:  443-2025-01752

Dear Mr. Lidholm:

I am writing to provide you with Northwestern Mutual's more detailed written objections to the EEOC's May 21, 2025 requests for information, in anticipation of our discussion next week.

We look forward to meeting with you next week not only to discuss our objections and concerns, but also to discuss the possibility of charting a course for early, cooperative discussions to address the EEOC's apparent concerns about the company's Diversity & Inclusion policies and initiatives.

<h3 style="text-align:center">Threshold Objections</h3>

Before turning to the individual requests for information, there are five threshold objections that apply to all of the requests for information.

*First*, Northwestern Mutual objects to each of the requests for information to the extent they are in furtherance of an investigation of discrimination claims that are not rooted in a *valid,* sworn charge of discrimination.  Mr. McNulty's written charge is premised upon a factual misrepresentation of the "Diversity & Inclusion policy" forming the basis for his conclusion (and contention) that he is the victim of unlawful discrimination.  Specifically, Mr. McNulty asserts in his charge that Northwestern Mutual's "Diversity & Inclusion policy" confers "additional … promotional opportunities" upon women and persons of color, and that the company "issued mandatory performance metrics … to advance and promote women and people of color."  These statements mischaracterize and plainly misrepresent the company's actual Diversity & Inclusion policies.  Contrary to Mr. McNulty's criticisms, the actual Diversity & Inclusion policies Mr. McNulty relies upon in his discrimination charge expressly prohibit making hiring or promotion decisions based upon any factors other than merit, and expressly reject "quotas" or other "metrics" mandating the hiring or promotion of a certain number or percentage of women or people of color.

OFFICES IN MILWAUKEE, MADISON, GREEN BAY, APPLETON, AND EAU CLAIRE, WISCONSIN AND WASHINGTON, D.C.
GODFREY & KAHN IS A MEMBER OF TERRALEX®, A WORLDWIDE NETWORK OF INDEPENDENT LAW FIRMS.

Case 2:25-mc-00053-BHL    Filed 11/21/25    Page 37 of 72    Document 3-7

Mr. McNulty's reliance upon a misrepresentation of the company's Diversity & Inclusion policies in support of his discrimination claims is significant, as a "valid" charge of discrimination is a prerequisite for the EEOC to initiate and conduct an investigation. *See EEOC v. Shell Oil Co.*, 466 U.S. 54, 72 n. 26 (1984). Further, "[w]hether a charge is 'valid' – that is, legally sufficient – is a pure question of law." *McLane Co., Inc. v. EEOC*, 581 U.S. 72, n. 3 (2017) (citation to *Shell Oil* omitted). This, too, is important, as Mr. McNulty's discrimination charge submitted to the EEOC, as well as his multiple pre-charge complaints communicated to Northwestern Mutual human resources personnel, are rooted in his criticisms of the company's published "Diversity & Inclusion policy." Accordingly, a court reviewing the "legal sufficiency" of his discrimination charge will consider the *actual* Diversity & Inclusion policy promulgated by Northwestern Mutual, rather than Mr. McNulty's mischaracterization and selective quotations of that policy. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 568 n. 13 (2007).

To be sure, Mr. McNulty is not *required* to point to a written company policy to assert a valid, legally sufficient Title VII discrimination claim against Northwestern Mutual. However, Mr. McNulty's individual discrimination charge not only is based on the explicit allegation that it is the company's Diversity & Inclusion policy that caused him to be passed over for promotion based on his sex, but also alleges his "belief" that those published company policies have subjected "other," unspecified Northwestern Mutual employees to discrimination. Consistent with these allegations in his written charge of discrimination, Mr. McNulty had previously told Northwestern Mutual human resources personnel that he "feels" the company's Diversity & Inclusion policy has subjected him to unlawful discrimination, explaining he reached this "belief" by "following the breadcrumbs." Because Mr. McNulty has not submitted a valid charge of discrimination, *i.e.*, a charge that would withstand scrutiny under the Fed. R. Civ. P. 12(b)(6) standards for discerning the legal sufficiency of claims, there is no authority for this investigation.[1]

---

[1] Nor does Mr. McNulty's sworn claim that he was personally subjected to unlawful discrimination by Northwestern Mutual justify the EEOC to conduct a broad investigation to explore the possibility of a pattern and practice of discrimination. *See, e.g., E.E.O.C. v. TriCore Reference Labs.*, 849 F.3d 929 (10th Cir. 2017) ("a single discriminatory act does not, by itself, warrant a broader pattern-or-practice investigation"); and *E.E.O.C. v. Burlington N. Santa Fe R.R.*, 669 F.3d 1154, 1157-58 (10th Cir. 2012) (while "[a]ny act of discrimination could be part of a pattern or practice of discrimination ... not every charge of discrimination warrants a pattern or practice investigation."). Where the Seventh Circuit has permitted the EEOC to pursue "pattern and practice" evidence in the context of investigating an individual Title VII claim, such a pursuit was justified by existing evidence supporting an inference of widespread discrimination. *See, e.g., E.E.O.C. v. Konica Minolta Business Solutions U.S.A., Inc.*, 639 F.3d 366, 368 (7th Cir. 2011) (based on evidence that all six Black employees of the respondent were employed at a single plant in a predominantly Black neighborhood and were segregated by color within that plant, the court concluded that "[t]hese facts led the EEOC to suspect that Konica might have engaged in discriminatory hiring practices"). As discussed in greater detail below, the only basis for McNulty's claims of systemic discrimination against Northwestern Mutual is the company's Diversity & Inclusion policy, established in conformity with historic, published EEOC pronouncements and interpretations of Title VII published prior to the change in administration in January 2025. As such, Section 713 of Title VII bars these proceedings, as the discrimination charge and investigation challenge conduct and policies pursued in conformity with those EEOC written opinions and interpretations of Title VII. *See* 42 U.S.C. § 2000e-12(b)(1).

Even if Mr. McNulty's allegation Northwestern Mutual's published Diversity & Inclusion policy caused the hiring managers to hold him back from promotion on the basis of his sex was not premised upon a demonstrably false characterization of the written company D&I initiatives he criticizes, there is still no valid ("legally sufficient") claim that Northwestern Mutual has engaged in a pattern and practice of discrimination. Accordingly, to the extent the EEOC seeks to investigate a purported pattern and practice of discrimination, the charge is facially invalid and does not justify requests for information directed to that topic.[2]

Finally, although Mr. McNulty claims he is the victim of unlawful retaliation in violation of Title VII, this claim does not provide any basis or justification to seek documents or data bearing on the validity or invalidity of Mr. McNulty's criticisms of the company's Diversity & Inclusion policies purportedly prompting the alleged retaliation. Because it is unlawful to retaliate against an employee for asserting violations of Title VII *regardless of whether or not the employee's criticisms are meritorious,* Mr. McNulty's retaliation claim provides no basis to investigate the merits of his criticisms of the company's Diversity & Inclusion policies that have no bearing on his claim that he was twice passed over for promotion on the basis of sex. Accordingly, there is no basis for any requests for information directed to the propriety and/or legality of Northwestern Mutual's Diversity & Inclusion policies and initiatives writ large.

*Second*, even a legally sufficient charge of discrimination cannot be pursued in bad faith. *See Shell Oil*, 466 U.S. at 72 n. 26; *EEOC v. Michael Const. Co*., 706 F.2d 244 (8th Cir. 1983). Accordingly, to the extent the EEOC's investigation is premised upon Mr. McNulty's misrepresentations of the company's written Diversity & Inclusion policies and procedures, the investigation and the corresponding requests for information are improper. Mr. McNulty has carefully reviewed the language in the Diversity & Inclusion policies forming the basis for his claims, so it cannot be plausibly maintained he is unaware those policies expressly prohibit the very unlawful conduct he claims they encourage. Yet his written charge submitted to the EEOC falsely asserts that the company's policies confer "additional promotional opportunities" upon women and people of color and impose mandatory metrics for the hiring and promotion of these classes of employees – though flatly contradicted by the express language of the company's policies.

Specifically, Mr. McNulty has consistently criticized Northwestern Mutual's Diversity & Inclusion policy based on the erroneous contention that requiring people managers to take *proactive steps* to ensure women and persons of color are afforded *equal opportunities* for employment and promotion at Northwestern Mutual somehow violates Title VII – even though these policies expressly admonish that each hiring and promotion decision must be premised

---

[2] Mr. McNulty's unfounded assertion that Northwestern Mutual has engaged in systemic discrimination fails for the additional reason that this element of the charge is not supported by a sworn statement setting forth a "clear and concise statement of *the facts,* including pertinent dates, constituting the alleged unlawful employment practices." *See* 29 C.F.R. § 1601.12. Since the allegation that "other" Northwestern Mutual employees were harmed by Northwestern Mutual's purportedly unlawful Diversity & Inclusion policies is based expressly upon Mr. McNulty's "belief," rather than sworn facts supporting this "belief," there is no sworn factual statement supporting pattern and practice allegations meeting the standards imposed by *Shell Oil* and 29 C.F.R. § 1601.12.

exclusively on merit. Further, Mr. McNulty has admitted to Northwestern Mutual human resources personnel that the basis for his suspicions (his "feeling") that his two female colleagues were promoted ahead of him on the basis of sex is the company's promulgation of the Diversity & Inclusion policies he criticizes. If Mr. McNulty is deliberately misrepresenting the company's written policies in these proceedings as a means to achieve professional advancement he has not earned on merit, his pursuit of this discrimination charge is the epitome of bad faith.

*Third*, even if there were a valid, sworn claim to support an investigation into the company's Diversity & Inclusion policies and practices writ large, Northwestern Mutual is entitled to an explication of the particular elements of the company's written policies that the EEOC contends are unlawful under Title VII. As you know, the Supreme Court has issued significant decisions changing the legal landscape in this arena *subsequent* to the promulgation of the Diversity & Inclusion policies that Mr. McNulty criticizes in his discrimination charge. Further, immediately after the President's January 20, 2025 inauguration, the EEOC began to issue new pronouncements challenging Diversity & Inclusion initiatives that the EEOC had historically endorsed and supported.

Former EEOC Chair Charlotte A. Burrows acknowledged these historic EEOC pronouncements encouraging employers to promulgate diversity programs and initiatives to remove barriers to employment and promotion for members of protected classes and underrepresented members of the workforce. *See* U.S. EEOC Commission, "*A Message from EEOC Chair Charlotte A. Burrows on Expanding Opportunity for All, January 2021-January 2025*," https://www.eeoc.gov/message-eeoc-chair-charlotte-burrows-expanding-opportunity-all-january-2021-january-2025. Ms. Burrows chronicled, just five months ago, the EEOC's historic support for "well-crafted programs to systematically remove barriers to equal opportunity and ensure recruitment of workers from all demographic groups …." Ms. Burrows' January 2025 message provided links to numerous EEOC publications championing and supporting the very diversity and inclusion programs and initiatives that form the basis for Mr. McNulty's discrimination charge. *Id.* at Sections titled, "**ADDRESSING BARRIERS IN RECRUITMENT AND HIRING**," and "**PROTECTING VULNERABLE WORKERS AND PERSONS FROM UNDERSERVED COMMUNITIES FROM EMPLOYMENT DISCRIMINATION**."

For example, the EEOC published its "*Practical Guide to Common Issues and Possible Barriers Which Asian and Native Hawaiian or Other Pacific Islander Employees May Face in the Federal Work Force*" in response to the issuance of Executive Order 13515 on October 14, 2019, listing among recommended "best practices" employer programs to "[e]stablish or enhance targeted recruitment plans to include goals, objectives and completion dates for increasing the number of [Asians, Native Hawaiians or Other Pacific Islander] applicants" to "improve the participation rate" of that particular minority group. *See* https://www.eeoc.gov/federal-sector/reports/practical-guide-common-issues-and-possible-barriers-which-asian-and-native. This is just one publication among dozens disseminated by the EEOC that have encouraged employers to establish diversity and inclusion initiatives employing mentorship programs, training modules, diverse slates, diverse panels, and hiring and recruiting goals designed to ensure equal – not preferential – treatment to women, persons of color, and other members of

protected classes. *See, e.g.,* April 19, 2006 "*Questions and Answers about Race and Color Discrimination*," EEOC-NVTA-2006-1, https://www.eeoc.gov/laws/guidance/questions-and-answers-about-race-and-color-discrimination-employment ("Employers should attempt to recruit from racially diverse sources in order to obtain a racially diverse applicant pool. For example, if the employer's primary recruitment source is a college that has few African American students, the employer should adopt other recruitment strategies, such as also recruiting at predominantly African American colleges, to ensure that its applicant pool reflects the diversity of the qualified labor force"); and "*Report on the Hispanic Employment Challenge in the Federal Government by the Federal Hispanic Work Group*" of the EEOC (recommending "practical, comprehensive solutions" to "remove barriers and level the playing field to encourage greater opportunities for Hispanic applicants and employees," including measures to "increase the advancement opportunities for Hispanic employees" and "the number of Hispanics selected for agency leadership and management training," admonishing that the "selection and interview panels must reflect diversity factors such as sex, race, age and ethnicity," and recommending "EEO/diversity requirements as a critical element in the performance plans of all managers and supervisors").

Since 42 U.S.C. § 2000e-12(b)(1) bars any proceedings or claims challenging conduct undertaken in good faith reliance upon written interpretations and opinions published by the EEOC, Northwestern Mutual is entitled to know the specific basis for the EEOC's requests for information directed to the company's Diversity & Inclusion policies and initiatives. Based on Mr. McNulty's asserted grounds for his discrimination charge and the requests for information propounded by the EEOC, Northwestern Mutual invokes Section 713 as a defense to Mr. McNulty's claims and as a bar to these proceedings.

In an apparent effort to avoid the consequences of Section 713, the EEOC has appended a disclaimer to its January 2025 publication that recommended and encouraged the diversity and inclusion initiatives challenged in these proceedings, warning that this EEOC publication was now merely "archived content" containing information that "may be outdated and links that may no longer function." *See* https://www.eeoc.gov/message-eeoc-chair-charlotte-burrows-expanding-opportunity-all-january-2021-january-2025. However, Congress has made clear that the safe harbor provisions of Section 713 may be invoked by an employer to bar proceedings even if "such interpretation or opinion is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect." *See* 42 U.S.C. § 2000e-12(b).

Section 713 reflects principles of fundamental fairness that Congress saw fit to memorialize as an important component of Title VII, ensuring that employers may safely rely upon EEOC-published opinions and interpretations of Title VII, even in the face of evolving case law and changing views of the EEOC itself, as has occurred here. *See, e.g., EEOC and Justice Department Warn Against Unlawful DEI-Related Discrimination; What To Do If You Experience Discrimination Related to DEI at Work*; and *What You Should Know About DEI-Related Discrimination at Work*. While Mr. McNulty already has identified elements of the company's policies that he claims have subjected him to unlawful discrimination, Section 713 entitles Northwestern Mutual to be plainly advised which elements of these policies form the basis for the EEOC's own investigation.

*Fourth*, to the extent these requests seek information concerning alleged discrimination on any basis other than sex, Northwestern Mutual objects to the relevancy of those requests. Although Mr. McNulty conclusorily asserts that he has been discriminated against on the basis of color, national origin, race, and sex, his written charge of discrimination alleges two instances in which white female colleagues received positions and promotions over him. Significantly, Mr. McNulty does not identify any instances in which he alleges he was unfairly passed over on the basis of color, national origin, or race, as he would be required to do if he intended to pursue such a claim. *See Shell Oil,* 466 U.S. at 72 n. 26; and 29 CFR s 1601.12. This is because allegedly discriminatory employment practices that have caused no harm to Mr. McNulty provide no basis for his Title VII claim (whether couched as disparate treatment or disparate impact). *See Gilty v. Village of Oak Park,* 919 F.2d 1247, 1250, 1255 (7th Cir. 1990) (alleged discriminatory conduct must cause the adverse employment action challenged by the claimant). Accordingly, requests for information directed to categories of alleged unlawful discrimination on any basis other than sex cannot be properly pursued in these proceedings. *See, e.g*., *EEOC v. United Airlines,* 287 F.3d 643, 653 (7th Cir. 2002).

*Fifth*, Northwestern Mutual objects to these requests to the extent the EEOC seeks records and information for any time period preceding the two specific instances of purportedly unlawful discrimination recited by Mr. McNulty in his written discrimination charge. Although Mr. McNulty did not recite the dates of these instances, as required to assert a "valid" charge of discrimination, the two Northwestern Mutual colleagues referenced in his charge were promoted in June and November of 2024. Accordingly, there is no basis for requesting information or records generated prior to June 1, 2024. *See, e.g*., *Equal Emp. Opportunity Comm'n v. Joon, LLC,* No. 3:18MC3836-WKW-GMB, 2019 WL 3002969, at *5 n. 1 (M.D. Ala. Mar. 4, 2019), *report and recommendation adopted as modified,* No. 3:18-MC-3836-WKW, 2019 WL 2134596 (M.D. Ala. May 15, 2019) (holding that "subpoena is overly broad to the extent it seeks documents generated prior to the allegations of misconduct appearing on the face of the charge").[3]

## Individual Objections and Responses

**Objections to RFI Number 1**:

Northwestern Mutual objects to the request for employee data sought in the first request for information based on each of the preceding threshold objections, and because this would improperly invade the privacy of these individuals and cause disruption to the company's operations that would ensue if the EEOC were to contact those individuals. Further, Northwestern Mutual objects to this request because it is not reasonably relevant and "the burden [and] expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues

---

[3] Northwestern Mutual further objects to the extent the EEOC seeks documents generated prior to May 5, 2024, which is 300 days prior to the March 1, 2025 filing of the charge of discrimination.

at stake in the litigation, and the importance of the proposed discovery in resolving the issues."
*Shell Oil*, 466 U.S. at 72 n. 26; Fed. R. Civ. P. 26(b)(1).

**Response to RFI Number 1**:

Subject to and limited by the preceding objections, and solely for the purpose of seeking a compromise with the EEOC concerning these issues, Northwestern Mutual will provide the information requested in RFI 1(f), (g), (h), and (k) for all current employees in the Enterprise Compliance Department holding the position of Senior Director or higher.

**Objections to RFI Number 2**:

Northwestern Mutual objects to the request for the organizational chart and data sought in the second request for information based on each of the preceding threshold objections, and because this would improperly invade the privacy of these individuals and cause disruption to the company's operations that would ensue if the EEOC were to contact those individuals. Further, Northwestern Mutual objects to this request because it is not reasonably relevant and "the burden [and] expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Shell Oil*, 466 U.S. at 72 n. 26; Fed. R. Civ. P. 26(b)(1). Finally, the request is overly broad, unduly burdensome, and too indefinite to the extent it seeks information for employees outside the Enterprise Compliance Department who have any "compliance responsibility," as the meaning of this phrase is ambiguous.

**Response to RFI Number 2**:

Subject to and limited by the preceding objections, and solely for the purpose of seeking a compromise with the EEOC concerning these issues, Northwestern Mutual will provide either an organizational chart or comparable data in its available current format reflecting the reporting relationships between and among the current employees in the Enterprise Compliance Department holding the position of Senior Director or higher (and those employees reporting directly to those persons), redacting the names of those individuals to preserve their privacy and to avoid the disruption to the company's operations that would ensue if the EEOC were to contact those individuals.

**Objections to RFI Number 3**:

Northwestern Mutual objects to the request for job descriptions sought in the third request for information based on each of the preceding threshold objections.

**Response to RFI Number 3**:

Subject to and limited by the preceding objections, and solely for the purpose of seeking a compromise with the EEOC concerning these issues, Northwestern Mutual will produce the current job descriptions for the enumerated categories of employees.

**Objections to RFI Number 4**:

Northwestern Mutual objects to the request for Mr. McNulty's personnel file sought in the fourth request for information based on each of the preceding threshold objections, and because the term "personnel file" is too indefinite. Further, Northwestern Mutual objects to the extent this request seeks documents that contain proprietary data.

**Response to RFI Number 4**:

Subject to and limited by the preceding objections, and solely for the purpose of seeking a compromise with the EEOC concerning these issues, Northwestern Mutual will produce the personnel file for Mr. McNulty (defined as the documents encompassed within Wis. Stat. § 103.13(2)), redacted to mask the names of other Northwestern Mutual employees (other than employees in the human resources department or the person(s) or the names of supervisory personnel contributing to the file), and redacted to mask any proprietary data that may be referenced in that file.

**Objections to RFI Number 5**:

Northwestern Mutual objects to the request for the personnel files sought in the fifth request for information based on each of the preceding threshold objections, and because this would improperly invade the privacy of these individuals and cause disruption to the company's operations if the EEOC were to contact those individuals. Further, Northwestern Mutual objects to the extent this request seeks documents that contain proprietary data.

**Response to RFI Number 5**:

Subject to and limited by the preceding objections, and solely for the purpose of seeking a compromise with the EEOC concerning these issues, Northwestern Mutual will produce the year-end performance evaluations for Jamie Pulsfus; Nicole Lund; and Jeff Schloemer, redacted to mask the names of other Northwestern Mutual employees (other than employees in the human resources department or the person(s) or the names of supervisory personnel contributing to the file), and redacted to mask any proprietary data that may be referenced in such files.

While the EEOC is not permitted to disclose information obtained from Northwestern Mutual as a part of its investigation prior to the filing of a lawsuit, it is important that these private materials be protected from broad disclosure in the event the EEOC were to file an action arising out of this investigation. Accordingly, Northwestern Mutual would condition the production of these materials on the EEOC's assurance that no disclosure would occur unless and until the parties entered into a confidentiality agreement and stipulated proposed order protecting those materials, or such disclosure were permitted by the court. Further, the production of this information is further conditioned upon the EEOC confirming that the contents will not be disclosed to Mr. McNulty or described to Mr. McNulty (directly or indirectly) by the EEOC.

**Objections to RFI Number 6**:

Northwestern Mutual objects to the request for the documents reflecting "feedback solicited or received" for Mr. McNulty, Ms. Lund, and Mr. Schloemer that is sought in the sixth request for information based on each of the preceding threshold objections, and because this would improperly invade the privacy of the individuals submitting the feedback and cause disruption to the company's operations if the EEOC were to contact those individuals. Further, this request is too indefinite as to the meaning of the word "feedback," and unduly burdensome to the extent an expansive or unqualified definition were to be employed for this term. There are innumerable instances in which documents are likely to include contents that could be construed as "feedback" concerning an employee, and it would be impossible to identify and assemble all such documents. Further, Northwestern Mutual objects to the extent this request seeks documents that contain proprietary data.

**Response to RFI Number 6**:

Subject to and limited by the preceding objections, and solely for the purpose of seeking a compromise with the EEOC concerning these issues, Northwestern Mutual will produce documents reflecting feedback solicited or received for the specific purpose of preparing year-end evaluations for the enumerated employees, redacted to mask the names of other Northwestern Mutual employees and redacted to mask any proprietary data that may be referenced in such documents.

While the EEOC is not permitted to disclose information obtained from Northwestern Mutual as a part of its investigation prior to the filing of a lawsuit, it is important that these private materials be protected from broad disclosure in the event the EEOC were to file an action arising out of this investigation. Accordingly, Northwestern Mutual would condition the production of these materials on the EEOC's assurance that no disclosure would occur unless and until the parties entered into a confidentiality agreement and stipulated proposed order protecting those materials, or such disclosure were permitted by the court. Further, the production of this information is further conditioned upon the EEOC confirming that the contents will not be disclosed to Mr. McNulty or described to Mr. McNulty (directly or indirectly) by the EEOC.

**Objections to RFI Number 7**:

Northwestern Mutual objects to the request for the McNulty complaint investigation materials sought in the seventh request for information based on each of the preceding threshold objections, and to the extent this request seeks to invade the attorney-client privilege and/or intrude into attorney work product. Further, the request is too indefinite to the extent it refers to "complaints of discrimination," "actions taken as a result of such complaints," and seeks "documents or analysis … relied upon" in concluding that the company's Diversity & Inclusion goals do not violate Title VII. This request is unduly burdensome to the extent an expansive or unqualified definition were to be employed for these phrases.

**Response to RFI Number 7**:

Subject to and limited by the preceding objections, and solely for the purpose of seeking a compromise with the EEOC concerning these issues, Northwestern Mutual will produce documents reflecting (a) Mr. McNulty's written complaints or criticisms of the company's Diversity & Inclusion policies, procedures, goals, and initiatives transmitted to his superiors and/or to the human resources department; (b) Northwestern Mutual's written responses to Mr. McNulty concerning the items noted in subsection (a); (c) non-privileged summaries of the complaints or criticisms prepared by the human resources department pursuant to its established procedures; and (d) non-privileged memos prepared by the human resources department reflecting interviews conducted, if any, in response to any of the complaints or criticisms noted in subsection (a) of this response.

**Objections to RFI Number 8**:

Northwestern Mutual objects to the request for the "affirmative action plans" sought in the eighth request for information, and the request for an identification of the time period during which Northwestern Mutual "was not a federal contractor," based on each of the preceding threshold objections. Northwestern Mutual further objects to the phrase "affirmative action plan" as too indefinite, inasmuch as this term of art takes on different meanings in different contexts. Finally, Northwestern Mutual objects to this request on the basis that the company's status (or lack of status) as a federal contractor calls for the respondent to convey legal conclusions to the EEOC, rather than providing documents or data within the purview of 42 U.S.C. § 2000e-8(a)

**Response to RFI Number 8**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC provides an explanation and justification for this request and identifies the relevancy of such information in the context of Mr. McNulty's particular charge of discrimination.

**Objections to RFI Number 9**:

Northwestern Mutual objects to the request for documents "relied upon to develop its Diversity & Inclusion policies or programs," "any analysis that shows that respondent had engaged in past discrimination," and documents reflecting "any other basis that respondent believes supports favoring employees of a certain race, sex, national origin, or sexual orientations," as sought in the ninth request for information, based on each of the preceding threshold objections. Northwestern Mutual also objects to this request because the phrase "Diversity & Inclusion policies or programs" is too indefinite to allow the respondent to formulate an accurate response. Moreover, Northwestern Mutual objects to this request to the extent it seeks to invade the attorney-client privilege and/or intrude into attorney work product.

Finally, Northwestern Mutual rejects the premise for the request, as Northwestern Mutual never knowingly engaged in unlawful discrimination in violation of Title VII or otherwise, nor has the company ever "support[ed] favoring employees of a certain race, sex, national origin, or sexual orientations," inasmuch as Northwestern Mutual is an equal opportunity employer. Northwestern Mutual is troubled by the EEOC's reference to a purported belief by Northwestern Mutual that certain categories of employees who are members of protected classes should be "favored" over other employees.

The phrasing of this request by the EEOC appears to endorse Mr. McNulty's mischaracterizations of the company's diversity and inclusion initiatives, prejudging the merits of Mr. McNulty's contentions and Northwestern Mutual's response to those contentions at the very outset of these proceedings. This is particularly disconcerting where, as here, the plain language of the company's Diversity & Inclusion policies and procedures flatly contradicts any such purported "belief" by Northwestern Mutual (as set forth in great detail in the company's position statement, supported by direct quotations from those materials).

**Response to RFI Number 9**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

**Objections to RFI Number 10**:

Northwestern Mutual objects to the request for documents "showing any complaints … from any employee, contractor, other individual or any person or entity representing such individuals … regarding respondent's Diversity & Inclusion policies or training or any employment opportunity … awarded or offered on the basis of diversity & inclusion," as requested in the tenth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Moreover, Northwestern Mutual objects to this request to the extent it seeks to invade the attorney-client privilege and/or intrude into attorney work product. The request also is overly broad to the extent it is not confined to complaints submitted by persons similarly situated to Mr. McNulty who asserted claims of unlawful discrimination on the basis of sex.

Finally, Northwestern Mutual objects to this request as invading the privacy of third persons who are not parties to these proceedings, and because disclosing their identities would cause substantial business disruption if the EEOC were to contact these individuals.

**Response to RFI Number 10**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

**Objections to RFI Number 11**:

Northwestern Mutual objects to the request for documents reflecting employee training "where race, national origin, sex, or sexual orientation" is a criteria or consideration for participation, as requested in the eleventh request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Moreover, the request also is overly broad to the extent it seeks documents and data concerning the company's independent contractor field sales force or concerning categories of protected classes under Title VII other than sex.

**Response to RFI Number 11**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

**Objections to RFI Number 12**:

Northwestern Mutual objects to the request for documents reflecting employees who participated in the enumerated categories of training, as requested in the twelfth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Moreover, the request also is overly broad to the extent it seeks documents and data concerning the company's independent contractor field sales force or concerning categories of protected classes under Title VII other than sex. Northwestern Mutual also objects to the request as improperly invading the privacy of such employees, and because the request would result in substantial business disruption if the EEOC were to contact these employees.

**Response to RFI Number 12**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

**Objections to RFI Number 13**:

Northwestern Mutual objects to the request for documents reflecting "training comparable to the Field Diversity & Inclusion Early Career Advisor Programs" and other enumerated categories of training, as requested in the thirteenth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Moreover, the request also is overly broad to the extent it seeks documents and data concerning the company's independent contractor field sales force or concerning categories of protected classes under Title VII other than sex. Finally, it is difficult to understand what is actually being requested in this request for information.

**Response to RFI Number 13**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

**Objections to RFI Number 14**:

Northwestern Mutual objects to the request for documents reflecting employees who participated in the enumerated categories of training, as requested in the fourteenth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Moreover, the request also is overly broad to the extent it seeks documents and data concerning the company's independent contractor field sales force or concerning categories of protected classes under Title VII other than sex. Northwestern Mutual also objects to the request as improperly invading the privacy of such employees, and because the request would result in substantial business disruption if the EEOC were to contact these employees.

**Response to RFI Number 14**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

**Objections to RFI Number 15**:

Northwestern Mutual objects to the request for documents reflecting a "D&I Report" and other documents consolidating "information about diversity and inclusion" at Northwestern Mutual, as requested in the fifteenth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Moreover, the request also is overly broad to the extent it seeks documents and data concerning the company's independent contractor field sales force or concerning categories of protected classes under Title VII other than sex.

**Response to RFI Number 15**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

**Objections to RFI Number 16**:

Northwestern Mutual objects to the request for documents concerning the Sustained Action for Racial Equity program, as requested in the sixteenth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Moreover, the request also is overly broad, as it is confined to seeking documents and data concerning the company's independent contractor field sales force and have no bearing on allegedly unlawful discrimination based on sex.

**Response to RFI Number 16**:

Northwestern Mutual stands on its objections.

**Objections to RFI Number 17**:

Northwestern Mutual objects to the request for documents concerning the strategy for "Pursuing Diversity & Inclusion as a Growth Strategy," as requested in the seventeenth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Moreover, the request also is overly broad, as it is confined to seeking documents and data concerning the company's independent contractor field sales force and has no bearing on allegedly unlawful discrimination based on sex.

**Response to RFI Number 17**:

Northwestern Mutual stands on its objections.

**Objections to RFI Number 18**:

Northwestern Mutual objects to the request for the list of the recipients of the Diversity& Inclusion Champion Award, as requested in the eighteenth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Moreover, the request also is overly broad, as it is confined to seeking documents and data concerning the company's independent contractor field sales force and has no bearing on allegedly unlawful discrimination based on sex. Finally, the request for personal information improperly invades the privacy of those recipients and would cause substantial disruption to the company's business operations.

**Response to RFI Number 18**:

Northwestern Mutual stands on its objections.

**Objections to RFI Number 19**:

Northwestern Mutual objects to the request for documents and data concerning the company's "performance management system" and the "system used … and the various metrics tracked" by the system, as requested in the nineteenth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Finally, the request for personal information improperly invades the privacy of those recipients and would cause substantial disruption to the company's business operations.

**Response to RFI Number 19**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

**Objections to RFI Number 20**:

Northwestern Mutual objects to the request for the identity and related data concerning employees who received "credit" or "positive feedback in accord" with the People Leader Toolkit, as requested in the twentieth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Further, it would be impracticable (if not impossible) to identify and assemble documents reflecting "credit" or "positive feedback" related to these D&I goals, even if the request were confined to Enterprise Compliance Department employees. Finally, the request for the identities of these individuals and their personal information improperly invades the privacy of those employees, and disclosure of this information would cause substantial disruption to the company's business operations.

**Response to RFI Number 20**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

**Objections to RFI Number 21**:

Northwestern Mutual objects to the request for the identity and related data concerning employees who received "positive feedback for sponsoring" a woman or person of color, "in accord" with the People Leader Toolkit, as requested in the twenty-first request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Further, it would be impracticable (if not impossible) to identify and assemble documents reflecting "positive feedback" related to these D&I goals, even if the request were confined to Enterprise Compliance Department employees. Finally, the request for the identities of these individuals and their personal information improperly invades the privacy of those employees, and disclosure of this information would cause substantial disruption to the company's business operations.

**Response to RFI Number 21**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

## Objections and Response to Request for Interview

Northwestern Mutual objects to producing Amy Hanneman for an interview as a part of the EEOC's investigation into these proceedings. There is no statutory basis to compel a respondent to produce officers of the organization for interviews; Congress has limited the EEOC to pursuing compulsory production of data and documents. *See* 42 U.S.C. §2000e-8(a).

More importantly, we do not believe such an interview would be appropriate for the reasons set forth in the five, threshold objections to the requests for information. While the company normally would consider voluntarily producing its employees for EEOC interviews to facilitate an EEOC investigation, it would only do so if it concluded that such interviews were appropriate within the context of the particular investigation being conducted. For each of the reasons we have explained, such is not the case here.

However, the company may be willing to reconsider its response to this request after the EEOC has identified the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

We also believe a discussion of the current status of the company's policies, programs and initiatives in the wake of recent Supreme Court precedents and newly issued EEOC pronouncements may be productive.

## Rolling Production

Northwestern Mutual proposes a rolling production of documents and information, such production to begin thirty days after the EEOC propounded its requests, *i.e.*, beginning on or before June 23, 2025, as June 21, 2025 is a Saturday.

## Conclusion

As Northwestern Mutual has conveyed to Mr. McNulty and to the EEOC, the company is committed to ensuring that its Diversity & Inclusion programs, policies and initiatives conform fully to Title VII and all state and federal laws governing the company's employment practices.

While we do not believe Mr. McNulty's charge of discrimination is legally sufficient or that his individual claim of discrimination warrants the broad scope of the investigation

contemplated by the EEOC (as reflected in the subject requests for information), Northwestern Mutual invites a full and candid discussion of the company's historic and current Diversity & Inclusion policies, programs, and initiatives with you and your colleagues, outside the context of the requests for information directed to Mr. McNulty's individual discrimination claim.

Northwestern Mutual is committed to full compliance with the law, and the EEOC is charged with ensuring such compliance. Accordingly, it is Northwestern Mutual's sincere belief that these mutual interests would be advanced by such a discussion and exchange. It is likely there will be significant common ground from the outset, and the resolution of any potential areas of disagreement may be facilitated and accelerated by such early, direct communications.

I look forward to discussing the possibility of such exchange when we speak next week.

Sincerely,

GODFREY & KAHN, S.C.

Paul F. Heaton
Counsel for Northwestern Mutual

cc:    Rebeca M. Lopez

33130500.1

# Exhibit 3

| | |
|---|---|
| **From:** | BENJAMIN LIDHOLM |
| **To:** | López, Rebeca |
| **Cc:** | Heaton, Paul F.; SETH SINCLAIR |
| **Subject:** | RE: Objections and Responses re: EEOC No. 443-2025-01752, Mcnulty v Northwestern Mutual [GK-ACTIVE.FID3602277] |
| **Date:** | Wednesday, June 11, 2025 2:54:16 PM |
| **Attachments:** | image001.png |

**[EXTERNAL] This message originated from outside your domain.**



Good afternoon,

EEOC has received your June 4, 2025, request for information response and objections to EEOC's May 21, 2025, Request for Information. This e-mail address three issues raised in the letter in the hope that this will speed production of responsive material.

Section 713 of Title VII & Respondent's request that EEOC identify programs that violate Title VII: As part of its letter, Respondent asserts reliance on the provisions of Section 713 of Title VII, 28 U.S.C. 2000e-12(b)(1) and in response to several requests Respondent asks that EEOC identify "the elements of the published D&I practices that violate Title VII and the nexus between those practices and the alleged harm." The purpose of EEOC's request for information is to allow EEOC to gather information about Respondent's programs and assess potential violations. It would turn the statute on its head to require EEOC to first assert what programs violate Title VII and the nexus between those programs and the alleged harm. Further, it is Respondent's objections and responses that are deficient. Respondent's letter does not identify with specificity any DEI program or activity that Respondent believes is protected by Section 713. Please identify with specificity any such program, including its title or name, the scope of the program (the purpose and personnel covered by the program), years that the program was in effect, any modifications to the program during those years, and any analysis that Respondent relied upon in creating or maintaining the program, and specifically identify (with citations to specific language or provisions) the EEOC guidance or document or statement or regulation that Respondent relied upon in crafting and adopting the program. Even if the Respondent asserts that it believes that Section 713 would provide a defense to any potential violations for certain programs, this section is not a bar to EEOC's collection of information. Accordingly, EEOC is not modifying its RFI requests on this basis.

Confidentiality concerns: EEOC investigative files are protected from disclosure by confidentiality provisions contained within Title VII. Accordingly, Respondent's assertion of confidentiality concerns does not provide a basis for refusing to produce responsive information to EEOC and EEOC will not agree to enter an additional confidentiality order. Likewise, EEOC will not agree to Respondent's suggested redaction of the identity of other personnel. Redacting names of employees who provided feedback or performance information or who may be comparators simply will not allow EEOC to investigate Charging Party's claims of discrimination. EEOC also will not agree that it will not disclose information

produced by Respondent to CP during our investigation if it is necessary for purposes of the investigation. EEOC will respect the confidentiality provision of Title VII in this case as in all investigations.

-

Time frame covered by the requests: Respondent objects to producing information that Respondent characterizes as prior to the specific adverse actions that affected Charging Party (which Respondent asserts was June 2024). Charging Party's charge of discrimination, however, is not so limited, and in any case, EEOC is not limited to seeking information solely from the 300-day period preceding CP's charge. To enable Respondent to produce information more quickly, EEOC will agree to modify the period of requests numbers 11 through 21 from Jan. 1, 2020, to the present to Jan. 1, 2022, to the present.

Respondent has offered to begin rolling production of responsive information on June 23, 2025. EEOC requests that Respondent begin rolling production responsive to all requests at that time, not only to those that Respondent identified in its June 4, 2025, response.

Regarding the interview of Ms. Amy Hanneman, who has served as Respondent's Vice President of Diversity & Inclusion, EEOC stands by its request and suggests that the parties agree that she will be produced for an interview the week of July 7 or July 14, which will allow the EEOC to review Respondent's RFI responses in advance of the interview.

Finally, EEOC appreciates that Respondent expressed an interest in trying to resolve this charge of discrimination. EEOC is always open to such early discussions.

We look forward to speaking with you tomorrow.

---

**From:** López, Rebeca <RLopez@gklaw.com>
**Sent:** Wednesday, June 4, 2025 4:09 PM
**To:** BENJAMIN LIDHOLM <BENJAMIN.LIDHOLM@EEOC.GOV>
**Cc:** Heaton, Paul F. <PHeaton@gklaw.com>; López, Rebeca <RLopez@gklaw.com>
**Subject:** Objections and Responses re: EEOC No. 443-2025-01752, Mcnulty v Northwestern Mutual [GK-ACTIVE.FID3602277]

> **CAUTION:** The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

Mr. Lindholm,

Please see attached. The same will also be filed via the EEOC Portal. We look forward to our discussion with you next week Thursday.

Kind regards,

Rebeca

**Rebeca M. López** | Attorney (she/her/hers)
414.287.9634 direct | 414.405.7488 mobile | RLopez@gklaw.com

**GODFREY KAHN**

*This is a transmission from the law firm of Godfrey & Kahn, S.C. and may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at (414) 273-3500.*

# Exhibit 4

| From: | Heaton, Paul F. |
|-------|-----------------|
| To: | BENJAMIN LIDHOLM; SETH SINCLAIR |
| Cc: | López, Rebeca |
| Subject: | McNulty v Northwestern Mutual, EEOC No. 443-2025-01752 (Follow-Up on Yesterday"s Call) |
| Date: | Friday, June 13, 2025 2:44:02 PM |
| Attachments: | image001.png |
| | image002.png |

Gentlemen:

I'm writing to follow up on yesterday's discussion, and Mr. Lidholm's email (below), to confirm that NM does stand on the objections and limitations interposed in our June 4, 2025 correspondence. I will reiterate the basis for this decision, as explained during yesterday's call.

Although we have asked the EEOC to refine its RFIs by identifying which purported "D&I" policies and procedures of NM that cause the EEOC concerns under Title VII, and the nexus of those purported policies and procedures to the discrimination charge advanced by Mr. McNulty, Mr. Lidholm stated during yesterday's call that "obviously" the EEOC's concerns extend beyond Mr. McNulty's own, individual claim. Mr. Sinclair added that it is not atypical for the EEOC to expand its investigation of an individual claim into a broader review of a company's policies and procedures, going beyond the individual complainant's charge, based on information learned during the course of an investigation. When we asked you to confirm our assumption that Mr. McNulty already has provided the EEOC with multiple documents reflecting various NM policies and programs, and requested that you identify any elements of those written policies and pronouncements (or elements of such policies/pronouncements) that the EEOC contends raise concerns under Title VII, you declined to do so, noting instead that there are multiple, public pronouncements from NM available on the internet for review.

Our concern, however, is that NM is entitled to advance notice of the alleged unlawful conduct by NM through its employment practices (i.e., the alleged violations of Title VII) that are being investigated by the EEOC, and that the EEOC should not propound any RFIs that are not reasonably directed to the individual discrimination charge that has been sworn out by Mr. McNulty. Title VII (and the regulations promulgated by the EEOC) contemplate specific, sworn, fact-based charges (in a written charge sworn under oath by the EEOC, an individual claimant, or both) placing the respondent employer on notice of the alleged conduct that is being investigated; *after* doing so, the EEOC has a right to pursue RFIs that are reasonably related to the sworn, written charge of discrimination. This is basic Due Process, allowing a respondent to know what charges it faces and why, *followed* by an exchange of information through RFIs. The contention that the EEOC is permitted to propound requests for information *first*, and identify the basis for such alleged violations that are being investigated *afterwards*, reverses the statutory and regulatory framework governing Title VII investigations.

We renew our request that the EEOC identify the particular NM employment practices (including any specific programs or policies) that form the basis for the EEOC's investigation and propounded RFIs, and explain the nexus between those practices and Mr. McNulty's discrimination charge. As presented, the RFIs not only are too indefinite and overly broad (by

failing to define "D&I policies" and failing to identify any particular policies, programs, or employment practices being challenged, much less the nexus to the charges), but also exceed the EEOC's statutory authority.

As to your proposal that the company make an offer to resolve Mr. McNulty's particular charge of discrimination, we continue to believe that an EEOC-sponsored mediation session makes sense, if the goal is to address and resolve that dispute expeditiously. Please let us know if this is something Mr. McNulty and the EEOC wish to consider.

Separately from any potential resolution of Mr. McNulty's charge, if the EEOC has identified any NM employment practices that cause it concerns under Title VII, we renew our request that the EEOC identify those practices and programs so that we can have a meaningful discussion. If the goal is to ensure compliance with Title VII, we continue to believe your identifying the basis for the EEOC's concerns is a reasonable and necessary starting point.

Finally, we will follow-up separately to confirm our understanding and expectations concerning the EEOC's protection of confidential information, including without limitation personnel files and other information that would identify individual employees of NM. As I mentioned during the call, NM only seeks basic protections that it is confident any court would readily afford the company to ensure those individuals' rights to privacy are not improperly jeopardized.

Sincerely,

Paul F. Heaton
Counsel for Northwestern Mutual

**Paul F. Heaton** | Attorney
414.287.9601 direct | PHeaton@gklaw.com

## GODFREY◆KAHN

*This is a transmission from the law firm of Godfrey & Kahn, S.C. and may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at (414) 273-3500.*

**From:** BENJAMIN LIDHOLM <BENJAMIN.LIDHOLM@EEOC.GOV>
**Sent:** Wednesday, June 11, 2025 2:54 PM
**To:** López, Rebeca <RLopez@gklaw.com>
**Cc:** Heaton, Paul F. <PHeaton@gklaw.com>; SETH SINCLAIR <SETH.SINCLAIR@EEOC.GOV>
**Subject:** RE: Objections and Responses re: EEOC No. 443-2025-01752, Mcnulty v Northwestern Mutual [GK-ACTIVE.FID3602277]

**[EXTERNAL] This message originated from outside your domain.**

 **This message needs your attention**

• Some Recipients have never replied to this person.

Report or Mark Safe

Powered by Mimecast

Good afternoon,

EEOC has received your June 4, 2025, request for information response and objections to EEOC's May 21, 2025, Request for Information. This e-mail address three issues raised in the letter in the hope that this will speed production of responsive material.

<u>Section 713 of Title VII & Respondent's request that EEOC identify programs that violate Title VII</u>: As part of its letter, Respondent asserts reliance on the provisions of Section 713 of Title VII, 28 U.S.C. 2000e-12(b)(1) and in response to several requests Respondent asks that EEOC identify "the elements of the published D&I practices that violate Title VII and the nexus between those practices and the alleged harm." The purpose of EEOC's request for information is to allow EEOC to gather information about Respondent's programs and assess potential violations. It would turn the statute on its head to require EEOC to first assert what programs violate Title VII and the nexus between those programs and the alleged harm. Further, it is Respondent's objections and responses that are deficient. Respondent's letter does not identify with specificity any DEI program or activity that Respondent believes is protected by Section 713. Please identify with specificity any such program, including its title or name, the scope of the program (the purpose and personnel covered by the program), years that the program was in effect, any modifications to the program during those years, and any analysis that Respondent relied upon in creating or maintaining the program, and specifically identify (with citations to specific language or provisions) the EEOC guidance or document or statement or regulation that Respondent relied upon in crafting and adopting the program. Even if the Respondent asserts that it believes that Section 713 would provide a defense to any potential violations for certain programs, this section is not a bar to EEOC's collection of information. Accordingly, EEOC is not modifying its RFI requests on this basis.

<u>Confidentiality concerns</u>: EEOC investigative files are protected from disclosure by confidentiality provisions contained within Title VII. Accordingly, Respondent's assertion of confidentiality concerns does not provide a basis for refusing to produce responsive information to EEOC and EEOC will not agree to enter an additional confidentiality order. Likewise, EEOC will not agree to Respondent's suggested redaction of the identity of other personnel. Redacting names of employees who provided feedback or performance information or who may be comparators simply will not allow EEOC to investigate Charging Party's claims of discrimination. EEOC also will not agree that it will not disclose information produced by Respondent to CP during our investigation if it is necessary for purposes of the investigation. EEOC will respect the confidentiality provision of Title VII in this case as in all investigations.
-
<u>Time frame covered by the requests</u>: Respondent objects to producing information that

Respondent characterizes as prior to the specific adverse actions that affected Charging Party (which Respondent asserts was June 2024). Charging Party's charge of discrimination, however, is not so limited, and in any case, EEOC is not limited to seeking information solely from the 300-day period preceding CP's charge. To enable Respondent to produce information more quickly, EEOC will agree to modify the period of requests numbers 11 through 21 from Jan. 1, 2020, to the present to Jan. 1, 2022, to the present.

Respondent has offered to begin rolling production of responsive information on June 23, 2025. EEOC requests that Respondent begin rolling production responsive to all requests at that time, not only to those that Respondent identified in its June 4, 2025, response.

Regarding the interview of Ms. Amy Hanneman, who has served as Respondent's Vice President of Diversity & Inclusion, EEOC stands by its request and suggests that the parties agree that she will be produced for an interview the week of July 7 or July 14, which will allow the EEOC to review Respondent's RFI responses in advance of the interview.

Finally, EEOC appreciates that Respondent expressed an interest in trying to resolve this charge of discrimination. EEOC is always open to such early discussions.

We look forward to speaking with you tomorrow.

---

**From:** López, Rebeca <RLopez@gklaw.com>
**Sent:** Wednesday, June 4, 2025 4:09 PM
**To:** BENJAMIN LIDHOLM <BENJAMIN.LIDHOLM@EEOC.GOV>
**Cc:** Heaton, Paul F. <PHeaton@gklaw.com>; López, Rebeca <RLopez@gklaw.com>
**Subject:** Objections and Responses re: EEOC No. 443-2025-01752, Mcnulty v Northwestern Mutual [GK-ACTIVE.FID3602277]

> **CAUTION:** The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

Mr. Lindholm,

Please see attached. The same will also be filed via the EEOC Portal. We look forward to our discussion with you next week Thursday.

Kind regards,

Rebeca

**Rebeca M. López** | Attorney (she/her/hers)

414.287.9634 direct | 414.405.7488 mobile | RLopez@gklaw.com

**GODFREY✦KAHN**

*This is a transmission from the law firm of Godfrey & Kahn, S.C. and may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at (414) 273-3500.*

# Exhibit 5

| | |
|---|---|
| **From:** | BENJAMIN LIDHOLM |
| **To:** | López, Rebeca; Heaton, Paul F. |
| **Cc:** | SETH SINCLAIR |
| **Subject:** | RE: McNulty v Northwestern Mutual, EEOC No. 443-2025-01752 -Rolling Production [GKL-ACTIVE.FID4817199] |
| **Date:** | Friday, June 27, 2025 7:19:23 AM |
| **Attachments:** | image001.png |

---

**[EXTERNAL] This message originated from outside your domain.**

---



Good morning,

As we discussed in at length during our June 12th meeting, the Commission is bound by Title VII's statutory confidentiality obligation. We also abide by our Compliance Manual's Section 83 disclosure limitations, and the Freedom of Information Act requirements. As previously discussed, we cannot agree to additional limitations.

Thank you,

---

**From:** López, Rebeca <RLopez@gklaw.com>
**Sent:** Monday, June 23, 2025 5:16 PM
**To:** Heaton, Paul F. <PHeaton@gklaw.com>; BENJAMIN LIDHOLM <BENJAMIN.LIDHOLM@EEOC.GOV>
**Cc:** SETH SINCLAIR <SETH.SINCLAIR@EEOC.GOV>
**Subject:** RE: McNulty v Northwestern Mutual, EEOC No. 443-2025-01752 -Rolling Production [GKL-ACTIVE.FID4817199]

Mr. Lidholm:

We have not heard back from you in response to Mr. Heaton's June 19, 2026 email (below), seeking confirmation concerning the handling of confidential and personal information. Please confirm whether the EEOC will agree to respect to the confidentiality protections recited in that correspondence; upon receipt of that confirmation, we will send you the balance of the rolling production that we intended to produce today.

In the meantime, I am confirming transmittal of the following materials, which can be transmitted without the additional assurances requested in Mr. Heaton's June 19, 2026 email; these materials are being produced subject to the objections and limitations set forth in our prior correspondence to the EEOC:

- **RFI No. 4** – McNulty Personnel File - RFI004 - MCNULTY-EEOC-PROD-000313 – 691
- **RFI No. 6** – Year-End Feedback for McNulty Year-End Reviews - MCNULTY-EEOC-PROD-000692 – 714

In addition, please refer to MCNULTY-EEOC-PROD-000119 – 125 and 131 – 134, that were

previously produced as confidential exhibits to Northwestern Mutual's May 2, 2025 position statement. Consistent with our agreement to proceed with a rolling production, we will continue to provide additional responsive materials as they become available for production, including in response to RFI Nos. 1, 2, 3, and 7.

Please let us know if you have any questions.

Thank you,

Rebeca

**Rebeca M. López** | Attorney (she/her/hers)
414.287.9634 direct | 414.405.7488 mobile | RLopez@gklaw.com

## GODFREY✦KAHN

*This is a transmission from the law firm of Godfrey & Kahn, S.C. and may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at (414) 273-3500.*

**From:** Heaton, Paul F. <PHeaton@gklaw.com>
**Sent:** Thursday, June 19, 2025 2:32 PM
**To:** BENJAMIN LIDHOLM <benjamin.lidholm@eeoc.gov>
**Cc:** López, Rebeca <RLopez@gklaw.com>; SETH SINCLAIR <seth.sinclair@eeoc.gov>
**Subject:** McNulty v Northwestern Mutual, EEOC No. 443-2025-01752 - Confidentiality Protections

Mr. Lidholm:

Following up on our June 12, 2025 discussion, I am writing to request your written confirmation that any confidential and/or private information concerning Northwestern Mutual and its employees is not disclosed by the EEOC before Northwestern Mutual and/or the affected employees have an opportunity to seek court protection concerning such potential disclosure.

Because 42 U.S.C. s. 2000e-8(e) only applies "prior to the institution of a proceeding," and because your June 11, 2025 email specifically advises that the EEOC may decide to disclose confidential information to Mr. McNulty as the EEOC deems "necessary for purposes of the investigation," Northwestern Mutual needs to be certain there is a firm understanding that the confidentiality and privacy rights of the company and/or its employees are not compromised. There are two elements to this request.

First, please confirm that none of the information and/or the contents of documents designated as "**CONFIDENTIAL**" that is provided by Northwestern Mutual in response to the EEOC's requests for information, or that is otherwise provided by Northwestern Mutual to the EEOC during the course of the EEOC's investigation in this matter, will be disclosed to the public before *or* after the potential filing of a federal court action or proceeding, unless (a) Northwestern Mutual agrees in writing to such disclosure, *or* (b) a federal court approves such disclosure, *and* (c) subject

to any terms or limitations agreed upon or imposed under the scenarios contemplated in subsections (a) or (b).

Second, please confirm that none of the information and/or the contents of documents designated as "**NOT TO BE DISCLOSED TO COMPLAINING PARTY/PARTIES**" that is provided by Northwestern Mutual in response to the EEOC's requests for information, or that is otherwise provided by Northwestern Mutual to the EEOC during the course of the EEOC's investigation in this matter, will be disclosed (directly or indirectly) to Mr. McNulty, any other complaining party, and/or their respective representatives, unless (a) Northwestern Mutual agrees in writing to such disclosure, *or* (b) a federal court approves such disclosure, *and* (c) subject to any terms or limitations agreed upon or imposed under the scenarios contemplated in subsections (a) or (b).

Please note that the EEOC's confirmation of these two points is without prejudice to its right to dispute the propriety of any designations as **CONFIDENTIAL** or as **NOT TO BE DISCLOSED TO COMPLAINING PARTY/PARTIES,** and that its confirmation of these two points also is without prejudice to its right to dispute these constraints before a federal court.  In other words, Northwestern Mutual simply seeks to preserve the status quo (preservation of existing confidentiality and privacy rights), so that the EEOC does not unilaterally disclose such information beyond the constraints recited in this email without Northwestern Mutual's consent or a court order permitting such disclosure.  As I explained during our call, the only information that we currently contemplate designating as **NOT TO BE DISCLOSED TO COMPLAINING PARTY/PARTIES** is the contents of personnel files, performance evaluations and year-end review feedback concerning any of Mr. McNulty's colleagues at Northwestern Mutual. Obviously, Mr. McNulty's submission of his (disputed) charge to the EEOC does not give him license to review the personnel files, performance evaluations or year-end feedback concerning his colleagues.

Please confirm that the EEOC will abide by the disclosure constraints recited in this email, subject to the terms governing such disclosure set forth in this email, so that Northwestern Mutual can proceed with the production of information scheduled to begin on June 23, 2025.

Thanks much,

**Paul F. Heaton** | Attorney
414.287.9601 direct | PHeaton@gklaw.com

# GODFREY✛KAHN

*This is a transmission from the law firm of Godfrey & Kahn, S.C. and may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at (414) 273-3500.*

**From:** Heaton, Paul F.
**Sent:** Friday, June 13, 2025 2:44 PM
**To:** BENJAMIN LIDHOLM <benjamin.lidholm@eeoc.gov>; SETH SINCLAIR <seth.sinclair@eeoc.gov>
**Cc:** López, Rebeca <RLopez@gklaw.com>
**Subject:** McNulty v Northwestern Mutual, EEOC No. 443-2025-01752 (Follow-Up on Yesterday's Call)

Gentlemen:

I'm writing to follow up on yesterday's discussion, and Mr. Lidholm's email (below), to confirm that NM does stand on the objections and limitations interposed in our June 4, 2025 correspondence. I will reiterate the basis for this decision, as explained during yesterday's call.

Although we have asked the EEOC to refine its RFIs by identifying which purported "D&I" policies and procedures of NM that cause the EEOC concerns under Title VII, and the nexus of those purported policies and procedures to the discrimination charge advanced by Mr. McNulty, Mr. Lidholm stated during yesterday's call that "obviously" the EEOC's concerns extend beyond Mr. McNulty's own, individual claim. Mr. Sinclair added that it is not atypical for the EEOC to expand its investigation of an individual claim into a broader review of a company's policies and procedures, going beyond the individual complainant's charge, based on information learned during the course of an investigation. When we asked you to confirm our assumption that Mr. McNulty already has provided the EEOC with multiple documents reflecting various NM policies and programs, and requested that you identify any elements of those written policies and pronouncements (or elements of such policies/pronouncements) that the EEOC contends raise concerns under Title VII, you declined to do so, noting instead that there are multiple, public pronouncements from NM available on the internet for review.

Our concern, however, is that NM is entitled to advance notice of the alleged unlawful conduct by NM through its employment practices (i.e., the alleged violations of Title VII) that are being investigated by the EEOC, and that the EEOC should not propound any RFIs that are not reasonably directed to the individual discrimination charge that has been sworn out by Mr. McNulty. Title VII (and the regulations promulgated by the EEOC) contemplate specific, sworn, fact-based charges (in a written charge sworn under oath by the EEOC, an individual claimant, or both) placing the respondent employer on notice of the alleged conduct that is being investigated; *after* doing so, the EEOC has a right to pursue RFIs that are reasonably related to the sworn, written charge of discrimination. This is basic Due Process, allowing a respondent to know what charges it faces and why, *followed* by an exchange of information through RFIs. The contention that the EEOC is permitted to propound requests for information *first*, and identify the basis for such alleged violations that are being investigated *afterwards*, reverses the statutory and regulatory framework governing Title VII investigations.

We renew our request that the EEOC identify the particular NM employment practices (including any specific programs or policies) that form the basis for the EEOC's investigation and propounded RFIs, and explain the nexus between those practices and Mr. McNulty's discrimination charge. As presented, the RFIs not only are too indefinite and overly broad (by failing to define "D&I policies" and failing to identify any particular policies, programs, or employment practices being challenged, much less the nexus to the charges), but also exceed the EEOC's statutory authority.

As to your proposal that the company make an offer to resolve Mr. McNulty's particular

charge of discrimination, we continue to believe that an EEOC-sponsored mediation session makes sense, if the goal is to address and resolve that dispute expeditiously. Please let us know if this is something Mr. McNulty and the EEOC wish to consider.

Separately from any potential resolution of Mr. McNulty's charge, if the EEOC has identified any NM employment practices that cause it concerns under Title VII, we renew our request that the EEOC identify those practices and programs so that we can have a meaningful discussion. If the goal is to ensure compliance with Title VII, we continue to believe your identifying the basis for the EEOC's concerns is a reasonable and necessary starting point.

Finally, we will follow-up separately to confirm our understanding and expectations concerning the EEOC's protection of confidential information, including without limitation personnel files and other information that would identify individual employees of NM. As I mentioned during the call, NM only seeks basic protections that it is confident any court would readily afford the company to ensure those individuals' rights to privacy are not improperly jeopardized.

Sincerely,

Paul F. Heaton
Counsel for Northwestern Mutual

**Paul F. Heaton** | Attorney
414.287.9601 direct | PHeaton@gklaw.com

# GODFREY KAHN

*This is a transmission from the law firm of Godfrey & Kahn, S.C. and may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at (414) 273-3500.*

**From:** BENJAMIN LIDHOLM <BENJAMIN.LIDHOLM@EEOC.GOV>
**Sent:** Wednesday, June 11, 2025 2:54 PM
**To:** López, Rebeca <RLopez@gklaw.com>
**Cc:** Heaton, Paul F. <PHeaton@gklaw.com>; SETH SINCLAIR <SETH.SINCLAIR@EEOC.GOV>
**Subject:** RE: Objections and Responses re: EEOC No. 443-2025-01752, Mcnulty v Northwestern Mutual [GK-ACTIVE.FID3602277]

**[EXTERNAL] This message originated from outside your domain.**

Good afternoon,

EEOC has received your June 4, 2025, request for information response and objections to EEOC's May 21, 2025, Request for Information. This e-mail address three issues raised in the letter in the hope that this will speed production of responsive material.

Section 713 of Title VII & Respondent's request that EEOC identify programs that violate Title VII: As part of its letter, Respondent asserts reliance on the provisions of Section 713 of Title VII, 28 U.S.C. 2000e-12(b)(1) and in response to several requests Respondent asks that EEOC identify "the elements of the published D&I practices that violate Title VII and the nexus between those practices and the alleged harm." The purpose of EEOC's request for information is to allow EEOC to gather information about Respondent's programs and assess potential violations. It would turn the statute on its head to require EEOC to first assert what programs violate Title VII and the nexus between those programs and the alleged harm. Further, it is Respondent's objections and responses that are deficient. Respondent's letter does not identify with specificity any DEI program or activity that Respondent believes is protected by Section 713. Please identify with specificity any such program, including its title or name, the scope of the program (the purpose and personnel covered by the program), years that the program was in effect, any modifications to the program during those years, and any analysis that Respondent relied upon in creating or maintaining the program, and specifically identify (with citations to specific language or provisions) the EEOC guidance or document or statement or regulation that Respondent relied upon in crafting and adopting the program. Even if the Respondent asserts that it believes that Section 713 would provide a defense to any potential violations for certain programs, this section is not a bar to EEOC's collection of information. Accordingly, EEOC is not modifying its RFI requests on this basis.

Confidentiality concerns: EEOC investigative files are protected from disclosure by confidentiality provisions contained within Title VII. Accordingly, Respondent's assertion of confidentiality concerns does not provide a basis for refusing to produce responsive information to EEOC and EEOC will not agree to enter an additional confidentiality order. Likewise, EEOC will not agree to Respondent's suggested redaction of the identity of other personnel. Redacting names of employees who provided feedback or performance information or who may be comparators simply will not allow EEOC to investigate Charging Party's claims of discrimination. EEOC also will not agree that it will not disclose information produced by Respondent to CP during our investigation if it is necessary for purposes of the investigation. EEOC will respect the confidentiality provision of Title VII in this case as in all investigations.

Time frame covered by the requests: Respondent objects to producing information that Respondent characterizes as prior to the specific adverse actions that affected Charging Party (which Respondent asserts was June 2024). Charging Party's charge of discrimination, however, is not so limited, and in any case, EEOC is not limited to seeking information solely from the 300-day period preceding CP's charge. To enable Respondent to produce information more quickly, EEOC will agree to modify the period of requests numbers 11 through 21 from Jan. 1, 2020, to the present to Jan. 1, 2022, to the present.

Respondent has offered to begin rolling production of responsive information on June 23, 2025. EEOC requests that Respondent begin rolling production responsive to all requests at that time, not only to those that Respondent identified in its June 4, 2025, response.

Regarding the interview of Ms. Amy Hanneman, who has served as Respondent's Vice President of

Diversity & Inclusion, EEOC stands by its request and suggests that the parties agree that she will be produced for an interview the week of July 7 or July 14, which will allow the EEOC to review Respondent's RFI responses in advance of the interview.

Finally, EEOC appreciates that Respondent expressed an interest in trying to resolve this charge of discrimination. EEOC is always open to such early discussions.

We look forward to speaking with you tomorrow.

---

**From:** López, Rebeca <RLopez@gklaw.com>
**Sent:** Wednesday, June 4, 2025 4:09 PM
**To:** BENJAMIN LIDHOLM <BENJAMIN.LIDHOLM@EEOC.GOV>
**Cc:** Heaton, Paul F. <PHeaton@gklaw.com>; López, Rebeca <RLopez@gklaw.com>
**Subject:** Objections and Responses re: EEOC No. 443-2025-01752, Mcnulty v Northwestern Mutual [GK-ACTIVE.FID3602277]

> **CAUTION:** The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

Mr. Lindholm,

Please see attached. The same will also be filed via the EEOC Portal. We look forward to our discussion with you next week Thursday.

Kind regards,

Rebeca

**Rebeca M. López** | Attorney (she/her/hers)
414.287.9634 direct | 414.405.7488 mobile | RLopez@gklaw.com



*This is a transmission from the law firm of Godfrey & Kahn, S.C. and may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at (414) 273-3500.*