# ATTACHMENT 8

| | |
|---|---|
| IN THE MATTER OF: )<br>)<br>Mark McNulty, )<br>)<br>       CHARGING PARTY, )<br>)<br>v. )<br>)<br>Northwestern Mutual, )<br>)<br>       RESPONDENT. )<br>) | SUBPOENA NO. CHMK-2025-1<br><br>CHARGE NO. 443-2025-01752 |

PETITIONER: Northwestern Mutual      BY: Paul F. Heaton
                                                              Godfrey & Kahn, S.C.
                                                              833 E. Michigan Street, Suite 1800
                                                              Milwaukee, WI 53202-5615

## **DETERMINATION ON PETITION TO REVOKE OR MODIFY SUBPOENA**

Northwestern Mutual has petitioned the Equal Employment Opportunity Commission (the "Commission") to revoke or modify Subpoena No. CHMK-2025-1 issued by the Commission's Chicago District Office. The Commission issues this determination pursuant to 29 C.F.R. §1601.16 and in accordance with Section 24.12 of the Compliance Manual. For the reasons set forth below, the petition is denied.

### I.     BACKGROUND

On March 1, 2025, Charging Party Mark McNulty ("Charging Party" or "McNulty") filed a charge of discrimination alleging that his employer, Northwestern Mutual, discriminated against him and a class of similarly situated individuals, on the basis of their color, national

origin, race and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), attached as Exhibit A. Charging Party also alleged that Northwestern Mutual retaliated against him for complaining about the same, in violation of Title VII. Northwestern Mutual, the Respondent in the underlying charge of discrimination and Petitioner here, is a financial services company operating in Milwaukee.

As described in his class charge of discrimination, Charging Party McNulty worked as an Anti-Money-Laundering Officer at the company. McNulty alleges that Northwestern Mutual discriminated against him and others on the bases of his sex, race, color, and national origin when it enhanced its existing Diversity Equity and Inclusion policy by focusing on providing additional support and opportunities for women and people of color. McNulty claims these policy enhancements served to deprive him of promotion opportunities. Additionally, Charging Party McNulty alleges that he was retaliated against when he complained.

Northwestern Mutual submitted a Position Statement on May 2, 2025, responding to the charge. In it, Northwestern Mutual claims that Charging Party was not qualified for the promotions he sought and asserts that its diversity initiatives do not allow for hiring or promotions based on gender, color, or race. Northwestern Mutual also denied any acts of retaliation.

*Requests for Information*

As part of its investigation of the charge, the Commission sent Northwestern Mutual an initial Request for Information dated May 21, 2025, with twenty-one requests. The information sought included documents in the following categories: (1) general corporate information (Requests 1-3); (2) personnel information of specific company employees including Charging Party (Requests 4-7); and (3) information about the company's DEI policies and practices

2

(Requests 8-21). EEOC also requested to interview Amy Hanneman, Vice President of Diversity and Inclusion, to obtain information relating to these policies and practices. Northwestern Mutual provided a minimal response to the RFI – largely duplicates of information already submitted with its Position Statement - and refused to produce any material relating to its diversity and inclusion policies and programs.

*The Subpoena and Petition to Revoke*

On June 27, 2025, the Commission served Subpoena Number CHMK-2025-1 upon Northwestern Mutual. A copy of the subpoena is attached as Exhibit B. The information sought by the subpoena was substantially similar to that requested in the RFI. On July 3, 2025, Northwestern Mutual complied with the subpoena in part and objected in part, submitting a Petition to Revoke or Modify the Subpoena ("Petition to Revoke"). A copy of the Petition to Revoke is attached as Exhibit C. Even those requests where Northwestern Mutual purported to comply were incomplete in significant ways, lacking, for example, contact information for identified employees. Northwestern Mutual also did not agree to produce the witness for an interview.

## II. ANALYSIS

The Commission enjoys broad authority to seek information relevant to its investigation of unlawful employment discrimination. Section 709(a) of Title VII grants the Commission access to "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by [Title VII] and is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). The Supreme Court has adopted an "expansive definition of 'relevance'" for EEOC subpoenas, observing that "[c]ourts have afforded the Commission access to virtually any material that might cast light on the allegations against the

3

employer." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68-69, n.20 (1984) (quoting *United States v. Arthur Young & Co.*, 465 U.S. 805, 814-815 (1984)).

Along with its authority to investigate the merits of the charges it receives, the Commission possesses authority to subpoena information needed to determine, as a threshold matter, whether a particular charge of discrimination is covered by the statutes it enforces. *EEOC v. Sidley Austin Brown & Wood*, 315 F.3d 696, 699 (7th Cir. 2002) ("[L]ike any agency with subpoena powers the EEOC is entitled to obtain the facts necessary to determine whether it can proceed to the enforcement stage."). At this stage of the proceedings, the EEOC is *investigating* McNulty's charge of discrimination and has issued an administrative subpoena; it is not in litigation and EEOC has made no finding of discrimination. The Commission is simply seeking the information it needs to assess the claims raised by the Charge and as well as Respondent's Position Statement.

In order to successfully petition a court to enforce its administrative subpoena, the Commission need only show that: (1) the subpoena is within the agency's authority; (2) the demand is not indefinite; and (3) the information sought is relevant to the investigation. *See Univ. of Pa. v. EEOC*, 493 U.S. 182, 191 (1990); *EEOC v. Aerotek, Inc.*, 815 F.3d 328, 333 (7th Cir. 2016). Once this showing is made, a court will enforce the subpoena unless the respondent can prove that the subpoena is unduly burdensome. *Id.* EEOC's requests for information in this case easily meet this standard, and Northwestern Mutual has provided no basis on which they should be modified.

### A. Categorical Grounds and Objections

Northwestern Mutual makes a series of what it calls "categorical objections" to all of the Requests for Information. These objections cover a range of issues, but all of them suffer from the same flaw. At this stage of the proceeding, Northwestern's assertions that Charging Party's claims are baseless and that Northwestern Mutual's DEI policies and practices are lawful, to say

nothing of its assertions the investigation is based on a bad faith interpretation of Title VII, an impermissible Executive Order, or that Northwestern Mutual has a valid defense, simply do not deprive the Commission of authority to investigate. In order to conduct an investigation, the agency is not required to first reach a conclusion about the merits of the claims in the charge under the applicable statute. See *Shell Oil*, 466 U.S. at 72 n. 26; *Univ. of Pa*., 493 U.S. at 191; *Schwan's Home Serv*., 644 F.3d 742, 747 (8th Cir.2011) (holding that "a charge is valid regardless of the strength of its evidentiary foundation"); *Peat, Marwick, Mitchell & Co*., 775 F.2d 928, 930–33 (8th Cir.1985). *Mayo Clinic v. E.E.O.C*., No. 14-CV-3844 JNE/TNL, 2015 WL 4727289 (D. Minn. Aug. 7, 2015); *see also Commodity Futures Trading Comm'n v. Tokheim*, 153 F.3d 474, 477 (7th Cir. 1998) ("[T]he Commission may investigate to determine whether conduct falls within its jurisdiction [and] 'determine in the first instance the question of coverage.'") (quoting *American Int'l Trading Co. v. Bagley*, 536 F.2d 1196, 1198 (7th Cir. 1976)).

  Northwestern Mutual devotes much of its Petition to defending its current DEI policies and practices by referencing EEOC materials and arguing that its policies are in direct alignment with them. But here, the company is putting the proverbial cart before the horse. The Commission is entitled to view Northwestern Mutual's DEI policies and practices before determining whether these policies, as written or applied, comply with the law. The Commission has made no finding that Northwestern Mutual has violated the law; it is simply fulfilling its statutory obligation to investigate charges of employment discrimination. At the conclusion of its investigation, the EEOC may determine that it has no cause to believe that discrimination has taken place. If, on the other hand, the Commission determines that it has cause to believe that Northwestern Mutual has engaged in employment discrimination and is unable to conciliate the McNulty's claim, it may decide to file a lawsuit and the company will then have an opportunity to present its factual and legal defenses to these claims. Therefore, Northwestern Mutual has no

5

basis for refusing to produce materials pursuant to this administrative subpoena on the grounds that it believes it has not violated the law or the conduct at issue is somehow exempt from coverage.

**B. Specific Objections**

Once it reaches the point of addressing the actual requests contained in EEOC's Request for Information, Northwestern Mutual makes a series of specific objections. None support revocation or modification of the subpoena.

<u>Burden (Requests 1 and 7, 8-17, 19-21[1])</u>

To the extent Northwestern Mutual claims that responding to some of the Commission's requests would be unduly burdensome, it has not met its burden. An employer contesting an EEOC subpoena carries a "difficult burden of showing that the demands are unduly burdensome or unreasonably broad." *EEOC v. United Air Lines, Inc.*, 287 F.3d at 653. In general, an employer meets its "difficult burden" only where it demonstrates that "compliance would threaten the normal operation of a [its] business." *EEOC v. Bay Shipbuilding Corp.,* 668 F.2d 304, 313 (7th Cir. 1981). For example, the company merely states, without explanation, that complying with Requests 8-21 would be unduly burdensome. Northwestern Mutual does not claim that producing the requested information would in itself be difficult or costly, still less that it would threaten the very operation of its business.). This is equally true with regard to showing that production of materials relating to McNulty's discrimination complaints (RFI 7) – some of the most highly relevant materials sought by the Commission – would be unduly burdensome.

---

[1] While we have focused on what appears to be the most significant objection in categorizing them here, we note Respondent's petition incorporates objections made in its RFI response and generally seems to object on all bases to all of the requests. This kitchen sink approach does not suffice to justify revocation or revision.

6

Here, even if Northwestern Mutual had some sort showing of burden in particular as to producing identifying and contact information (one of the requests to which it objects, RFI 1) the identity and contact information of employees in particular departments is necessary to allow a meaningful investigation into the merits of McNulty's individual and class charges of discrimination. Identifying individuals who work for Northwestern Mutual will permit the Commission to understand Northwestern Mutual's business by identifying who works in what jobs, contact potential witnesses, and develop the evidence needed to determine whether any violation has occurred.

Likewise, identifying and contacting other employees is relevant to the merits of McNulty's class-based charge, as it will allow the Commission to investigate whether certain employees as a class were subjected to sex, national origin, and race-based discrimination. *See EEOC v. Fed. Exp. Corp.*, 558 F.3d 842, 855 (9th Cir. 2009) (holding that where an EEOC charge "although brought by an individual, alleges a pattern and practice of racial discrimination . . . the EEOC plainly has jurisdiction to seek company-wide data"). This information is also relevant to McNulty's individual charge of discrimination. *See EEOC v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 639 F.3d 366, 369 ("[I]information concerning whether [the] employer discriminated against other members of the same class . . . may cast light on whether an individual person suffered discrimination.") (citing *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir. 2002)).

Courts have rejected arguments of burden and routinely approved the Commission's authority to seek information from and about individuals not named in the charge of discrimination, including on a "company-wide" basis. *See EEOC v. Union Pac. R.R.*, 867 F.3d 843, 852 (7th Cir. 2017) (upholding EEOC subpoena of "company-wide" information about job applicants at railroad). Northwestern Mutual has made no specific showing of burden, and

particularly given the close relationships between the requests and the claims at issue, the Respondent's unsupported claims of burdensomeness fail.

Privacy Concerns (Requests 5 and 6)

Northwestern Mutual objects to the production of the personnel files of specific employees including comparators (RFI 5) and corporate feedback regarding these employees (RFI 6) on the basis of privacy. This objection is without basis. Confidential information relating to alleged comparators, such as their personnel files, often must be obtained by the Commission during investigations when they support a charge of discrimination. *See EEOC v. Franklin & Marshall College*, 775 F.2d 110, 116 (3rd Cir.1985) (confidential material pertaining to other candidates for tenure may demonstrate that some pattern of discrimination appears); *Namenwirth v. Board of Regents of University of Wisconsin System*, 769 F.2d 1235, 1240-41 (7th Cir. 1985) (comparative evidence may be appropriate to rebut employer's proffered, non-discriminatory explanation).

Moreover, Northwestern Mutual's privacy concerns are unfounded. Title VII expressly prohibits disclosure to the public of charges filed with the Commission and information obtained in the agency's investigation of charges. *See* 42 U.S.C. §§ 2000e-5(b), 2000e-8(e); 29 C.F.R. §1610.17(b), (c). An employer's desire for "confidentiality is no excuse for noncompliance [with an EEOC subpoena] since Title VII imposes criminal penalties for EEOC personnel who publicize information obtained in the course of investigating charges of employment discrimination." *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d at 312 (citing 42 U.S.C. § 2000e-8(e)). And even if generalized privacy interests were implicated in this matter, they "would be more than offset by the concomitant impairment of the ability of the EEOC to identify and eliminate systemic employment discrimination." *Shell Oil Co.*, 466 U.S. at 81.

Northwestern Mutual also objects to production of these materials based on a vague and unsubstantiated fear of scrutiny by Charging Party McNulty who, it alleges, "harbors animus and

8

ill-will" against these employees. But EEOC may review these materials and share them with Charging Party McNulty if it will assist in its investigation. Charging Parties are not part of the "public" to whom disclosure of confidential information is illegal under §§ 706(b) and 709(e). *See EEOC v. Associated Dry Goods Corp.,* 449 U.S. 590 (1981).

Relevance/Coverage (Requests 11-14, 17-18)

Northwestern Mutual objects to other requests on the grounds that they relate to independent contractors not employees and thus these requests exceed EEOC's investigatory authority. But here again, Respondent is in essence asserting a defense to McNulty's charge without permitting the EEOC to make its own findings based on evidence it collects during its investigation. *See E.E.O.C. v. Peat, Marwick, Mitchell & Co.,* 589 F. Supp. 534, 538 (E.D. Mo. 1984), aff'd, 775 F.2d 928 (8th Cir. 1985) (enforcing EEOC subpoena despite Respondent claim that requests relate to partners and not "employees" covered by the statute because "it is possible that respondent may label some of its members as "partners" when in fact, those members may not fit withing the traditional definition of the term"). Northwestern Mutual may, of course, provide evidence supporting this defense at any time during the investigation or in any potential litigation. But alleging this defense does not absolve Northwestern Mutual from its obligation to comply with the Commission's administrative subpoena and produce this information.

Vagueness (Requests 9, 10, 15)

The argument that Northwestern Mutual does not understand the phrase "Respondent's Diversity and Inclusion policies" or "on the basis of diversity & inclusion" when it has already produced some responsive material and touts these policies on its publicly available websites, is not credible. EEOC is using the same terms used by Respondent to collect information directly related to the Charge. While EEOC is open to providing clarification in appropriate circumstances or modification if needed, this subpoena does not require that.

9

### III. CONCLUSION

For the foregoing reasons, Northwestern Mutual's objections are without merit. Title VII grants the Commission authority to investigate both the Charging Party's individual claims of discrimination as well as potential company-wide discrimination related to the charge of discrimination. The EEOC is entitled by statute to "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by [Title VII] and is relevant to the charge under investigation." 42 U.S.C. § 2000e–8(a). The EEOC does not need to establish reasonable cause for finding a violation of Title VII in order to issue a valid subpoena. *EEOC v. Chrysler Corp.,* 567 F.2d 754, 755 (8th Cir. 1977). Instead, **"it is the function of such investigative subpoenas to establish whether reasonable cause to bring a discrimination charge exists."** *Id.* (emphasis added); *see also E.E.O.C. v. Schwan's Home Serv.,* 707 F. Supp. 2d 980, 992 (D. Minn. 2010), aff'd, 644 F.3d 742 (8th Cir. 2011). The requested information is therefore relevant to the investigation, and its production is not unduly burdensome to Northwestern Mutual. Accordingly, EEOC Subpoena CHMK-2025-1 is valid, and the petition is therefore denied. The Subpoena should be enforced.

### III. DETERMINATION

Petitioner's Petition to Revoke or Modify Subpoena No. CHMK-2025-1 is denied. All sections of the subpoena are to be enforced as written. All documents requested in the subpoena shall be provided to the Chicago District Office of the Commission, 230 S Dearborn Street, Suite 1866, Chicago, IL 60604, within 30 days of the date of this Determination.

ON BEHALF OF THE COMMISSION:

DATED: September 4, 2025

Thomas M. Colclough, Director, OFP

*Digitally signed by Thomas M. Colclough, Director, OFP*
*DN: cn=Thomas M. Colclough, Director, OFP, o=EEOC, ou=Office of Field Programs (OFP), email=thomas.colclough@eeoc.gov, c=US*
*Date: 2025.09.04 12:04:03 -04'00'*

Thomas Colclough
Director
EEOC, Office of Field Programs

Att:
Exhibit A, Charge of Discrimination
Exhibit B, Subpoena
Exhibit C, Petition to Revoke or Modify Subpoena (with Exhibits)

11