ATTACHMENT 9



Direct: 414-287-9601<br>pheaton@gklaw.com

October 6, 2025

**VIA PORTAL & EMAIL (seth.sinclair@eeoc.gov and benjamin.lidholm@eeoc.gov)**

Mr. Benjamin Lidholm
Mr. Seth Sinclair
U.S. Equal Employment Opportunity Commission
310 W. Wisconsin Avenue, Suite 500
Milwaukee, WI 53203

    RE:    *Mark E. McNulty v. Northwestern Mutual*
              EEOC Charge No.: 443-2025-01752

Dear Messrs. Lidholm and Sinclair:

    I am writing to advise you that Northwestern Mutual stands on its objections to the subpoena served on the company (subject to two modifications), and to reiterate its prior offer to consider providing additional documents and data in response to reasonable limitations and refinements of the disputed EEOC requests (responsive to the concerns enumerated in the company's petition to revoke or amend the subpoena). Moreover, Northwestern Mutual renews its offer to meet and confer with the EEOC in pursuit of an appropriate resolution of the parties' dispute.

    Upon reviewing the multiple requests, demands, and exchanges between the EEOC and the respondent, culminating in the Commission's September 4, 2025 determination on the company's petition to revoke or modify the subpoena, Northwestern Mutual has identified one element of its responses that the company is willing to modify in an effort to reach a reasonable compromise with the EEOC. As you know, Northwestern Mutual previously responded to RFI Numbers 1 and 2 by producing an organizational chart and employee names of all Enterprise Compliance department employees holding the position of Senior Director or higher since January 1, 2020, as well as their gender, dates of hire, and, if applicable, dates of termination. However, the company did not produce the contact information requested in RFI Sections (1)(b)-(e), nor the race and national original data sought in subsections (j) and (l).

    In a continued effort to resolve the parties' disagreement, Northwestern Mutual will supplement its response to RFI Number 1 by producing the personal contact information requested in subsections (b)-(e). Consistent with Vol. 1, EEOC Compliance Manual, § 26.III.M.1, Northwestern Mutual invokes its right to be present during any EEOC interviews of its management personnel. Accordingly, any request to conduct such interviews should be

OFFICES IN MILWAUKEE, MADISON, GREEN BAY, APPLETON, AND EAU CLAIRE, WISCONSIN AND WASHINGTON, D.C.
GODFREY & KAHN IS A MEMBER OF TERRALEX®, A WORLDWIDE NETWORK OF INDEPENDENT LAW FIRMS.

Case 2:25-mc-00053-BHL    Filed 11/21/25    Page 2 of 7    Document 3-9

directed to the undersigned to coordinate schedules between the EEOC, Northwestern Mutual's counsel, and the interview subject.

Northwestern Mutual continues to object to subsections (j) and (l) as irrelevant to the sworn factual allegations in the complainant's charge of discrimination, in which McNulty alleges (1) that he was subjected to unlawful discrimination on the basis of gender (premised on being passed over for promotion in favor of Ms. Lund and Ms. Pulsfus, two white female colleagues); and (2) that he was subjected to unlawful retaliation for engaging in protected activity under Title VII (premised on being passed over for promotion in favor of Mr. Schloemer, a white male colleague). Because the EEOC is only entitled to pursue documents and information bearing on these two alleged instances of gender-based discrimination asserted in McNulty's sworn charge, the EEOC requests seeking to explore purported race and national origin discrimination are improper.

Notwithstanding these objections, in an additional effort to reach an agreement with the EEOC, and without waiving its objections that such data are irrelevant to McNulty's specific charge of discrimination, Northwestern Mutual has identified the race and national origin of those Enterprise Compliance employees. *See* Ex. 1 (Data Chart for Enterprise Compliance Personnel Identified in Response to RFI Nos. 1 and 2). Please note that the respondent will be supplementing this Data Chart to reflect the personal contact information requested by the EEOC and to designate those individuals who are managerial employees.

However, Northwestern Mutual must stand on the balance of its asserted objections. Regrettably, the EEOC's communications with the respondent during these proceedings, continuing with Director Colclough's September 4, 2025 determination on Northwestern Mutual's petition to revoke or modify, do not reflect good faith consideration of the respondent's objections or respect for federal court precedent governing the limits of EEOC investigative authority. Indeed, the Commission's September 4, 2025 determination misstates the company's objections and fails to grapple with the substance of those objections. Director Colclough asserts that the company objected to producing documents based on the weakness of McNulty's discrimination claim, for example, when the company specifically acknowledged that the "weak (indeed, spurious) nature of McNulty's underlying discrimination claim does not dictate the scope" of the EEOC's discovery rights. *Compare* Determination, pp. 4-5; *with* Petition, pp. 2-3.

Similarly, Director Colclough claims the company objected to the EEOC's demands for Northwestern Mutual "diversity and inclusion" policies based on a feigned inability to "understand" the meaning of the term. In fact, Northwestern Mutual objected to the overbroad and indefinite use of the term "diversity and inclusion" in the EEOC's document requests, as reflected in subpoena category numbers 7, 9, 10, 15, 17, and 19. As the EEOC acknowledges, an employer's diversity and inclusion efforts should be "integrated into all aspects of an employer's policies and practices, including the identification of those aspects of the organization's culture and environment that are barriers to equal employment opportunity." *See Best Practices of Private Sector Employers*, Jones Report at § I.D (emphasis supplied).

Since the EEOC itself believes that effective diversity and inclusion efforts must permeate "all aspects of an employer's policies and practices," the demand that Northwestern

Mutual identify and produce all documents reflecting its "diversity and inclusion" initiatives, much less all documents reflecting all analyses used to develop those initiatives and to ascertain their lawfulness, are plainly too indefinite and overbroad to enforce. For example, the demand for all "documents showing any analysis that Respondent relied upon to develop its Diversity & Inclusion policies or programs" encompasses an extraordinarily broad array of corporate initiatives, ranging from policies demanding respectful and professional work place communications; company observations of MLK Day; religious holiday accommodations; flexible work schedule policies; reasonable accommodation policies for persons with disabilities; parental leave policies; procedures for job placement postings; company-sponsored social gatherings; and any element of human resources policies governing enforcement of the company's other policies.

Given the broad array of programs, policies and initiatives falling under the umbrella of "diversity and inclusion," moreover, Northwestern Mutual's own understanding of the concept of "diversity and inclusion" does not excuse the EEOC from formulating information requests that plainly identify the particular employment practices being explored and the corresponding categories of documents being requested. *See, e.g., Keathley v. Spire Inc.*, 348 F.R.D. 344, 347–48 (E.D. Mo. 2024) (denying motion to compel the defendant to respond to an overbroad demand for the defendant's "DEI Policies," even where the plaintiff had attempted to define this necessarily broad term). *See also Am. Council of Learned Societies v. McDonald*, No. 25 CIV. 3657 (CM) (BCM), 2025 WL 2097738, at *10 (S.D.N.Y. July 25, 2025) (governmental mandates targeting policies "involve[ing] 'diversity, equity and inclusion'" held to be unconstitutionally vague); *Am. Pub. Health Ass'n v. Nat'l Institutes of Health*, 145 F.4th 39, 2025 WL 2017106, *45-46 (1st Cir. 2025) (same holding as to the phrase "DEI"); *Am. Pub. Health Ass'n v. Nat'l Institutes of Health,* No. CV 25-10787-WGY, 2025 WL 1822487, at *16-17 (D. Mass. July 2, 2025) (same holding).

Based on these concerns, Northwestern Mutual asked the EEOC to identify the specific categories of employment practices and associated records its seeks to obtain through its subpoena. *See* Petition at p. 10 n. 2; Objections to Nos. 9-15, 19-21. Director Colclough summarily rejected this request, stating that no such clarification was needed because Northwestern Mutual "already produced some responsive material" and because the company "touts" these policies on public websites. *See* Determination, p. 9. However, the documents produced by the company in response to the RFIs were identified and criticized by McNulty in his complaints to company management prior to submitting his discrimination charge to the EEOC. If there are particular Northwestern Mutual employment practices the EEOC seeks to investigate, it should formulate its information requests in a manner that reasonably identifies what is being requested so that the company has a fair opportunity to respond. Instead, the EEOC steadfastly refuses to disclose the employment practices prompting its "obvious" concerns about the lawfulness of the company's conduct, much less craft document demands reasonably tailored to investigate those practices. *See* Petition, p. 10 at n. 2.

Further, several of the legal conclusions asserted in the September 4, 2025 determination are at odds with respondent's rights, as confirmed in multiple federal court decisions rejecting the very EEOC overreach exhibited here. Moreover, after Northwestern Mutual expressed its concerns about the improper motive and impetus for the EEOC's conducting this fishing

expedition into the company's "diversity and inclusion" initiatives, Director Colclough's September 4, 2025 determination only validated those concerns. The EEOC's refusal to engage in a good faith dialogue with Northwestern Mutual to ensure the company's and its employees' rights are protected is epitomized in the penultimate sentence of Director Colclough's written ruling, refusing to retreat from *any* of the EEOC's unauthorized and overbroad document demands in the subpoena, and insisting that "*[a]ll* sections of the subpoena are to be enforced *as written*."

Northwestern Mutual has worked cooperatively with the EEOC in other matters over the years without incident or controversy. Despite its best efforts to cooperate with the Commission's investigation during these proceedings as well, the EEOC's overbroad subpoena, untethered to McNulty's specific charge of alleged discrimination, coupled with the EEOC's refusal to engage in any meaningful discussion concerning Northwestern Mutual's objections, has resulted in an unfortunate (and unnecessary) impasse.

Sincerely,

Paul F. Heaton
*Counsel for Northwestern Mutual*

PFH:sm

Enclosure
37237708.1

# EXHIBIT 1

**Supplemental Response – Enterprise Compliance Personnel Data**

| Name | Current/Former | Termination Date | Termination Reason | Race/Ethnicity |
|---|---|---|---|---|
| Allison Conrath | Current | n/a | n/a | White (United States of America) |
| Brian Derenne | Current | n/a | n/a | White (United States of America) |
| Derek Petersen | Current | n/a | n/a | White (United States of America) |
| Emily Talebi | Current | n/a | n/a | White (United States of America) |
| Heidi Mehring | Current | n/a | n/a | White (United States of America) |
| Jaime Pulsfus | Current | n/a | n/a | White (United States of America) |
| James Colbo | Current | n/a | n/a | White (United States of America) |
| Jason Freitag | Current | n/a | n/a | White (United States of America) |
| Jeffrey Schloemer | Current | n/a | n/a | White (United States of America) |
| Jessica Stenberg | Current | n/a | n/a | White (United States of America) |
| JoAnne Breese-Jaeck | Current | n/a | n/a | White (United States of America) |
| Jonathan Viard | Current | n/a | n/a | Black or African American (United States of America) |
| Laila Valters | Current | n/a | n/a | White (United States of America) |
| Mark McNulty | Former | 9/8/2025 | Termination | Declined to Answer (United States of America) |
| Matthew Gieryn | Current | n/a | n/a | White (United States of America) |
| Michael Conmey | Current | n/a | n/a | White (United States of America) |
| Michael MacInnis | Current | n/a | n/a | White (United States of America) |
| Nicholas Roedl | Current | n/a | n/a | White (United States of America) |
| Nicole Lund | Current | n/a | n/a | White (United States of America) |
| Paula Storniolo | Current | n/a | n/a | White (United States of America) |
| Phoutthalom Hord | Current | n/a | n/a | Asian (United States of America) |
| Randy Pavlick | Former | 7/31/2020 | Retirement | White (United States of America) |
| Rebecca Evenson | Current | n/a | n/a | White (United States of America) |
| Ricky Frank | Former | 6/30/2022 | Position Elimination | White (United States of America) |
| Robert Johnson | Former | 6/30/2022 | Retirement | White (United States of America) |
| Sarah Brach | Current | n/a | n/a | White (United States of America) |
| Tammy Roou | Former | 6/30/2022 | Career Change | White (United States of America) |
| Thomas Holtan | Current | n/a | n/a | White (United States of America) |
| Tracy Byron | Current | n/a | n/a | Black or African American (United States of America) |

37238125.1