IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Applicant, | |
| v. | Case No. 25-mc-0053 |
| NORTHWESTERN MUTUAL LIFE INSURANCE CO., | Judge Brett H. Ludwig |
| Respondent. | |

**REPLY IN SUPPORT OF APPLICATION FOR AN ORDER TO SHOW CAUSE WHY ADMINISTRATIVE SUBPOENA SHOULD NOT BE ENFORCED**

Northwestern Mutual is determined to defend itself against what it believes to be a baseless charge of employment discrimination by simply and emphatically *telling* the EEOC that the charge is baseless without allowing the EEOC to access the information it seeks to make its statutorily required investigation and independent conclusion. But EEOC investigations do not work that way. Here, EEOC received a valid charge of discrimination which alleged Title VII violations as to an individual (failure to promote based on race, sex, and national origin and retaliation) and as to a class (arising out of unlawful DEI programs) and EEOC is investigating that charge. Once the investigation is concluded, *if* the EEOC finds cause to believe that discrimination has occurred, *and if* the EEOC elects to bring suit, then Northwestern Mutual may raise all of its defenses. What it cannot do, however, is prevent the EEOC from investigating the charge.

As part of its opposition to EEOC's motion, Northwestern Mutual has submitted fact declarations from three current employees. Far from putting an end to the process, the

declarations illustrate the type of information that Northwestern Mutual could (and should) produce to EEOC. For example, Northwestern Mutual asserts that most of the programs about which EEOC seeks information applied only to independent contractors though it admits that at least one of the specific programs about which EEOC seeks information affected employees. *See* Declaration of Amy Hanneman. (Dkt. 17, ¶ 8.) To investigate the claims of discrimination in the charge, EEOC is entitled to collect information and test Northwestern Mutual's position on issues like this. EEOC's requests are sufficiently specific and narrowly tailored and should be enforced in their entirety.

## ARGUMENT[1]

### I. The Charge Includes Valid Claims of Individual and Class Discrimination

#### A. The underlying charge is sufficiently clear

Northwestern Mutual repeatedly cites *EEOC v. Shell Oil Co.*, 466 U.S. 54 (1984) to support its contention that it need not comply with this subpoena because, it claims, the charging party (Mark McNulty) and the EEOC did not identify the "allegedly unlawful employment practices" with "as much precision as [they] can muster." (Dkt. 13). Northwestern Mutual interprets this language to mean that EEOC is required to provide great detail in its notice of the charge to a Respondent. But *Shell Oil* requires no such thing. As the Supreme Court stated, "The specific purpose of the notice provision is to give employers fair notice of the existence and nature of the charges against them." *Id.* at 77. The Court then continued,

> It would be possible to read the requirement that the employer be told of "the date, place and circumstances of the alleged unlawful employment practice" as

---

[1] In its Reply, EEOC addresses Northwestern Mutual's arguments which begin on page 16 of its Opposition (Dkt. 13). The preceding 15 pages are identified by the Company as part of its Introduction and contain largely background material or material repeated in its Argument section. Sections I, IV, and VII of Northwestern Mutual's response brief are addressed in Argument Section I of this brief, Northwestern Mutual's Section VI is addressed in EEOC's brief at Section I.C, and the other sections are addressed serially.

> compelling a specification of the persons discriminated against, the dates the alleged discrimination occurred, and the manner in which it was practiced.

But the Court did not adopt that view, instead saying:

> We reject that construction for the same reason we rejected an analogous reading of 29 C.F.R. § 1601.12(a)(3) pertaining to the contents of charges: it would drastically limit the ability of the Commission to investigate allegations of systemic discrimination, and therefore would be plainly inconsistent with Congress' intent.

*Id*. at 78. The subject charge here provides clear notice of the individual and class charges against Northwestern Mutual.

Although Northwestern Mutual repeatedly claims it needs more information and detail with respect to the information EEOC is seeking, its Vice President, Belonging & Impact and Senior HR Business Partner Amy Hanneman (formerly titled Vice President, Diversity & Inclusion) appears to have little difficulty understanding EEOC's requests and providing responsive information. In a sworn statement attached as an exhibit to Northwestern Mutual's brief, Hanneman states, "In my role, I have personal knowledge concerning (a) Northwestern Mutual initiatives and programs furthering interests of diversity and inclusion that are directed at and applicable to Northwestern Mutual employees …" (Dkt. 17). She then discusses particular programs identified by EEOC in its subpoena, by name. *Id*. at ¶¶ 1, 2, 5, 6. Hanneman clearly has relevant knowledge regarding these policies and programs, but Northwestern Mutual has so far refused to produce Ms. Hanneman for an interview.

The information provided by the Hanneman declaration is exactly the type of information that EEOC would expect to collect via the investigative interview, which would allow EEOC to follow up on initial answers and test any responses by comparing them with the documentary information sought by the subpoena. Producing a declaration in this proceeding is not a

3

substitute for EEOC's interview. Rather it demonstrates why the interview and accompanying documents are both sufficiently specific and necessary to EEOC's investigation.

B. **The requested information is relevant to the charge**

Northwestern Mutual also claims that the subpoena should not be enforced because it seeks irrelevant information and is too general in scope. It argues that McNulty complains about his personal experience at the company and only generally complains on behalf of a class. While it is true that EEOC may only subpoena relevant information, this limitation does not constrain EEOC to review only evidence concerning the specific employment events described in the charge. See *E.E.O.C. v. Roadway Exp., Inc.*, 750 F.2d 40, 43 (6th Cir. 1984) ("[E]vidence concerning employment practices other than those specifically charged by complainants' may be sought by an EEOC administrative subpoena in cases involving a complaint of discriminatory discharge." (Internal citation omitted)).

Northwestern Mutual cites *E.E.O.C. v. United Air Lines, Inc.,* 287 F.3d 643, 653 (7th Cir. 2002) for the proposition that a valid charge of class discrimination only permits discovery into practices affecting "similarly situated" employees in the same position, work unit, and location as the charging party. (Dkt. 13 at p. 21). Northwestern Mutual misstates the holding of that case. The Court in *United Airlines* refused to enforce the subpoena at issue because it required extensive information with respect to *all United employees residing abroad,* which United Airlines claimed would be an enormous burden. EEOC's subpoena here is not overbroad and Northwestern Mutual has never claimed that compliance would be burdensome.

In fact, courts routinely permit EEOC to seek information regarding a class even when it receives an individual charge. *See, e.g., Blue Bell Boots, Inc. v. EEOC,* 418 F.2d 355 (6th Cir.1969) (cited with approval in *Shell Oil*). In *Blue Bell Boots*, the Sixth Circuit stated that

4

racial discrimination is "by definition class discrimination" and held that, in determining whether an employer practiced racial discrimination, the existence of discrimination in job classifications or hiring situations other than those of the complainants "may well justify an inference that the practices complained of here were motivated by racial factors." *Blue Bell Boots,* 418 F.2d at 358; s*ee also E.E.O.C. v. Konica Minolta Bus. Sols. U.S.A., Inc.,* 639 F.3d 366, 369 (7th Cir. 2011). McNulty claims he was harmed by Northwestern Mutual's policy and practices which he claims favor one racial group or sex over another. "By definition," this is class discrimination.

### C.  The subpoena requests are not indefinite or otherwise unenforceable

The subpoena requests relating to diversity and inclusion materials are narrowly tailored, many quoting documents and programs that Northwestern Mutual has itself publicized. (Dkt. 3, Att. 6). Hanneman's declaration also shows that the company has a clear understanding of the programs of interest to the EEOC. Unlike the cases cited by Northwestern Mutual (Dkt 13, at p. 27 & fn. 10) in which courts found the use of similar diversity and inclusion terms vague or an individual discrimination case where a motion to compel DEI policies was denied, this subpoena is directed to an employer which *itself* used those terms, and the subpoena is being issued to collect information about potential class-wide discrimination not to communicate to employers about the legality of conduct.

Northwestern Mutual's specific objection to one of EEOC's requests, the request for any affirmative action plans, cites only a single case and asserts that the Seventh Circuit has determined that "the existence of an affirmative action plan is not relevant to prove discrimination." (Dkt. 13, at p. 29 (citing *McQuillen v. Wisconsin Edu. Ass'n Council*, 830 F.2d 659, 666 (7th Cir. 1987)). What that case actually holds is that where there is no evidence of a causal connection between the plan and the hiring decision at issue, the plan is not evidence of

5

discriminatory intent and there is no need to resolve the validity of the plan. This does not support the conclusion that affirmative action plans have no relevance as an investigative tool, and other courts have ordered their production in discrimination cases. *See, e.g. Aramburu v. Boeing Co.,* 885 F. Supp. 1434, 1441 (D. Kan. 1995); *Brown v. W. Corp.,* 287 F.R.D. 494, 505 (D. Neb. 2012) (discussing whether 30(b)(6) witness was appropriately prepared and noting that in individual discrimination case, "the content of West's affirmative action policy and whether the individuals accused of discrimination followed it" is relevant). Further, the Seventh Circuit has said that "the existence of an affirmative action plan may be relevant to a key issue in a disparate treatment discrimination case: discriminatory intent." *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 722 (7th Cir. 2005) (internal citation omitted). Accordingly, EEOC should have the opportunity to examine Northwestern Mutual's affirmative action plans in the context of the claims at issue in the charge under investigation.

## II. Northwestern Mutual's Assertion of a Section 713 Defense Does Not Prevent EEOC From Investigating

Northwestern Mutual asserts reliance on the safe-harbor provision of Title VII to put a stop to EEOC's investigation of its diversity and inclusion practices. Section 713 of Title VII creates statutory a bar to liability for discrimination in violation of Title VII where an employer can point to a Commission opinion or interpretation that permits (or previously permitted) its conduct. 42 U.S.C. 2000e-12(b). Northwestern Mutal claims that it cannot identify with specificity the past Commission interpretation or opinion on which it relied in connection with its diversity and inclusion programs because EEOC has not identified exactly which Northwestern Mutual policies or practices violate Title VII. Northwestern Mutual's position is both circular and unsupported by the law. Section 713 is not a basis upon which Northwestern Mutual can avoid responding to EEOC's subpoena.

The Supreme Court has described section 713(b) as recognizing "a complete, but very narrow, immunity for employer conduct." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 423 n.17 (1975). Looking first at the statutory language, the section 713 exemption applies "in an action or proceeding, based on any alleged unlawful employment practice" and it instructs that "no person shall be subject to *any liability* if he *pleads and proves* that the act. . .. complained of was in good faith, in conformity with, and in reliance on any written interpretation or opinion of the Commission." 42 U.S.C. 2000e-12(b) (emphasis added). By its own terms, the exemption operates to bar "liability." It does not preclude investigative inquiry. It is worth emphasizing that in a subpoena enforcement like this one, liability is not at issue.

The plain language of the exemption also places the burden of pleading and proof on the employer, making clear that the facts of the employer's conduct will be examined. Caselaw confirms that an employer's reliance on section 713 is a question of fact. *See Le Beau v. Libbey-Owens-Ford Co.*, 727 F.2d 141, 149 (7th Cir. 1984) ("[T]he finding of fact that there was such a decision [of good faith reliance on a written interpretation or opinion of the Commission] may be made from all the evidence which is of record after a long trial"); *Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1194 (6th Cir. 1995) (examining the record evidence to show that General Motors attempted in good faith to comply with an official opinion letter from the EEOC issued to it and therefore "it did not violate Title VII"); *Stryker v. Reg. Pub. Co.*, 423 F. Supp. 476, 480 (D. Conn. 1976) (noting "[t]he parties will have an opportunity to present evidence on" whether the defendant relied in good faith on a written interpretation or opinion of the Commission). It would make no practical sense to read the statute as Northwestern Mutual does, to permit an employer to avoid an investigative inquiry from the EEOC simply by asserting reliance on a Commission interpretation or opinion without giving the EEOC the opportunity to

assess both the scope of the employer's practices and whether they were in fact in good faith in conformity with Commission guidance.

The caselaw and governing regulations also make clear that the types of Commission materials that are sufficient to support an employer's defense under section 713 are themselves limited. *See* 29 C.F.R. § 1601.93; *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1200 (7th Cir. 1971). Northwestern Mutual does not even attempt to demonstrate that any materials on which it might claim reliance meet this standard.

Northwestern Mutual cites *no* caselaw holding that section 713 operates to preclude an EEOC investigation, and EEOC is aware of none. Instead, Northwestern Mutual contends that the basis for EEOC's investigation is so lacking that EEOC is obviously pursuing this investigation in bad faith. (Dkt. 13 at p. 23 (citing *McLane*, 581 U.S. at 77, *EEOC v. Michael Const. Co,* 706 F.2d 244, 250 (8th Cir. 1983)). Northwestern Mutual's belief that its policies and programs were justified by past statements by the EEOC or individual Commissioners does not somehow make this investigation in bad faith.[2]

If this investigation ultimately results in a merits suit against the Company by EEOC (or a private plaintiff), Northwestern Mutual will be able to raise a section 713 defense. Until that time comes any assertion of reliance by Northwestern Mutual on past Commission interpretation or opinion to bar EEOC action is premature. Such reliance is a subject for EEOC investigation not a barrier to it.

---

[2] Northwestern Mutual also accuses EEOC of bad faith regarding its recent press release. (Dkt 13, fn. 8), suggesting that EEOC has all but named it a lawbreaker. But the press release makes no such claim. The allegedly offending quote refers only to the unremarkable and unsurprising fact that EEOC pursues investigations when it sees evidence that an employer's programs or policies *may* violate the law.

### III. Northwestern Mutual's Assertion that Certain Programs Applied Only to Independent Contractors Does Not Bar EEOC From Investigating

EEOC recognizes that Title VII protects only employees from discrimination, not independent contractors. Northwestern Mutual contends that some of the diversity and inclusion programs that EEOC identified in its subpoena apply only to independent contractors and that this prevents EEOC from investigating those programs. *See* Hanneman declaration (Dkt. 17) (asserting that the "Early Career Connections," "LGBTQ+ Study Group," and "3Rising Women" programs are limited to Field Reps (and not employees)). But, of course, the title an employer gives to a worker is not dispositive of their actual status. *See Smith v. Chicago Sun-Times, Inc.*, No. 06 C 6142, 2007 WL 2278889, at *2 (N.D. Ill. Aug. 6, 2007) (citing *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir.1991) (looking at the economic realities of the work relationship rather than the label given to determine whether a relationship is one of employee-employer or independent contractor)).

The employment relationship is a question of fact that EEOC is entitled to investigate. None of the cases cited by Northwestern Mutual in footnote 9 hold that EEOC may not investigate this issue. While Northwestern Mutual may claim that its programs apply to independent contractors, which are not covered by Title VII, the defense does not negate the Commission's authority to investigate the charge. *EEOC v. Tempel Steel Co.*, 814 F.2d 482, 485 (7th Cir. 1987) ("[T]he EEOC's authority to investigate is not negated simply because the party under investigation may have a valid defense to a later suit.")

Northwestern Mutual also ignores the fact that subpoena requests that reference specific training programs that the company now says apply only to independent contractors, also seek information about any similar training for *employees*. (Dkt. 3, Att. 6). With respect to at least one program – "Sustained Action for Racial Equality" Northwestern Mutual acknowledges some

applicability to employees. (Hanneman Dec. (Dkt. 17 ¶ 8)). And Northwestern Mutual has not yet answered this question one way or the other regarding other programs such as "Early Career Connections," "LGBTQ+ Study Group," and "3Rising Women." (Hanneman Dec. (Dkt. 17 ¶ 5)). This is not a fishing expedition. EEOC is trying to find out exactly which programs applied to employees (or to workers who are considered employees under Title VII regardless of how Northwester Mutual classified them) and whether they violated Title VII.

IV. **Personnel Files of Decision Makers and Comparators Are Relevant and EEOC May Share Such Information with Charging Party**

Pursuant to its investigation, EEOC issued a request for information which included Request No. 5:

> A complete copy of the personnel file (*excluding* leave and benefits information) for the following employees including documents sufficient to show the race, national origin, and sex of each employee: Jamie Pulsfus (Senior Director *promoted* to Vice President), Sarah Brach (Senior Director), Paula Storniolo (Senior Director); Jonathan Viard (Senior Director); Nicole Lund (Senior Director *promoted* to NMIS CCO); Jeff Schloemer (VP, *promoted* to WMO CCO); Mike Commey (Vice President); Laila Valters (*decisionmaker* on promotion); Ray Manista (Chief Legal and Public Affairs Officer); [and] Rebecca Villegas (VP -Enterprise Compliance) (emphasis added).

The personnel files of these individuals, including charging party's comparators and the decisionmakers, are inherently relevant to the underlying charge of discrimination at issue. Here, EEOC is investigating allegations of race, sex, and national origin discrimination in promotion. EEOC is not requesting personnel files of an entire department or employees company-wide. Rather, EEOC has limited its requests to those relevant to the charge and its investigation.

EEOC requested the personnel files of employees who received promotions, made the promotion decision, were in leadership or were similarly situated to the Charging Party. This court has previously determined that personnel files of the decisionmakers and those alleged to have discriminated against a plaintiff are clearly relevant and discoverable. *See Digan v. Euro-*

*Am. Brands, LLC*, No. 10 C 799, 2012 WL 668993, at *5 (N.D. Ill. Feb. 29, 2012) ("[Plaintiff] is entitled to discover the personnel files of the decisionmakers involved in her termination") and *Byers v. Illinois State Police*, No. 99 C 8105, 2002 WL 1264004, at *13 (N.D. Ill. June 3, 2002) ("The personnel files of the individuals alleged to have discriminated against the plaintiffs are clearly relevant.").

Likewise, "[d]iscovery into the relevant employment-related documents of such potentially similarly situated comparators is permissible as it is relevant to [an employee's] claims." *Speller v. Am. Ass'n of Neurological Surgeons*, No. 20 CV 1983, 2021 WL 2186182, at *3 (N.D. Ill. May 28, 2021) (citing *Lane v. Riverview Hosp.*, 835 F.3d 691, 696 (7th Cir. 2016) ("[E]vidence that the employer treated better a similarly situated employee outside the plaintiff's protected class can provide some circumstantial evidence of discrimination.")).

Additionally, Request No. 5 is appropriately tailored to exclude documents that may contain irrelevant, confidential materials. EEOC intentionally requested "personnel file[s] (*excluding* leave and benefits information) (emphasis added)," which serves to exclude any disclosure of confidential information that does not pertain to the investigation. Therefore, EEOC made efforts to narrow its requests to avoid inadvertent or unnecessary disclosures of confidential information.

Northwestern Mutual asserts that EEOC can be barred from sharing information from these files with the Charging Party, citing *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590 (1981), but Northwestern Mutual fundamentally misunderstands the holding in *Associated Dry Goods*. There, the Supreme Court found that "respondent was entitled only to assurance that each employee filing a charge against [the employer] would see information in no other file than his

11

or her own." *See Id.* at 604. This means that a Charging Party can only see their own investigative file and not the investigative files *of other potential Charging Parties. Id.*

The *Associated Dry Goods* court explained that further restricting EEOC would hinder an investigation and possible early resolution between the parties. *See id.* at 600-01 (recognizing the public policy considerations justifying EEOC's ability to share information from other employee files with the Charging Party, including: increasing speed of investigation; allowing EEOC to obtain information more informally and to present information specific facts for Charging Parties to corroborate or rebut; and enhancing the EEOC's duty to attempt to resolve charges through informal conciliation and negotiation). The district court cases cited in support by Defendant similarly are off base – they are neither binding on this court nor do they address personnel files like those at issue here.[3] Therefore, in this instance, EEOC should be able to both obtain the requested files and share information it gathers with the Charging Party as necessary for purposes of the investigation.[4]

---

[3] *See EEOC v. All. Residential Co.*, 866 F. Supp. 2d 636, 641 (W.D. Tex. 2011) (requesting list of other employees terminated under employer's company-wide medical leave policy); *EEOC v. Aon Consulting, Inc.*, 149 F. Supp. 2d 601, 603 (S.D. Ind. 2001) (requesting production of all tests and validation studies and specific applicants' tests and related documents); and *EEOC v. St. John Hosp. & Med. Ctr.*, No. CIV.A.12-50225, 2012 WL 3887626, at *9-10 (E.D. Mich. June 1, 2012)(requesting employee information to examine employer's personal leave of absence policy with respect to employees who request accommodations for medical reasons).

[4] EEOC acknowledges that it filed Northwestern Mutual's Position Statement without first consulting the Company, but maintains that no confidential information was included in the filing. Northwestern Mutual had redacted all PII and proprietary information from its Position Statement attachments prior to producing them to EEOC. EEOC also recognizes the errant email (since removed) from another charge of discrimination was posted in this charge's online portal, which Defendant's counsel cites in her declaration (Dkt 14, ¶ 17). EEOC makes every effort to avoid such errors, promptly corrected the error in this file, and maintains that the confidentiality provisions of Title VII, the Freedom of Information Act, and Section 83 of its Compliance Manual provide the necessary safeguards to handle sensitive information.

## CONCLUSION

EEOC has shown that this subpoena is within the agency's authority, the demand is not too indefinite, and the information sought is relevant to its investigation. *Univ. of Pa. v. EEOC*, 493 U.S. 182, 192 (1990). McNulty filed valid charge alleging that various programs and practices at Northwestern Mutual violate Title VII. Despite its protestations, Northwestern Mutual's own personnel, through their declarations, make clear that the company has a good idea what programs EEOC is investigating. Although Northwestern Mutual believes, like most Respondents, that it has done nothing wrong and that it has specific defenses to the claims raised in the charge, it cannot prevent the EEOC from doing its own investigation pursuant to its statutory obligation. As the Eighth Circuit stated,

> We realize that employers are vulnerable to charges of racial discrimination which are totally without merit. The EEOC, however, cannot defer to the opinions of employers so charged; it has the statutory duty to make an independent investigation, reasonable in scope, to determine for itself whether the charge of an aggrieved employee is more than just one individual's "belief." The courts, given the power to enforce EEOC subpoenas, are called to assist in good faith attempts to fulfill that duty. Because in the present case the EEOC acted on a sufficient charge, gave proper notice to the company, and subpoenaed information needed to test Jackson's "belief" of racial discrimination, we reverse and remand for enforcement of the subpoena.

*E.E.O.C. v. Michael Const. Co.*, 706 F.2d 244, 252–53 (8th Cir. 1983). For the same reason, this Court should enforce EEOC's subpoena.

Dated: January 23, 2026	RESPECTFULLY SUBMITTED,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

Gregory Gochanour
Regional Attorney

*s/ Deborah Hamilton*
Deborah Hamilton
Assistant Regional Atty (IL Bar #6269891)

Jeanne B. Szromba (IL Bar #6207846)
Anne Gallerano (IL Bar #6332700)
Trial Attorneys
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Chicago District Office
230 S. Dearborn St., Ste. 2930
Chicago, IL 60604
Telephone: (312) 872-9692