UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Applicant,

v.

NORTHWESTERN MUTUAL LIFE INSURANCE CO.,

Respondent.

Case No. 2:25-mc-00053

---

**RESPONDENT'S SUPPLEMENTAL BRIEF ADDRESSING CONFIDENTIALITY AND PRIVACY ISSUES**

---

On April 28, 2026, the Court held a hearing on the EEOC's Application for an Order to Show Cause Why Administrative Subpoena Should Not Be Enforced, concerning EEOC Subpoena No. CHMK-2025-1 (the "Subpoena"), served on The Northwestern Mutual Life Insurance Company. During the hearing, the Court raised questions about potential privacy protections for non-party Northwestern Mutual employees whose confidential employee personnel files might be shared with the EEOC and Mark McNulty, the former employee who has asserted the discrimination charge. DKT 23.

Although these confidentiality protections were addressed in Northwestern Mutual's principal brief (DKT 13, § V, pp. 28-29), the Court invited supplemental briefing to address the propriety of imposing confidentiality conditions for responsive materials produced in response to Subpoena Request Nos. 1(i), 5, 6, and 10 (referred to as the "Private Employee Information"). *See* DKT 3 at 304; DKT 23.[1] Pursuant to the Court's encouragement during the hearing that the

[1] In Request No. 1(i), the EEOC requested an electronic database containing the date of separation and reason for separation of dozens of non-party Northwestern Mutual employees; in Request No. 5, the EEOC has requested

*footnote continued on next page…*

parties attempt to narrow their dispute over the appropriate scope of discovery, Northwestern Mutual's counsel broached this subject with the EEOC's counsel immediately after the conclusion of the hearing. It is our understanding that the EEOC's counsel is conferring internally in response to this suggestion, and it is our expectation that renewed efforts to narrow the parties' dispute will continue. The parties will advise the Court if there are significant results to report.

Subject to its threshold objections concerning the scope of these requests, Northwestern Mutual had requested two confidentiality protections from the EEOC as a condition to producing any otherwise responsive Private Employee Information, including (1) binding assurances that this Private Employee Information concerning McNulty's former colleagues would not be shared by the EEOC with McNulty (directly or indirectly); and (2) binding assurances that Northwestern Mutual would be afforded the opportunity to prevent public disclosure of the Private Employee Information that would otherwise lose their confidentiality protections upon the filing of a federal court action by the EEOC or McNulty. *See* DKT 3 at 319-20; DKT 14-10 (Lopez Dec., Ex. 10 (LOPEZ-000227-229). The EEOC declined to provide these basic protections for the Private Employee Information, asserting that it "reserved the right" to share these documents and information with McNulty if the EEOC deemed such disclosure "necessary for purposes of the investigation." *See* DKT 3 at 337. *See also* DKT 14-10 (LOPEZ-000232) (email reiterating that the "EEOC will not agree to enter an additional confidentiality order").

---

Northwestern Mutual produce ten non-party employees' personnel files; in Request No. 6, the EEOC requested all feedback solicited or received for two of these employees, as well as for the Charging Party. Feedback for the Charging Party was produced to the EEOC, prior to issuance of the Subpoena; and in Request No. 10, the EEOC requested any documents showing all complaints made to Northwestern Mutual regarding its Diversity and Inclusion policies, training, or employment opportunity awarded or offered on the basis of diversity and inclusion. Responsive documents reflect the identity of employees who are the subject of such complaints.

The EEOC asserted during the hearing that its purported "right" to disclose private and confidential records obtained from Northwestern Mutual is not subject to any limitations or restrictions by the Court beyond the minimum confidentiality provisions generally applicable to *all* EEOC investigations and investigative file materials. That assertion is incorrect. Long-standing authority supports the proposition the Court has the power, and should exercise it, to impose restrictions on the EEOC's use and disclosure of such sensitive information, particularly where disclosure to a charging party would compromise the legitimate privacy interests of non-party employees.

The need for additional protection is especially acute here because (1) McNulty has repeatedly violated trusts, confidences, and confidentiality policies during his tenure with Northwestern Mutual (DKT 14-10, LOPEZ-0000044-45, 47-58); and (2) the EEOC has not demonstrated the relevance of the vast majority of the Private Employee Information it seeks, a threshold showing required to compel production of such records. Accordingly, to the extent the Court orders Northwestern Mutual to produce any Private Employee Information responsive to Request Nos. 1(i), 5, 6, and 10 the Court should enter a protective order prohibiting the EEOC from sharing that information with anyone outside of the EEOC, *including McNulty*, in order to protect the important privacy interests of the employees who are the subject of these requests.

## Argument

### 1) District Courts are Permitted to Prohibit the EEOC from Disclosing Sensitive, Private, and Confidential Information Concerning Other Employees to the Charging Party.

Contrary to the EEOC's assertions in its briefs and during the April 28, 2026 hearing, this Court is empowered to prohibit the EEOC from disclosing to McNulty (the charging party) the private and confidential personnel information of non-party employees. Consistent with Supreme

Court precedent, district courts throughout the country have restricted the EEOC from sharing such information with the charging party through precisely the same confidentiality order protections that Northwestern Mutual sought from the EEOC in the present case.

Although the EEOC asserts that the minimum statutory confidentiality restrictions governing EEOC investigative file materials provide sufficient protection to Northwestern Mutual and its employees for the Private Employee Information, the Supreme Court in *EEOC v. Assoc. Dry Goods Corp*., 449 U.S. 590, 601-604 (1981), held that those *minimum* statutory protections were insufficient to protect the contents of private and sensitive personnel files concerning employees other than a particular charging party himself. Accordingly, the Court held that an employer is entitled "to assurance that each employee filing a charge against [the respondent employer] would see information in no file other than his or her own." *Id*. at 604.

While the EEOC contends this holding in *Assoc. Dry Goods* only applies to circumstances where multiple employees have asserted discrimination charges in a single proceeding against an employer, multiple courts have concluded that a charging party (such as McNulty) is not entitled to see *any other employee's personnel files*, regardless of whether or not that employee has asserted a discrimination charge. *See EEOC v. Alliance Residential Co*., 866 F. Supp.2d 636, 639-40, 645-46 (W.D. Tex. 2011) (rejecting the EEOC's contention that "any legitimate concerns [an employer] has regarding confidentiality are already appropriately addressed under the law governing EEOC investigations," imposing additional confidentiality protections for the subpoenaed contents of non-party employee personnel files, including personal identifying information, medical leave data, and reasons for suspension or termination of employment, and quoting the Court's holding in *Assoc. Dry Goods* to conclude that the "'charging party … is entitled to 'see information in no file other than … her own.'");

*E.E.O.C. v. Aon Consulting, Inc*., 149 F. Supp. 2d 601, 605-609 (S.D. Ind. 2001) (relying upon the holding in *Assoc. Dry Goods* to impose additional protections for confidential personnel file contents for non-party employees, such as employee applicant test results, job simulation exercises, and confidential applicant interviews, and requiring that the "EEOC enter a written confidentiality agreement barring the EEOC from disclosing responsive documents to the charging parties during the course of the investigation"); *E.E.O.C. v. St. John Hosp. & Med. Ctr.*, No. CIV.A. 12-50225, 2012 WL 3887626, at *10 (E.D. Mich. June 1, 2012) (relying upon the holding in *Assoc. Dry Goods* to order additional protections for personal identifying information, leave of absence records, and discharge records for non-party employees, "acknowledge[ing] the sensitivity" of the requested information, and thus "limit[ing] the charging party . . . to see information only in her own file"); *E.E.O.C. v. C & P Tel. Co.*, 813 F. Supp. 874, 876-77 (D.D.C. 1993) (citing *Assoc. Dry Goods* to hold that district courts may "impose various conditions on the disclosure of confidential information to an administrative agency," ordering additional confidentiality protections for subpoenaed employee testing data and employment applications for non-party co-employees of the charging party, and holding that "because respondents have a strong interest in protecting the subpoenaed documents from disclosure to the [charging party], the EEOC must enter into a confidentiality agreement with respondents that prevents the dissemination of this material. The agreement must provide that the tests and validation information will not be released to the [charging party]"); and *E.E.O.C. v. Farmer's Pride, In*c., No. CIV.A. 12-MC-148, 2012 WL 5363145, at *9 (E.D. Pa. Oct. 31, 2012) (relying upon the *Assoc. Dry Goods* holding to reject the EEOC's contention that the "statutes, rules and regulations that the EEOC is bound by are sufficient to ensure the confidentiality of the personnel information requested," concluding that such additional confidentiality restrictions

"will have no effect whatsoever on the EEOC investigation," and prohibiting disclosure to the charging party of the subpoenaed "personnel information" for non-party employees). Indeed, it would make little sense for employees who have not asserted a discrimination charge to receive less protection than employees who had invoked the EEOC investigative process by asserting a charge.

Significantly, these decisions are analogous to the present case, issued in the context of administrative subpoena enforcement proceedings where the district court restricted the EEOC's ability to share confidential information concerning non-party employees with the charging party. Equally important, each of these decisions recognizes that the minimum statutory confidentiality restrictions applicable to *all* EEOC investigative file materials do not preclude the district court's imposition of *additional* protections for the sensitive contents of confidential personnel files for non-party employees, preventing a charging party such as McNulty from reviewing (directly or indirectly) the private, confidential, and sensitive contents of the personnel files of his former fellow employees. Accordingly, this Court plainly has the authority to enter a protective order prohibiting the EEOC from sharing the Private Employee Information with McNulty as a condition to production.[2]

---

[2] Northwestern Mutual does not consider the demand for Private Employee Information to implicate the company's threshold challenge to the validity of the conclusory *class* discrimination allegation based on the undefined "Diversity & Inclusion Policy" asserted in the original and amended discrimination charges. Instead, the request for the personnel files appears to be directed to McNulty's *individual* claim of discrimination. Northwestern Mutual does not waive its threshold objections and specifically reserves its right to be confronted with a sworn charge of discrimination that meets the Supreme Court and Seventh Circuit requirements enunciated in *EEOC v. Shell Oil Co.*, 466 U.S. 54 (1984) and *EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642 (7th Cir. 1995). Contrary to the EEOC's erroneous assertions during the April 28, 2026 hearing, 42 U.S.C. § 2000e-12(b) *not only* provides that employment practices developed in reliance upon written EEOC pronouncements and interpretations concerning Title VII provide a *defense* against "any liability or punishment," *but also* specifically, explicitly, and separately goes on to state that such a "defense, if established, *shall be a bar* to the action or proceeding …." (emphasis supplied). As Northwestern Mutual has asserted throughout these proceedings, because McNulty's charge of *class* discrimination does not set forth sworn facts describing the challenged "unlawful employment practices" with as much specificity and particularity as McNulty "can muster," as held in *Shell Oil*, nor in as much detail "as possible," as held in *Quad/Graphics*, including disclosure of the specific "methods" of alleged discrimination, Northwestern Mutual's

*footnote continued on next page…*

**2) To the Extent the Court Orders the Production of Documents Responsive to Requests Nos. 1(i), 5, 6, and 10, It Should Prohibit the EEOC From Disclosing These Documents to the Charging Party.**

The Court should exercise its authority to enter a protective order restricting the EEOC from disclosing documents responsive to Request Nos. 1(i), 5, 6, and 10 to McNulty. As intimated by this Court during the April 28, 2026 hearing, the courts have long acknowledged the privacy interests associated with such personnel records, as well as a heightened privacy right for records belonging to non-parties. *See Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994) (upholding the district court's decision to limit discovery into third-party personnel files, where district court found that "[t]urning over the files … would invade the privacy of the other employees[.]"); *Barella v. Vill. of Freeport*, 296 F.R.D. 102, 106 (E.D.N.Y. 2013) ("[A]n employer has an 'interest in maintaining the confidentiality of employee personnel files.'"); *Tomanovich v. Glen*, No. IP 1-1247 C, 2002 WL 1858795, at *7 (S.D. Ind. Aug. 13, 2002) ("'Defendant's privacy concerns in its employment records are well-founded' since personnel files contain highly sensitive information."); *Porter v. Casino Queen, Inc.*, No. 9-24, 2009 WL 4823925, at *1 (S.D. Ill. Dec. 10, 2009) ("[I]t is important to distinguish between a request for the personnel files of third parties—which routinely occurs in employment discrimination cases—and a specific request for the personnel files of a party to the litigation. The latter is not as intrusive as the former.").

---

potential right to invoke Section 713(b) to seek the *immediate termination* of the EEOC investigation into purported *class* discrimination is being unlawfully thwarted. If the charge identified the specific "methods" in the undefined "Diversity & Inclusion Policy" forming the basis for McNulty's conclusory charge of class discrimination, respondent would have the right to invoke Section 713(b) as a complete and immediate "*bar to the ... proceeding*" if those challenged methods have been deemed lawful by the EEOC over the preceding decades. Contrary to the EEOC's extraordinary protestation that invocation of this statutory "bar" to proceedings is somehow "radical," the "bar" to proceedings enacted by Congress in Section 713(b) would have no value whatsoever if a respondent were not permitted to assert this statutory bar to the proceedings immediately after it becomes apparent there is a factual basis to do so. Nor has the EEOC articulated any principled basis for its invitation to this Court to ignore the statutory language unambiguously providing that Section 713(b) affords not just a defense to liability, but also a complete "bar to the … proceeding." 42 U.S.C. §2000e-12(b).

Here, the privacy interests of the non-party Northwestern Mutual employees whose Private Employee Information the EEOC seeks in Request Nos. 1(i), 5, 6, and 10 are self-evident. In particular, Request 5 seeks the personnel files of ten non-party employees and Request 6 seeks all feedback solicited or received for two of these employees. A personnel file is a comprehensive record of an individual's employment history, including performance reviews, disciplinary information, corrective counseling, personally identifying information, and other private information never intended to be shared with other employees. Such information is extremely sensitive, irreparably invades the employee's privacy rights (even if shared only with the EEOC), and could damage the employee's reputation. Employees thus have a reasonable expectation of privacy concerning this information and an expectation that their employers will not share those records with peers (or subordinates) within or outside of the organization. Likewise, Request 1(i) seeks information about why other employees were terminated, Request 6 seeks feedback other employees received, and Request 10 implicates the disclosure of names of persons who have been accused of policy violations. As such, each such request implicates the same confidentiality and privacy interests that are implicated with Request 5.

Beyond these universal concerns over potential disclosure of sensitive and confidential non-party personnel records, Northwestern Mutual has well-grounded, acute concerns about the EEOC sharing these documents with Mark McNulty in particular. McNulty was terminated for his flagrant, multiple violations of trust and confidentiality owed to his employer and his fellow employees, and McNulty also harbors animosity towards the very employees and executives whose personnel files the EEOC wants to disclose to McNulty. *See* DKT 14 at LOPEZ-0044-45, 47-58. Despite the statutory protections afforded to EEOC investigative file materials, the EEOC has no means to ensure that McNulty would abide by those restrictions, nor is there a reasonable

expectation that McNulty would do so. McNulty's documented flouting of the privacy and confidentiality rules governing his conduct as an employee, notwithstanding the substantial, adverse consequences for such misconduct, further underscores these concerns. Indeed, even after being confronted with his repeated violations of his confidentiality obligations, McNulty refused to acknowledge any wrongdoing. *Id*. at 48, 57 ("When given the opportunity to justify and explain your conduct, you insisted you had done nothing wrong … Your inability or refusal to recognize the impropriety of your conduct and its consequences for this organization precludes any reasonable expectation that you would modify (rather than simply conceal) your conduct in the future.")

Accordingly, the Court should prohibit the EEOC from disclosing to McNulty (directly or indirectly) any portion of the Private Employee Information that the Court may otherwise order to be produced in response to Request Nos. 1(i), 5, 6, and 10. As the Supreme Court held in *Assoc. Dry Goods*, with "respect to all [personnel] files other than his own, he is a stranger," and thus the respondent employer is entitled to "assurance that each employee filing a charge against [the employer] would see information *in no file other than his or her own*." 449 U.S. at 603-604 (emphasis supplied). *Accord Alliance Residential*, 866 F. Supp.2d at 639-40; *Aon Consulting*, 149 F. Supp.2d 605-609; *St. John Hosp. & Med. Ctr*., 2012 WL 3887626, at *10; C&P Tel. Co., 813 F. Supp. At 876-77; and *Farmer's Pride, Inc*., 2012 WL 5363145, at *9.

As the district court concluded in *Farmer's Pride*, moreover, such reasonable and necessary restrictions on the production of sensitive personnel files will not impede an appropriate EEOC investigation. *Id*. at *9. If, upon reviewing the contents of any personnel files ordered for production, the EEOC concludes it was essential to disclose a portion of the file to McNulty, the confidentiality order should include a provision permitting the EEOC to seek court

approval to do so (as suggested by Northwestern Mutual from the outset). Such an order affords reasonable protections to Northwestern Mutual and its employees without impeding a reasonable investigation of McNulty's discrimination charge.

**3) The Majority of the Requested Documents in Request Nos. 1(i) and 5 are Not Relevant to the Charge and as a Result, Northwestern Mutual Should Not Be Obligated to Produce These Documents.**

As noted in Northwestern's initial briefing, the EEOC has not met its burden of establishing that the Private Employee Information it seeks in response to Request Nos. 1(i) and 5 are relevant to the discrimination charge – a burden that must be met before the EEOC is entitled to the information. *See University of Pennsylvania v. EEOC*, 493 U.S. 182, 194 (1990) (holding the EEOC must make a "showing of relevance" to obtain subpoenaed materials); *Equal Emp. Opportunity Comm'n v. TriCore Reference Lab'ys*, 849 F.3d 929, 936–37 (10th Cir. 2017) (EEOC bears "burden … to show the relevancy of the subpoenaed information").

To establish relevance, the EEOC must demonstrate a direct link between the facts asserted in the sworn charge of discrimination and the information demanded in an EEOC subpoena. *See E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 64, 104 S. Ct. 1621, 1629, 80 L. Ed. 2d 41 (1984) ("[T]he EEOC's investigative authority is tied to charges filed with the Commission; unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence "relevant to the charge under investigation.").

Citing *Shell Oil*, the Seventh Circuit refined the relevance standard further:

> [T]he Supreme Court also has cautioned that the charge and *relevance requirements* should not be interpreted so broadly *as to render the statutory language a "nullity." Id.* at 69, 104 S.Ct. 1621. The requirement of relevance, like the charge requirement itself, *is designed to cabin the EEOC's authority and prevent "fishing expedition[s]."* Indeed, as we have noted previously,

> although the legitimate scope of the subpoena power includes information that "might throw light upon" the inquiry raised by the complaint, "the might" is "an indication of a realistic expectation rather than an idle hope that something may be discovered." *Harrington,* 388 F.2d at 524. Absent a finding that the material sought is relevant, *a court may not enforce an EEOC subpoena*.

*E.E.O.C. v. United Air Lines, Inc*., 287 F.3d 643, 653 (7th Cir. 2002) (emphasis supplied, citations omitted). In *United Airlines,* the Seventh Circuit refused to enforce the EEOC subpoena requesting nonparty employee information because it was "not limited to individuals who may be considered similarly situated to [the claimant] either by position (flight attendant) or by location (France); the subpoena requires extensive information with respect to all United employees residing abroad." *Id.* at 654. The Court further held that a valid charge of "class" discrimination only permits discovery into practices and circumstances affecting "similarly situated" employees in the same position, work unit, and location as the Charging Party. *Id.* at 654-55.

Here, Northwestern Mutual acknowledges that the personnel files for Jamie Pulsfus and Nicole Lund are *potentially* relevant to the charge, as these fellow employees received the promotions from Senior Director to Vice President that McNulty claims he was entitled to receive. However, none of the other records the EEOC seeks in Request Nos. 1 (including 1(i)) and 5 meets the relevance standard to compel disclosure because the EEOC has not shown these nonparty employees are similarly situated to the charging party. *See EEOC v. Quantum Foods, LLC,* 2010 WL 1693054, at *5 (N.D. Ill. Apr. 26, 2010) (refusing discovery beyond individual claimant's "employing unit or work unit" as an unlawful "'fishing expedition.'").

McNulty has never asserted and does not contend in his sworn discrimination charge that Brach, Storniolo, or Viard received promotions that he should have received in violation of Title VII, as his discrimination charge specifically identifies two allegedly discriminatory promotions

of two white female colleagues (Jamie Pulsfus and Nicole Lund). Further, McNulty purposefully omitted from his sworn discrimination charge his pre-charge assertion that Jeff Schloemer received his promotion to vice president over McNulty in retaliation for McNulty's invoking his rights under Title VII. Since McNulty abandoned that contention upon submitting his sworn charge of discrimination, there is no basis for the EEOC now conducting discovery into that jettisoned claim.

Moreover, while the EEOC asserted during the hearing that the personnel files for Conmey, Valters, Manista, and Villegas (now Evenson) should be turned over because they were "decision makers," the EEOC knows from its interview of Laila Valters that Evenson and Valters were the Enterprise Compliance department heads responsible for the two challenged promotions, and the sole decision-makers for the promotions challenged in the Charge. Even as to Valters and Evenson, the EEOC has failed to explain in its briefing or during the April 28, 2026, why these two senior executives' private and sensitive personnel files should be ordered for production in these proceedings. While the Seventh Circuit has held that the personnel files for *comparators* of the aggrieved employee may be ordered for production, the EEOC cites no Seventh Circuit authority for the proposition that the personnel files of the decision-maker responsible for the challenged adverse employment action is proper fodder for discovery. *See* EEOC Brief, DKT 18, § IV. To the contrary, *Shell Oil*, *United Air Lines* and their progeny make clear that the discovery must be tethered to the specific charge of discrimination, and that the EEOC must demonstrate that the requested discovery is reasonably relevant to that specific discrimination charge, rather than a "fishing expedition."

Accordingly, while the personnel files for Pulsfus and Lund are legitimate subjects of inquiry (as comparators who received the challenged promotions over McNulty), there is no

basis for ordering production of the files for Brach, Storniolo, and Viard (whose employment status and promotions have not been challenged in the Charge), or production of the personnel files for Evenson and Valters (whose mere status as the decision-makers does not justify the EEOC's rummaging through their personnel files). Such a foray into these private and sensitive personnel files would constitute the very "fishing expedition" prohibited by the Seventh Circuit.

Finally, the demand for the production of the personnel file for Raymond Manista, a Senior Vice President and the Chief Legal Officer for Northwestern Mutual, is grossly improper on its face. Evenson and Valters were the sole decision-makers for the challenged promotions, and Manista's role as a consultative resource does not justify rummaging through his personnel file.

## Conclusion

For each of the preceding reasons, this Court should not order Northwestern Mutual to produce the personnel files for Brach, Storniolo, Viard, Schloemer, Conmey, Valters, Manista, or Villegas (Evenson), nor should the EEOC be permitted to share Lund's, Pulsfus's, or any other employee's Private Employee Information with McNulty. Instead, any such production should be conditioned upon the entry of a confidentiality order affording the protections requested by Northwestern Mutual when first confronted with these requests for information.

Dated this 8th day of May, 2026.

**s/ Paul F. Heaton**

Paul F. Heaton
State Bar No. 1000858
John A. Haase
State Bar No. 1027536
Mark O. Thomson
State Bar No. 1120598
Godfrey & Kahn, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
Phone: 414-273-3500
Fax: 414-273-5198
Email: pheaton@gklaw.com,
jhaase@gklaw.com, mthomson@gklaw.com

*Attorneys for Respondent NORTHWESTERN MUTUAL LIFE INSURANCE CO.*