**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Applicant, | ) ) | |
| | ) | **Case No. 25-mc-00053** |
| v. | ) ) | Judge Ludwig |
| NORTHWESTERN MUTUAL LIFE INSURANCE CO., | ) ) ) | |
| Respondent. | ) ) ) | |

**APPLICANT EEOC'S RESPONSE TO RESPONDENT'S SUPPLEMENTAL
BRIEF ADDRESSING CONFIDENTIALITY**

In this Title VII discrimination action, Northwestern Mutual has made it clear that it would strongly prefer guarantees that EEOC will not share personnel information it obtains in its investigation with the employee alleging the Company engaged in employment discrimination.[1] Many employers facing a charge of discrimination likely have the same wish. Congress was cognizant of this concern and therefore combined EEOC's broad investigatory powers with confidentiality provisions, prohibiting EEOC from sharing with the public any information it obtains. Those who file charges of employment discrimination (known as Charging Parties),

---

[1] In the introduction to its motion (DKT 24 at 3), Respondent significantly broadens the scope of the confidentiality protection it is seeking, i.e., "the Court should enter a protective order prohibiting the EEOC from sharing that information with anyone outside of the EEOC, including McNulty, in order to protect the important privacy interests of the employees who are the subject of these requests." Northwestern Mutual also suggests that EEOC should be required to get some sort of judicial permission prior to filing what it deems as confidential information in court. Throughout the argument section of its brief, however, Northwestern Mutual addresses only Charging Party McNulty's access to these materials, providing no argument as to other individuals' access, or any basis for requiring EEOC to go to court to seek court permission prior to filing certain information in court. These arguments are therefore waived. *Kensington Rock Island Ltd. P'ship v. Am. Eagle Historic Partners*, 921 F.2d 122, 124-25 and 125 n.1 (7th Cir. 1990) (finding that "[a]rguments raised in perfunctory and underdeveloped manner [to trial court] are waived," where Defendant's argument to the District Court on [a damages] issue consisted of a single, poorly worded statement, in a section on another point, used as support for an irrelevant proposition).
EEOC of course is bound by the limits on judicial filing of PII. *See* Fed. R. Civ. P. 5.2.

however, are not members of "the public" for purposes of this restriction. *EEOC v. Associated Dry Goods Corp.,* 449 U.S. 590, 598-602 (1981).  And EEOC should not be hamstrung in its investigation of any Charge through additional judicially-imposed limitations that were not contemplated by Congress. In rare situations involving extraordinary circumstances, some courts have granted a request for additional protection. Northwestern Mutual's claimed concerns about the Charging Party in this case and the executive status of some of the employees whose personnel information is requested do not rise to that level. If they did, every employer would be entitled to such additional protection and judicial judgment would take the place of agency assessment as to how investigations should proceed.

## I.      Congress Has Authorized the Potential Disclosure of Such Investigative Material to the Charging Party

Congress established EEOC's administrative process and adopted explicit limits on disclosure where Congress thought necessary. As EEOC outlined in our initial brief, after receiving a charge of discrimination, the EEOC investigates to determine whether reasonable cause exists to believe the charge is true; if so, the Commission must try to eliminate the alleged discriminatory practice "by informal methods of conference, conciliation, and persuasion."  42 U.S.C. § 2000e5(b). As part of these efforts, the Commission must generally maintain the confidentiality of the information obtained during its investigation, 42 U.S.C. § 2000e-8(e), but may disclose information obtained during the course of the investigation "to charging parties, or their attorneys, respondents or their attorneys, or witnesses where disclosure is deemed necessary for securing appropriate relief."  29 C.F.R. § 1601.22.

Northwestern Mutual argues that it has a right to condition its production of the material on a guarantee from the EEOC that Charging Party McNulty will not have access to the material,

2

given the sensitive nature of the documents requested. As the Supreme Court has explained in *Associated Dry Goods*, however, Congress already took such concerns into account when crafting Title VII's careful balance between privacy protections and the Commission's need to investigate claims of discrimination. 449 U.S. at 600.

According to this balance, the EEOC must carefully safeguard material it obtains during an investigation, but it has the discretion to disclose such material to the charging party to further its efforts to expedite its investigation and informally negotiate a resolution to the charges. As the Court noted, "First, limited disclosure to the parties can speed the Commission's required investigation: the Commission can more readily obtain information informally—rather than through its formal powers under 42 U.S.C. § 2000e-9—if it can present the parties with specific facts for them to corroborate or rebut. Second, limited disclosure enhances the Commission's ability to carry out its statutory responsibility to resolve charges through informal conciliation and negotiation: A party is far more likely to settle when he has enough information to be able to assess the strengths and weaknesses of his opponent's case as well as his own." *Associated Dry Goods* at 600–01. Consistent with its authority, EEOC will use its discretion in this investigation to determine what material, if any, to share with the Charging Party to further these ends.

A.      **Northwestern Mutual Misreads** *Associated Dry Goods*

In objecting to production of the material it refers to as "Private Employee Information" (DKT 24 at p. 1), without a protective order, Northwestern Mutual relies on and takes out of context a single sentence from *Associated Dry Goods* relating to the disclosure to a charging party of "files other than [the charging party's] own." 449 U.S. at 603. When placed in the proper context, however, it is clear that the sentence refers to prohibitions on sharing with a particular charging party material collected during separate EEOC investigations *of other individuals' charges of discrimination,* not to sharing with the particular charging party personnel

3

files of other individuals *that are collected as part of the investigation of that charging party's own charge*. Nothing in the opinion supports the conclusion that the EEOC may be precluded from disclosing information contained in the personnel files of other employees to a charging party where the information is found in his own charge file. Indeed, *Associated Dry Goods* stands for precisely the opposite conclusion, and EEOC has been unable to find any court correctly reading *Associated Dry Goods* that has imposed disclosure limitations on personnel files.

*Associated Dry Goods* involved an employer that had been accused of discrimination in seven separate employee charges. 449 U.S. at 593. The EEOC asked the employer for the employment records of all seven charging parties and other material relating to the employer's general personnel practices. *Id.* The employer refused to produce the material unless the EEOC would guarantee not to reveal it to any of the charging parties, citing the portion of Title VII precluding the Commission from "mak[ing] public" the information it obtains during the investigatory process. *Id.* at 592 (citing 42 U.S.C. § 2000e-8(e)). The Commission refused, citing its practice of making limited disclosures to charging parties of the investigative files related to their own and related charges "where disclosure is deemed necessary for securing appropriate relief." *Id.* at 593 & n.3 (quoting 29 C.F.R. § 1601.22); *id.* at 597 ("Though normally a person can see information in the file only for the case in which he is directly involved, the Commission sometimes allows a prospective litigant to see information in files of cases brought by other employees against the same employer where that information is relevant and material to the litigant's case").

The Supreme Court thus confronted two issues: whether the EEOC could disclose to a charging party the information contained in the investigative file relating to *his* charge, and

4

whether it could disclose to a charging party the information contained in an investigative file relating to a charge of *someone else*. As to the first question, the Court held that the EEOC could indeed reveal information to a charging party from the investigative file relating to his own charge, as explained above. *Id.* at 598-603. The Court based this conclusion on the statutory language, the comments of the drafters of that language, and Title VII's twin goals: efficient investigation of discrimination charges and the resolution of those charges through conciliation and negotiation. *Id.* at 598-601.

With respect to the EEOC's practice of disclosing to a charging party the contents of investigative files relating to the charges of *other charging parties*, however, the Court found that this practice was not justified under Title VII. *Id.* at 603 ("[N]othing in the statute or its legislative history reveals any intent to allow the Commission to reveal to that charging party information in the files of other charging parties who have brought claims against the same employer"). Thus, it was with respect to these other *investigative* files – not personnel files – that the Court concluded, "[T]here is no reason why the charging party should know the content of any other employee's charge, and he must be considered a member of the public with respect to charges filed by other people. With respect to all files other than his own, he is a stranger." *Id.* When given the proper context, this sentence clearly has no bearing on the EEOC's authority to include personnel files in the investigative file relating to a charge of discrimination, nor its ability to disclose this material to the charging party. *Id.* at 598-601.

The Third Circuit has also recognized that some courts misapprehend the meaning of this case. In *EEOC v. City of Long Branch,* 866 F.3d. 93 n.6 (3rd Cir. 2017), the court explained:

> We believe that both the District Judge and Magistrate Judge misread the Supreme Court's opinion in *Associated Dry Goods* as holding that a charging employee may not see investigative information obtained by the EEOC from other employees' files. To the contrary, the Court in *Associated Dry Goods* held

5

that an employee filing a charge with the EEOC is not a member of the "public" to whom disclosure is prohibited. *See Assoc. Dry Goods*, 449 U.S. at 600–03, 101 S.Ct. 817. The limiting language upon which the District and Magistrate Judges relied refers to a situation in which multiple charging parties—such as multiple aggrieved employees—wish to obtain disclosure of evidence produced in each other's cases, not in their own. *See id*. at 603, 101 S.Ct. 817 (explaining that a charging party is not entitled to "know the content of any other employee's charge," such as when "other charging parties ... have brought claims against the same employer" (emphasis added)).

In short, the correct reading of *Associated Dry Goods* makes clear that Northwestern Mutual cannot withhold these materials from EEOC simply because EEOC may need to share some of them with Charging Party as part of its investigation in this case.

### B. The General Rule: Disclosure Is the Norm; Protective Orders Are the Exception

While a few other district courts, cited by Respondent, make the same error (*see, e.g., EEOC v. Alliance Residential Co.,* 866 F.Supp.2d 636, 645-46 (W.D. Tex. 2011); *EEOC v. St. John Hosp. & Med. Ctr.,* No. CIV.A. 12-50225, 2012WL 3887626, at \*10 (E.D. Mich. June1, 2012); and *EEOC v. Farmer's Pride, Inc.,* No. CIV.A. 12-MC-148, 2012 WL 5363145, at \*9 (E.D. Pa. Oct. 31, 2012)), a majority of courts that have addressed the issue of employer requests for EEOC-eyes-only treatment have denied such requests, holding that existing statutory protections are adequate.

In *E.E.O.C. v. Morgan Stanley & Co., Inc.,* 132 F.Supp.2d 146 (2000), for example, the court denied the firm's request for a protective order that would have barred the EEOC from sharing subpoenaed personnel records with the four charging parties. The court held that, given the Supreme Court's endorsement in *Associated Dry Goods* of sharing information with charging parties, "disclosure should be the norm and such orders will be appropriate only in unusual circumstances." *See also E.E.O.C. v. Hennepin County*, 623 F. Supp. 29, 33 (D. Minn. 1985), (holding that charging parties are "entitled to access to information concerning their charges which the EEOC obtained by subpoena" under *Associated Dry Goods*, and that the EEOC's

6

existing statutory obligation—not to disclose to the public—renders additional court orders unnecessary absent a specific showing that those protections are inadequate).

### C. This Matter Presents No Extraordinary Circumstances Warranting Deviation from this Practice

"[T]he logic of *Associated Dry Goods* makes plain that because disclosure to the charging party would ordinarily further the enforcement of [Title VII], disclosure should be the norm and such orders will be appropriate only in unusual circumstances." *Morgan Stanley*, 132 F. Supp. 2d at 156. In addition, the objecting employer has the burden of "demonstrat[ing] a reason why the disclosure of the information sought . . . is somehow outside the scope of the ordinary situation contemplated by Congress and the Supreme Court." *Id.* at 157.

Courts have occasionally entered non-stipulated confidentiality orders in connection with EEOC subpoenas. These cases commonly fall into two categories: (1) cases involving employment tests or other trade secrets, where disclosure would destroy the inherent value of the test (*see, e.g., EEOC v. Aon Consulting, Inc.*, 149 F. Supp. 2d 601, 608 (S.D. Ind. 2001); *EEOC v. C & P Tel. Co.*, 813 F. Supp. 874, 876 (D.D.C. 1993); *EEOC v. Kronos Inc.* ("*Kronos II*"), 694 F.3d 351, 367 (3d Cir. 2012); and (2) cases involving personal medical information of employees *(see, e.g., EEOC v. Alliance Residential Co.,* 866 F.Supp.2d 636, 645-46 (W.D. Tex. 2011); *EEOC v. St. John Hosp. & Med. Ctr.,* No. CIV.A. 12-50225, 2012WL 3887626, at \*10 (E.D. Mich. June 1, 2012)).[2]

On the other hand, in cases where the material at issue did not involve employment testing or other exceptionally sensitive material, the courts have rejected respondents' attempts to obtain protective orders, finding that the statutory and regulatory protections were sufficient. *See, e.g.,*

---

[2] While it is true that *EEOC v. Farmer's Pride, Inc.,* cited by Respondent, does not fit neatly into either category as it relates to employee contact information, as EEOC has argued above, the court in that case misreads *Associated Dry Goods*.

*Morgan Stanley*, 132 F. Supp. 2d 146; *EEOC v. City of Milwaukee*, 54 F. Supp. 2d 885 (E.D. Wisc. 1999)[3]; *cf. EEOC v. Kidder Peabody, Peabody & Co., Inc.*, No. M18-304, 1992 WL 73344, at *6 (S.D.N.Y. Apr. 2, 1992) (unpublished) (in enforcing subpoena issued under ADEA, observing that "[t]he EEOC is investigating Kidder Peabody, not litigating with it. If the EEOC sues Kidder Peabody, the parties may agree upon a confidentiality order *pendente lite*; if the suit is settled, a confidentiality order may be part of the settlement. All this lies in the future. In its present posture the case involves information to be developed during the agency's investigation.… Kidder Peabody cannot, by engrafting a protective order upon an order enforcing the EEOC subpoena, obtain indirectly what it is not entitled to obtain directly").

This routine case presents no such extraordinary facts. Northwestern Mutual has not claimed that production would be burdensome, probably because this is a very high standard, requiring an employer to demonstrate that compliance would threaten the normal operation of its business. Instead, Northwestern Mutual urges this Court to adopt its assertion that Charging Party should not be trusted with personnel information based in part on Northwestern Mutual's negative assessment of him, which led the company to terminate him. (DKT 24 at 8.) But Charging Party has alleged that he was terminated in retaliation for filing his Charge of discrimination and EEOC is investigating those allegations. Were this court to limit EEOCs ability to share information with Charging Party on this basis, it would, in essence, be giving

---

[3] The discussion in that case focused on a Charging Party's access to an investigative file at their request at the conclusion of EEOC's investigation. The Court rejected the City's concern that personnel records, testing documents, and Internal Affairs Division files would be shared with charging parties, holding that Title VII's criminal penalties and FOIA's exemptions for personnel files (5 U.S.C. § 552(b)(6)) and law enforcement records (5 U.S.C. § 552(b)(7)(C)) provided "adequate protection against its perceived fear." 54 F.Supp.2d 885, 895-896 (E.D. Wis. 1999). The court did not address EEOC's ability to share information with the Charging Party during the investigation based on EEOC's assessment of the needs of the investigation, which is the key consideration here.

8

credence to the employer's view of the risk and simultaneously limiting EEOCs ability to conduct a complete review of Charging Party's allegations.

Further, the fact that some of the requested files are from high level personnel is not a basis for granting them special protection from disclosure. EEOC appreciates that all employees have an interest in keeping their personnel information confidential and that courts – including those cited by Respondent (DKT 24 at 7) - have acknowledged this privacy interest. Congress too was cognizant of this concern and created the confidentiality provisions it thought were necessary, and those provide neither special protections for those who feel they were wronged, nor special entitlement for successful professionals.

## II.	The Employee List and Personnel Files Are Relevant to EEOC's Investigation

Northwestern Mutual again attempts to avoid any production of certain personnel information at all, claiming it is not relevant. This is not a question on which the court requested supplemental briefing, (DKT. 23), and further consideration of Respondent's repeated arguments is not necessary. As EEOC noted in its motion and during oral argument, the Commission has broad investigatory powers under Title VII. The EEOC is entitled to "virtually any material that might cast light on the allegations against the employer." *See EEOC v. Shell Oil Co.*, 466 U.S. 54, 68-69 (1984).

Caselaw confirms that relevant material in this context may include documents from the personnel files of comparators and decision makers. *See EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 312 (7th Cir. 1981) (enforcing subpoena over employer's objection that "it seeks supposedly confidential information concerning management and executive employees"); *Univ. of Pa.*, 493 U.S. at 186 (enforcing subpoena requesting, among other documents, "portions of the tenure-review files" of five male comparators); *EEOC v. Univ. of N.M.*, 504 F.2d 1296, 1299

9

(10th Cir. 1974) (enforcing subpoena requesting personnel files of all other faculty members who, like the charging party, had positions in the College of Engineering); *Twp. of Howell*, 1991 WL 160350, at *1 (enforcing subpoena requesting personnel files of comparators); *Franklin & Marshall Coll.*, 775 F.2d at 112 (enforcing subpoena requesting tenure files for all comparator professors).

Northwestern Mutual contends that Requests No. 5 and Request No. 1(i) are not relevant. Request No. 5 asks for personnel documents for ten employees who fall into the following three categories: (1) comparators (Plufus, Lund, and Schloemer); (2) decisionmakers and supervisors (Evenson, Valters, Conmey, and Manista); or (3) similarly-situated peers (Brach, Storniolo, and Viard).

As to category 1, the comparators, even Northwestern Mutual agrees that these are "potentially" relevant (Pulsfus and Lund), but Northwestern Mutual leaves out one comparator, Schloemer. Like the other two, he is an appropriate comparator who was promoted when Charging Party was not. Schloemer shares race and sex traits with the Charging Party, but EEOC can investigate whether Schloemer also complained of discrimination or not, and whether Schloemer received positive feedback for particular support and attention paid to employees based on race or sex, something Charging Party objected to. To understand Schloemer's career trajectory and status as a comparator, EEOC needs his personnel file.

Personnel files of decision makers and Charging Party's supervisor (Category 2) are similarly relevant. Northwestern Mutual disputes who was a decisionmaker, but Northwestern Mutual's own statements to the EEOC provide the basis for EEOC's request for the files of Laila Valters, Rebecca Evenson (formally, Viegas), and Raymond Manista. Northwestern Mutual explains that Valters, who was charged with the promotion decisions, drew upon insights from

Evenson, her predecessor, and Manista. (DKT 3-3 at, 13.) Conmey was Charging Party's direct supervisor. Finally, Category 3 includes Sarah Brach, Paula Storniolo, and Jonathan Viard, employees in the same position as Charging Party. Categories 2 and 3 seek information necessary to determine the validity of Charging Party's allegation that he was illegally denied a promotion that was given to someone else less qualified and that opportunities were awarded based on race, sex, or national origin. Personnel files may shed light on the incentives various employees had to prefer other candidates as well as on the opportunities available to Charging Party in comparison with others in the same department. Northwestern Mutual brought each of these individuals to the EEOC's attention in its Position Statement. (DKT. 3-3, p. 5, 9, 12-13.) From there, the EEOC requested further information about said individuals.

Employee lists, like the ones requested in Request No. 1, are routinely requested in EEOC investigations. In this investigation, an employee list is necessary to identify and interview potential witnesses and potential class members. Here, the EEOC narrowed its request to the Enterprise Compliance Department and all employees with compliance responsibility, like the Charging Party. More specifically, Request 1(i) asks for dates of separation and reasons for separation, if applicable, for the listed employees. DKT. 3-4, p. 4. Information about other employees' employment status and reasons for separation are relevant to assessing the likely knowledge and potential bias of those employees. This same information is also relevant to assessing Charging Party's retaliatory termination claim, including identifying possible comparators and persons with knowledge. For the foregoing reasons, both Requests Nos. 1 and 5 are relevant and the Court should enforce the EEOC's subpoena, particularly given the generous standard of relevance applicable to this proceeding.

11

**III. Granting Respondent's Demand for Confidentiality Would Put this Court in a Position of Superintending this EEOC Investigation**

Finally, Respondent admits it wants "binding assurances" that EEOC won't share this material with Charging Party and "binding assurances" that it be afforded the opportunity to prevent public disclosure. DKT 24 at 2. What Respondent actually wants is a reworking of the investigative process and ongoing judicial engagement outside the governing statutory framework.

Because of the utterly unremarkable nature of the information sought in this case, the practical consequence of allowing a confidentiality order under these circumstances will be that respondents in any and every case will have a strong incentive to seek protective orders through the courts, for no other reason than that they can. Under Respondent's rationale, the mere assertion of suspicion of alleged wrongdoing by the Charging Party would be sufficient to subject the subpoenaed materials to a broad and highly restrictive confidentiality order. In light of the well-settled precedent that EEOC's presuit administrative process is subject only to limited judicial review, (*see Mach Mining, LLC v. EEOC*, 135 S.Ct. 1645, 1655-56 (2015); *EEOC v. Caterpillar*, 409 F.3d 831, 833 (7th Cir. 2005)), such a rule would be contrary to precedent and would carry grave consequences both for judicial economy and for the EEOC's internal processing of charges. *See also EEOC v. Shell Oil*, 466 U.S. 54, 69-70, 81 (1984).

While some employers of course would prefer to avoid the fact that subpoena enforcement makes public that a charge has been filed, others might see as a good strategy the potential of winning protection for certain materials and the accompanying delay in the investigation that results from a subpoena enforcement. This is particularly true because prohibiting EEOC from sharing materials with the Charging Party really could have an impact on EEOC's ability to assess the information and that impact could even be sufficiently significant to

12

prevent EEOC from making a cause finding. The type of factual detail that EEOC might discuss with a Charging Party involving information from the Respondent about other employees varies widely, depending on the discrimination at issue, the facts collected from other sources, and EEOC's judgment about the best use of its resources.  EEOC may wish to question the Charging Party about information the Commission obtained from Northwestern Mutual just as it may wish to question Northwestern Mutual about information it obtained from the Charging Party. An investigation is not a one-way ratchet.

EEOC has a range of investigative tools and certainly it is not always necessary during an investigation for EEOC to share personnel information of other employees with the Charging Party. That may even be true in this case. EEOC cannot know exactly what (if anything) it might need to ask the Charging Party without seeing the documents, but that choice should remain with the EEOC, not with court.

Dated: May 18, 2026                                    RESPECTFULLY SUBMITTED,


                                                       **U.S. EQUAL EMPLOYMENT**
                                                       **OPPORTUNITY COMMISSION**

                                                       *s/ Deborah Hamilton*
                                                       Deborah Hamilton (IL Bar No. 6269891)
                                                       Assistant Regional Attorney

                                                       Jeanne B. Szromba
                                                       Anne Gallerano
                                                       Trial Attorneys
                                                       U.S. EQUAL EMPLOYMENT OPPORTUNITY
                                                       COMMISSION
                                                       Chicago District Office
                                                       230 S. Dearborn St., Ste. 2930
                                                       Chicago, IL 60604
                                                       Telephone: (312) 872-9671

13