U.S. EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                    Applicant,

                                                    Case No. 25-mc-0053-bhl

          v.

NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

                    Respondent.

## ORDER ENFORCING ADMINISTRATIVE SUBPOENA

In this miscellaneous action, the Equal Employment Opportunity Commission (EEOC) seeks enforcement of an administrative subpoena related to its investigation of a discrimination charge made by a former employee against Respondent Northwestern Mutual Life Insurance Company (NML). NML insists it has not engaged in any form of discrimination and objects to the EEOC's subpoena. These objections are mistimed, however, and therefore misplaced. Even if the company is correct on the merits, the EEOC has a statutory obligation to investigate the charge that has been made, and NML has a duty to comply with the agency's investigatory subpoena. Accordingly, NML's objections are overruled, and the EEOC's petition to enforce the subpoena is granted. Perhaps the investigation will show the discrimination charge is baseless and the matter will end. If not, NML will have the chance to contest the charges on their merits at a later time, just not today.

## BACKGROUND

On March 1, 2025, Mark McNulty, a white male employed as an Anti-Money Laundering Officer at NML, filed a discrimination charge with the EEOC. (ECF No. 3-1.) In the charge, McNulty alleges that, beginning in or about 2020, NML "enhanced" its diversity and inclusion (DI) policy to advance and promote women and people of color. (*Id.*) He further contends that after he complained that the policy was unlawful, he was denied a promotion to Vice President and rejected for a Chief Compliance Officer position that instead went to a less-qualified female

coworker. (*Id.*) Based on these events, McNulty asserts that he was the victim of unlawful discrimination based on his "sex (male), race (white), color, national origin (American-Irish), and in retaliation for engaging in protected activity." (*Id.*) He also alleges that NML's DI policy similarly discriminated against others based on their sex (male), race (white), color, and national origin (American) in violation of Title VII. (*Id.*)

On the same day it received the charge, the EEOC notified NML of the allegations and provided the company with an electronic link to the charging document. (ECF No. 3-2.) On May 2, 2025, NML responded by submitting a 24-page Position Statement, supported by 200 pages of exhibits, denying any unlawful discrimination. (ECF No. 3-3.) The company maintained that McNulty was not qualified for the identified promotions and insisted its DI policies do not allow for hiring or promotion based on race, sex, or any other protected class. (*Id.*)

In follow-up, the EEOC sent NML a Request for Information, in which it asked the company to produce 21 categories of information and records related to the charge and to the company's Position Statement. (ECF No. 3-4.) The agency also asked NML to produce its Vice President of DI, Amy Hanneman, for an interview. (*Id.*) NML responded to this request with a lengthy set of legal objections and factual arguments challenging the merits of McNulty's allegations. (ECF No. 3-5.) It produced a small amount of materials in response to the first seven of the EEOC's requests, but even that production largely duplicated items the company had already provided with its Position Statement. (*Id.*) NML also refused to produce Hanneman for an interview. (*Id.*)

Over the next several weeks, the parties attempted without success to negotiate a resolution that would allow the EEOC to complete its investigation. (ECF No. 14 ¶¶4–5.) When those discussions proved fruitless, the EEOC exercised its authority under 29 C.F.R. §1601.16(a) and sent NML an administrative subpoena demanding production of the same 21 categories of documents and information and an interview with Hanneman. (ECF No. 3-6.) NML responded by petitioning the agency to revoke or modify the subpoena. (ECF No. 3-7.) The petition acknowledged that the agency had the statutory authority to access information to investigate McNulty's claims. (*Id.* at 3.) But NML highlighted its long history as a good "corporate citizen" and denied any form of discrimination with respect to McNulty. (*Id.* at 2–3.) The company also downplayed McNulty's allegations as "weak (indeed, spurious)," insisted the subpoena was improper, and accused the agency of having an "improper motive." (*Id.* at 3–4.) It further objected

to several requests on burdensomeness, employee privacy, relevance, and ambiguity grounds.  (*Id.* at 10, 15, 21, 49.)

On September 4, 2025, the EEOC denied NML's petition in a 12-page written determination.  (ECF No. 3-8 at 11–12.)  The agency emphasized that it needed to assess the claims raised by the charge and was using its subpoena power to obtain the information necessary to do so.  (*Id.* at 11.)  It clarified that it had not made any finding that NML had in fact engaged in discrimination. (*Id.* at 5.)  The agency addressed and rejected NML's legal arguments, concluding they were all based on the "same flaw"—NML's subjective belief that the charges were baseless and its DI practices lawful.  (*Id.* at 5–6.)  The EEOC explained that it was not required to make a finding of discrimination *before* investigating the matter and that it would not determine whether to file a lawsuit until after its investigation.  (*Id.* at 6.)  The agency confirmed that if it decided to file a lawsuit, NML would *then* be able to present its factual and legal defenses.  (*Id.* at 6–7.)  The EEOC also rejected NML's handful of response-specific objections.  (*Id.* at 7–10.)

NML declined to accept this ruling and informed the EEOC that it was standing on its objections.  (ECF No. 3-9.)  The agency then filed this action to enforce its subpoena.  (ECF No. 1.)  In connection with the filing, the agency also issued a press release.  (ECF No. 14-7 at 2.)  The press release announced the agency's effort to seek court-enforcement of the subpoena and included a quote from the EEOC chair, explaining the agency's responsibility under Title VII to confront unlawful employment practices and emphasizing that when there are "clear indications" that an employer's diversity programs might violate federal discrimination law, the agency would use the full extent of its authority, including subpoena enforcement, to investigate.  (*Id.* at 3.)[1]

## LEGAL STANDARD

Title VII prohibits various types of employment discrimination, including employer actions based on "race, color, religion, sex, or national origin."  42 U.S.C. §§2000e-2, 2000e-3. Congress has entrusted primary responsibility for enforcing Title VII to the EEOC.  *See EEOC v. Shell Oil Co.*, 466 U.S. 54, 61–62 (1984) (citing 42 U.S.C. §2000e-5).  The statutory regime provides the EEOC with "an integrated, multistep enforcement procedure" to detect and remedy employment discrimination.  *Id*. at 62 (citing *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 359

---

[1] On September 8, 2025, four days after the agency rejected the company's challenge to the subpoena, NML terminated McNulty's employment.  (ECF No. 14-4 at 36–46.)  That termination is not a part of the current charge or a basis for the current subpoena.

(1977)). The procedure begins when an aggrieved individual or a member of the EEOC files a charge alleging that an employer has engaged in an unlawful employment practice. 42 U.S.C. §2000e-5(b). After the charge is filed, the EEOC has a duty to investigate the allegations. *Id.*

The agency's investigatory powers include the ability to inspect and copy "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by [Title VII] and is relevant to the charge under investigation." *Id.* §2000e-8(a). The agency also has the power to issue administrative subpoenas and, if necessary, obtain court enforcement of those subpoenas. *Id.*; 29 C.F.R. §1601.16(a), (d). When a federal court is asked to enforce an administrative subpoena, the proceedings are summary in nature. *EEOC v. Tempel Steel Co.*, 814 F.2d 482, 485 (7th Cir. 1987). The court's role is "limited" to determining whether the investigation is within the agency's authority and whether the information sought is "reasonably relevant" to the investigation. *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 649 (7th Cir. 2002); *McLane Co., Inc. v. EEOC*, 581 U.S. 72, 76–77 (2017); *EEOC v. Aerotek, Inc.*, 815 F.3d 328, 333 (7th Cir. 2016).

Given the importance of allowing an agency to investigate potential violations, the law heavily favors enforcement. In determining whether an investigation is within an agency's authority, the Court must not use the enforcement proceeding "to test the strength" of the underlying charge of discrimination. *McLane*, 581 U.S. at 76. While the underlying charge must be within the agency's remit, "[w]hether a specific charge is valid is determined from the face of the charge, not from extrinsic evidence." *United Air Lines*, 287 F.3d at 650. As for relevance, the "EEOC's burden is not particularly onerous." *Id.* at 652. Courts are to be "generous" in defining relevance: relevance is "virtually any material that might cast light on the allegations against the employer." *Shell Oil*, 466 U.S. at 68–69. At the same time, relevance should not be interpreted so broadly as to render the requirement a "nullity." *Id.* at 69. In assessing relevance, the Court's inquiry is fact-intensive and is "generally not amenable to broad *per se* rules." *Walsh v. Alight Sols. LLC*, 44 F.4th 716, 722 (7th Cir. 2022) (quoting *McLane*, 581 U.S. at 81). If the Court determines the charge is proper and the material requested is relevant, it must enforce the subpoena unless the employer establishes that the subpoena is too indefinite, has been issued for an illegitimate purpose, or is unduly burdensome. *McLane*, 581 U.S. at 77. This too is a high standard. *See Alight Sols.*, 44 F.4th at 722.

**ANALYSIS**

NML offers two main challenges to enforcement of the EEOC subpoena. First, NML contends that the subpoena exceeds the agency's authority because the underlying charge, and corresponding notice, lack the detail necessary to support an investigation into the alleged systemic discrimination. Second, NML offers a series of objections to some of the information requests in the subpoena. As explained below, neither challenge provides a basis for this Court to interfere with the agency's attempt to investigate the pending charge. Accordingly, the Court will order the administrative subpoena enforced.

**I. The Charge and Notice Provide Sufficient Specifics to Trigger the Agency's Duty to Investigate the Allegations of Systemic Discrimination.**

NML's primary attack on the EEOC's subpoena relates to the validity of the charge and the agency's attempt to investigate the allegations made. The Supreme Court has confirmed that an administrative subpoena is not enforceable if the underlying investigation falls outside the agency's statutory authority and jurisdiction. *See McLane*, 581 U.S. at 76–77. In the context of the EEOC, the agency's investigative authority and jurisdiction depend on the existence of a valid charge of employment discrimination. *See United Air Lines*, 287 F.3d at 650. Accordingly, if the agency has not received a valid charge that is sufficient to support an investigation, the agency lacks jurisdiction, and a district court cannot enforce a subpoena related to the investigation of the allegations in the charge.

The jurisdictional burden is not a heavy one, however. A valid discrimination charge under Title VII, and the applicable EEOC regulations, must only meet certain "minimal requirements." *Shell Oil*, 466 U.S. at 67. The charge itself must be made in writing and under oath. *Id.*; 42 U.S.C. §2000e-5(b). It must also satisfy additional requirements enacted through agency regulations. Under 29 C.F.R. §1601.12(a), a charge must contain:

(1) The full name and contact information of the person making the charge [unless made on behalf of another person];

(2) The full name and contact information of the person against whom the charge is made, if known (hereinafter referred to as the respondent);

(3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices: See §1601.15(b);

(4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and

(5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

NML's attack highlights the third requirement. The company asks the Court to deny enforcement of the EEOC's subpoena on grounds that the underlying charge made by McNulty lacks a clear and concise statement of the facts of the alleged discrimination as required by 29 C.F.R. §1601.12(a)(3). (ECF No. 13 at 16–21.) Specifically, NML faults the charge for failing to explain in greater detail how the charging party believes NML employees other than McNulty were discriminated against on the basis of race, color, and national origin.[2] (*Id.* at 18.) As a consequence of this failure, NML insists that the notice it received from the EEOC of the charge is likewise deficient. (*Id.* at 19.) This argument overstates the requirements needed to maintain a valid charge of discrimination.

More than 40 years ago, the Supreme Court addressed (and rejected) an employer's similar effort to avoid compliance with an EEOC subpoena. In *Shell Oil*, the Court dealt with an administrative subpoena issued by the EEOC as part of its attempt to investigate a Title VII charge initiated by an EEOC Commissioner against an oil company. 466 U.S. at 57. The charge alleged a pattern and practice by the employer of discriminating "against Blacks and females on the basis of race and sex with respect to recruitment, hiring, selection, job assignment, training, testing promotion, and terms and conditions of employment" at a refinery in Missouri. *Id*. The charge identified multiple job categories allegedly affected by racial or gender discrimination. *Id*. The agency provided notice of the charge to the employer, along with a request for information related to the allegations, but the employer refused to comply on grounds that it believed the charge was not supported by the facts. *Id.* at 57–58. When negotiations for a voluntary exchange of information failed, the EEOC served an administrative subpoena and, ultimately, a petition for

---

[2] NML does not appear to contest the validity of McNulty's individual charge of discrimination. (ECF No. 13 at 21 ("[T]here *arguably* is a valid charge supporting the EEOC's investigation into McNulty's *individual* claim of discrimination.").) Because the company's arguments are focused on the EEOC's attempt to investigate the allegations of discrimination against other employees (i.e. systemic discrimination), the Court's analysis primarily addresses those aspects of the charge. Indeed, there can be little doubt that the individual charge satisfies the statutory and regulatory requirements.

court enforcement of that subpoena. *Id.* at 59–60. The district court granted the EEOC's petition, but the Eighth Circuit reversed, accepting the employer's position that the discrimination charge was invalid, and the subpoena unenforceable, because the charge failed to include sufficient factual and statistical information to support it. *Id.* at 60–61.

The Supreme Court granted certiorari and reversed. *Id.* at 61. The Court first confirmed that the EEOC's jurisdiction and investigative authority are "tied" to the charge filed with the commission and that the agency is only entitled to access documents and information relevant to the charge. *Id*. at 64. Thus, enforceability of an administrative subpoena depends on whether the underlying charge is valid. *Id*. at 64–65. But the Court then emphasized the relatively light burden that must be overcome to establish a valid charge under Title VII and the applicable EEOC regulations. *Id*. at 67. The statute merely requires that the charge be "in writing," made "under oath or affirmation," and "contain such information and be in such form as the Commission requires." *Id*. (quoting 42 U.S.C. §2000e-5(b).) With respect to the Commission's requirements, the Court confirmed that 29 C.F.R. §1601.12(a)(3) requires the charge to identify only four basic pieces of information: (1) "the groups of persons that [the Commissioner] has reason to believe have been discriminated against," (2) "the categories of employment positions from which they have been excluded," (3) "the methods by which the discrimination may have been effected," and (4) "the periods of time in which he suspects the discrimination to have been practiced." *Id.* at 73.[3] The Court held that the charge "plainly satisfied" both the statutory and regulatory standards. *Id.* It further held that the EEOC satisfies Title VII's notice requirements so long as it provides the employer with the information necessary to support a charge under the regulation. *Id.* at 81. In reaching these conclusions, the Court specifically rejected the notion that an employer could avoid an EEOC investigation into allegations of discrimination by insisting on its own innocence and demanding the agency provide greater detail before the investigation had even begun. *Id*. at 68–70, 81. The Supreme Court explained that a discrimination charge is not the equivalent of a civil complaint but instead serves simply to govern the scope of relevant evidence, making it "crucial" that the agency's ability to investigate not be impaired. *Id*. at 67–68.

Consistent with the Supreme Court's teaching in *Shell Oil*, the charge at issue here also "plainly satisfies" the statutory and regulatory requirements. The charge alleges that McNulty and similarly situated individuals were discriminated against based on their sex (male), race (White),

---

[3] The regulation was amended in November 2020, but the relevant language remains substantially unchanged.

color, and national origin (American).  (ECF No. 3-1.)  It identifies the method of discrimination—NML's enhanced DI policy, which the company allegedly used to unlawfully advance and promote less qualified women and people of color.  (*Id.*)  With respect to the positions impacted, the allegations of individual discrimination identify two specific positions—a potential promotion to Vice President and a Chief Compliance Officer position—denied to McNulty.  (*Id.*)  In terms of timing, the charge identifies that the discrimination commenced with the enactment of the enhanced policy "in or about 2020."  (*Id.*)

NML is correct that the charge does not identify any specific positions that were impacted by the alleged systemic discrimination against other NML employees.  But this omission does not affect the validity of the charge or the agency's ability to investigate a claim of this type of discrimination.  In *EEOC v. Quad/Graphics*, 63 F.3d 642 (7th Cir. 1995), the Seventh Circuit explained that the EEOC can investigate charges of systemic discrimination against groups of protected employees without first identifying specific jobs or positions that may have been impacted.  In *Quad/Graphics*, the Commissioner of the EEOC filed a charge alleging that the company had violated Title VII beginning in 1991 and onward by "[f]ailing to recruit and/or hire Asians, Hispanics, and individuals over the age of 40 because of their race, national origin and/or age."  63 F.3d at 644.  The respondent refused to comply with subsequent requests for information, and the EEOC eventually sought subpoena enforcement.  *Id.*  Although the respondent insisted that the charge needed to specify the job classifications under investigation, the district court rejected that argument and enforced the subpoena.  *Id.*  The Seventh Circuit affirmed, holding that, when a charge alleges this form of systemic discrimination, "the absence of a delineation of the affected job classifications represents a judgment that, at least at this initial investigative stage, the possibility of discrimination pervading all areas of the company's employment must be considered."  *Id.* at 647.  The Seventh Circuit agreed that the charge needed to provide some "meaningful limitations," but concluded that because the charge identified the suspected illegality, the targets of the discrimination, the type of discrimination, and the timeframe, it was sufficient.  *Id.* at 648.  Because the charge here includes the same meaningful limitations, it is also valid.

NML highlights language from *Shell Oil* and *Quad/Graphics* emphasizing that the EEOC should identify the alleged unlawful employment practices with "as much precision" as the agency can "muster."  (ECF No. 13 at 16.)  This is descriptive language, not a hard-and-fast legal standard, and NML takes it out of context.  As *Shell Oil* makes clear, a charge should provide sufficient

information concerning the alleged discrimination to give the employer fair notice. 466 U.S. at 73–74. And while the complainant and agency should endeavor to be clear, they are not required to lay out specific instances of discrimination in the charge. Indeed, imposing such a requirement would be inconsistent with Title VII. As the Supreme Court explained, the regulation is simply intended to "encourage complainants to identify" discriminatory practices "with as much precision as they can muster." *Id.* at 72. The Supreme Court emphasized that the charge need not provide even the minimal level of detail required by the notice pleading requirements in the Federal Rules of Civil Procedure; a valid charge of discrimination "is not the equivalent of a complaint initiating a lawsuit." *Id.* at 68. And while NML is correct that the Seventh Circuit has since stated that a charge should "identify as precisely as possible the appropriate area of inquiry," the Court of Appeals made clear that a charge's "appropriate area of inquiry" can be quite broad while remaining valid. *Quad/Graphics* 63 F.3d at 647–48.

The Court declines NML's invitation to impose a specificity requirement for charges of systemic discrimination, akin to the requirements for pleading fraud under Federal Rule of Civil Procedure 9(b). Such a particularity requirement would stand the holding in *Shell Oil* on its head. While the EEOC cannot proceed with an investigation if the underlying charge contains only conclusory allegations, for example that an employer has generically violated Title VII, the charge at issue here does far more than that. It identifies the allegedly problematic "enhanced" DI policy, which it contends was used in a discriminatory fashion during an identifiable period of time. The charge is therefore valid, the agency's jurisdiction sound, and the subpoena enforceable.

NML complains that the EEOC's refusal to provide more detail "robs [it] of the opportunity to defend itself," (ECF No. 13 at 20), and maintains that, if the EEOC provided additional facts, it could raise a defense under Section 713 and stop the investigation before it begins, (*id.* at 22–24). But this misunderstands the nature of an EEOC investigation of discrimination under Title VII and the agency's regulations. Once a valid charge is made (and the Court has already found the charge sufficient and valid), the EEOC must provide notice of the charge to the employer (which the record confirms was done), at which point, the agency's jurisdiction is secured and its duty to investigate is triggered. This Court's role is simply to confirm the validity of the charge and the agency's jurisdiction and then to enforce the subpoena and permit the agency to complete is statutorily mandated duty to investigate. At this stage, the Court does not adjudicate the merits of the employee's allegations or the employers' defenses. *See Tempel Steel*, 814 F.2d at 485 (quoting

*EEOC v. South Carolina Nat'l Bank*, 562 F.2d 329, 332 (4th Cir. 1977)) ("In a subpoena enforcement proceeding, the role of the court is 'sharply limited.'"). If the investigation leads to a formal complaint, NML will then have the opportunity to present its defenses.

Likewise, the company cannot insist that the EEOC provide it with information relevant to its potential defenses as a condition of responding to the subpoena. The Supreme Court rejected the employer's substantially similar approach in *Shell Oil*. As discussed above, the oil company had insisted that the EEOC provide statistical information related to a potential defense as a condition of its compliance with the agency's subpoena. 466 U.S. at 58. But the Supreme Court held this improper and explained that imposing "a duty to reveal [] information that precipitated [a] charge would enable a recalcitrant employer" to "hamper significantly the [EEOC's] ability to investigate." *Id.* at 72. Accordingly, a charge is not required to provide information sufficient to establish a defense to it, and a respondent cannot condition its cooperation with an agency investigation on the agency's own production of information related to the charge. Again, if this investigation results in a lawsuit, then NML will have the opportunity to take discovery and present a defense. An employer does not have the right to discovery as a condition of cooperating in an investigation.

Nor does the language in Section 713 providing a defense that would "bar" the "action or proceeding" support NML's effort to preempt the agency's investigation. Section 713 creates a defense against potential Title VII liability if the employer shows that it acted "in good faith, in conformity with, and in reliance on any written interpretation or opinion" of the EEOC. 42 U.S.C. §2000e-12(b). NML suggests that it will succeed on a Section 713 defense and that this should bar the EEOC's investigation before it starts. (*See* ECF No. 13 at 22–24.) But, again, now is not the time to present or adjudicate this or any other defense. This proceeding remains in the investigative stage. A charge against an employer does not "assume the form of an adversary proceeding" until after the investigation concludes and, even then, only if the EEOC determines there is "reasonable cause to believe that the charge is true." *Shell Oil*, 466 U.S. at 68; §2000e-5(b), (f)(1). Unless and until this charge results in an adversarial proceeding, it is premature to consider the merits of NML's potential defenses.

Finally, NML's complaints about an EEOC press release are factually off the mark and are insufficient for this Court to find the agency is acting in bad faith. The company contends the press release wrongfully accuses it of discrimination by suggesting that NML's DI policies gave

"clear indications" of Title VII violations, (ECF No. 13 at 16–17), but that is not accurate. The challenged language in the press release states:

> "Title VII charges the EEOC with confronting unlawful employment practices," said EEOC Chair Andrea Lucas. "When we see clear indications that an employer's DEI program may violate federal prohibitions against discrimination, we will use the full extent of our authority—including subpoena enforcement—to obtain the information needed to investigate and take appropriate action."

(ECF No. 14-7 at 3.) This quotation from the EEOC's Chair simply describes the agency's powers and investigatory duties. It confirms that when the EEOC identifies a program that "*may* violate federal prohibitions against discrimination," it will use its subpoena enforcement powers to investigate if necessary. (*Id.* (emphasis added).) The press release does not indicate that the EEOC has improperly prejudged the charge against NML or that the agency's administrative subpoena was issued for an improper purpose.

## II.     NML's Objections to Specific Aspects of the Administrative Subpoena Do Not Bar Enforcement.

NML also offers a handful of objections to specific requests for information demanded under the subpoena. The company maintains that, even if the charge is valid, the Court should decline to enforce multiple requests (Nos. 5 and 8–18) because they seek irrelevant information and are overbroad and too indefinite. NML also raises privacy and confidentiality concerns, noting that several of the requests seek potentially private information about other NML employees, and therefore asks for entry of a protective order. As explained below, the Court finds NML's specific objections largely unavailing and will therefore enforce the subpoena. The Court will, however, enter a protective order safeguarding other individuals' reasonable privacy interests and precluding the EEOC from disclosing certain information to McNulty when disclosure is not necessary for the EEOC to complete its investigation.

Request No. 5 in the EEOC's subpoena asks NML to produce personnel files, excluding leave and benefits information, for specific company executives, department heads, and company officers that were listed in NML's position statement. (ECF No. 3-4 at 4; ECF No. 3-6 at 3–4; ECF No. 3-3 at 4–5, 9, 12–13, 24–25, 34–36, 42–43, 150.) NML objects that the EEOC has not explained why the files are relevant and has therefore waived any effort to respond to this objection (although NML does not explain why it believes the requests are not relevant). (ECF No. 13 at 28.) NML also objects on privacy grounds, explaining that information in these personnel files should not be shared with McNulty. (*Id.* at 28–29.)

The Court declines to find that the EEOC has waived its right to respond to NML's relevancy objection. In denying NML's petition to revoke the subpoena, the EEOC noted that NML had taken a "kitchen sink approach" (objecting on all bases), and the agency therefore focused on the most significant objections. (ECF No. 3-8 at 7 n.1.) It interpreted NML's objection to Request 5 as a privacy concern, which it maintained was not a basis to revoke a subpoena. (*Id.* at 9.) The EEOC's opening brief also construed NML's objection as one of privacy, not one of relevance, and analyzed it under the unduly burdensome prong. (ECF No. 2 at 11.) Given the context, the agency's approach was reasonable and did not constitute a waiver.

The EEOC has further explained that the files targeted in the request relate to NML executives and officers who were specifically identified by NML in its position statement along with employees who received promotions, made promotion decisions, were in leadership, or were similarly situated to McNulty. (ECF No. 25 at 53:15–54:1; ECF No. 18 at 10–11.) The record confirms the EEOC's explanation, (ECF No. 3-3 at 4–5, 9, 12–13, 24–25, 34–36, 42–43, 150), and this is sufficient to make the materials relevant. If NML itself found these individuals significant enough to identify in its position statement, the requested materials are relevant. As for NML's privacy argument, as the EEOC maintains, that is not a basis for denying subpoena enforcement. *See McLane*, 581 U.S. at 77. As discussed below, the Court will enter a protective order to address any legitimate privacy concerns. Accordingly, Request 5 is enforceable.

Requests Nos. 8–10 seek the production of information and documents related to NML's affirmative action plans, documents the company used to develop its DI policies, and complaints made about the company's DI policies and their implementation. NML maintains that affirmative action plans are not relevant to prove discrimination. (ECF No. 13 at 29.) It further insists that these requests are "incredibly overbroad and indefinite" because, while it understands what DI means, it uses the term "DI" to include policies, procedures, and training outside of sex, race, color, and national origin. (*Id.* at 27.) These arguments are unavailing. The Seventh Circuit has confirmed that affirmative action plans can be relevant to determining whether Title VII was violated. *See McQuillen v. Wis. Educ. Assoc. Council*, 830 F.2d 659, 666 (7th Cir. 1987) (explaining that an affirmative action plan can violate Title VII if used to make a hiring decision, but that the plaintiff had not established the employer acted pursuant to the affirmative action plan when it did not hire him); *see also Rudin v. Lincoln Land Comm. Coll.*, 420 F.3d 712, 722 (7th Cir. 2005) (explaining that affirmative action plans can establish discriminatory intent for a Title

VII claim).  Moreover, the Court is required to apply an even broader interpretation of relevance in a subpoena enforcement proceeding.  *See United Air Lines*, 287 F.3d at 652.  The affirmative action plans are therefore relevant.

NML also objects on both indefiniteness and overbreadth grounds, but the terms are not synonymous, and the Seventh Circuit has explained that they should be distinguished.  *See Alight Sols.*, 44 F.4th at 724.  A subpoena request is indefinite and will not be enforced "if its demands are overly vague or amorphous."  *Id.*; *McLane*, 581 U.S. at 77.  The Court does not agree that the subpoena's requests are indefinite.  The requests piggyback on the allegations in the underlying charge and on NML's own definition and use of the term DI.  Having specifically adopted a "DI" policy, NML can certainly be expected to understand the term in its own usage.  NML cites a number of cases to support its position, but none of the cited cases involve judicial enforcement of administrative subpoenas, which involves a broader relevance standard, or a court finding that the term DI was indefinite when it was previously used and defined by the party asserting indefiniteness.  *See Nat'l Ass'n for Advancement of Colored People v. U.S. Dep't of Educ.*, 779 F.Supp.3d 53, 64–65 (D.D.C. 2025); *see also Am. Pub. Health Ass'n v. Nat. Insts. of Health*, 786 F.Supp.3d 237, 259 n.5 (D. Mass. 2025); *San Francisco Unified Sch. Dist. v. AmeriCorps*, 789 F.Supp.3d 716, 748–50 (N.D. Cal. 2025); *Chi. Women in Trades v. Trump*, 773 F.Supp.3d 592, 606–07 (N.D. Ill. 2025).

Overbreadth is not a reason to quash a subpoena, *McLane*, 581 U.S. at 77, and an argument of overbreadth must be reframed as one of relevance or undue burden, *Alight Sols.*, 44 F.4th at 724.  When NML's overbreadth argument is distinguished from its indefiniteness objection, the employer appears to be challenging the relevance of the requests, rather than their undue burden.  NML's position seems to be that the underlying charge pertains to discrimination on the basis of race, sex, and national origin, and therefore DI policies outside of those categories will bear little light on the underlying charge.  But the requests, when read in full and as explained above, are relevant.  The agency has been presented with a valid charge that NML's DI policies resulted in discrimination.  All of the challenged requests are specifically tied to the company's allegedly unlawful DI policies.  The requests therefore "cast light" on the allegations in charge and fall within the broad definition of relevancy applicable in the administrative subpoena context.  *Shell Oil*, 466 U.S. at 68–69.  While the production of materials in response to this request without more filters may result in the production of additional, irrelevant information, that is not a basis to reject

the EEOC's subpoena. *Cf. Pursley v. City of Rockford*, No. 18 CV 50040, 2020 WL 7260797, at *3 (N.D. Ill. Dec. 10, 2020) (collecting cases) ("The fact that a document responsive to a discovery request contains relevant and responsive information alongside irrelevant and non-responsive information does not impact the document's discoverability."). And, without knowing the contents of NML's files concerning its DI policies and procedures, it would obviously be impossible for the EEOC to craft perfectly narrow requests that only capture relevant materials. That is not the relevancy standard in any event. Accordingly, the Court finds Requests 8–10 enforceable.

Requests Nos. 11–14 seek documents that relate to NML's training programs, including training programs for which participation was specifically conditioned based on race, national origin, sex, or sexual orientation, programs for which participation was not conditioned based on those factors, and lists of participants for both types of training. NML maintains that the requests impermissibly call for the production of documents that are applicable to the company's field agents, which the company contends are independent contractors, not employees.[4] (ECF No. 13 at 24–26.) This is not a basis for NML to withhold relevant documents of information. As an initial matter, the requests do not appear to be limited to training applicable only to field agents. By their terms, they seek documents and information relating to all training offered by NML, encompassing both employee training and independent contractor training. Regardless, even if NML's field agents are independent contractors (and the Court makes no determination on that issue), this legal conclusion would not affect the relevancy of the EEOC's inquiry. Communications with field agents may bear on NML's intentions and conduct with respect to its actual employees. The company's communications with and training of its independent contractors could certainly cast light on its parallel conduct and intentions toward its employees. These materials are therefore relevant, regardless of the legal character of the persons who were trained.

Relatedly, NML argues that the EEOC is not entitled to documents or information responsive to these requests because they relate to employees doing different work in different locations than McNulty. Relying upon the Seventh Circuit's decision in *United Air Lines*, NML insists that, because McNulty worked exclusively in the Milwaukee office, the EEOC cannot request documents that pertain to its financial advisors who work across the country. (*Id.* at 26.)

---

[4] NML also maintains that these requests are overbroad and indefinite, but the Court reframes these arguments as one of relevancy for the reasons already explained. (*See* ECF No. 13 at 27.)

This misreads the Seventh Circuit's holding. In *United Air Lines*, the EEOC attempted to enforce a subpoena in connection with a United States citizen-flight attendant living in France who alleged that the airline violated Title VII when it failed to contribute to the French social security system on behalf of flight attendants who were U.S. citizens. 287 F.3d at 646. In investigating the charge, the EEOC requested information concerning all airline employees who resided abroad, and the airline objected based, in part, on relevancy. *Id.* at 646–48. The Court of Appeals reversed the district court, which enforced the subpoena after concluding the requests were relevant, and emphasized the narrow allegations within the charge. *Id.* at 649, 654–55. The subpoena sought information "far beyond" the relevant inquiry of payment into the French social security system on behalf of the airline's United States citizen-employees: the Court of Appeals could not see how such a broad request related to the employee's specific charge of discrimination. *Id.* at 654–55. The Seventh Circuit did note that, if the EEOC discovered evidence of systemic discrimination, it could file a commissioner's charge incorporating the allegations, at which point its investigation would broaden, and the requests would become relevant. *Id.* at 655 n.7. Unlike the charge in *United Air Lines*, the charge at issue here *does* involve alleged systemic discrimination. Accordingly, the information requested could reasonably cast light on issues related to that alleged systemic discrimination against employees in other positions, work units, and locations. Given the nature of the charge and the underlying allegations, the EEOC is entitled (indeed, obligated) to investigate other areas of employment and individuals to whom the "enhanced" DI policy applied to determine whether NML is engaging in systemic discrimination. Accordingly, Requests 11–14 are enforceable.

Request No. 15 demands the production of any reports or summaries maintained by NML that consolidated information about DI. NML argues that this request seeks information that is not relevant.[5] But the charge alleges that NML's DI policies violate Title VII, and reports and summaries of NML's DI policies would therefore "cast light" on those allegations and help the agency determine whether they are valid. This request is therefore enforceable.

Requests Nos. 16, 17, and 18 seek documents and information related to an NML racial initiative, the company's strategy to "grow" using DI, and a company DI award. NML argues that these initiatives, strategies, and awards only apply to its field agents and are therefore not relevant

---

[5] NML's argument is labeled as indefiniteness and overbreadth, but the Court reframes it for the reasons already explained. (*See* ECF No. 13 at 27.)

for the same reasons it believes Requests 11–14 are not relevant. (ECF No. 13 at 24–26.) The Court rejects these arguments for the reasons previously explained.

Finally, NML raises a privacy concern and objects to the EEOC potentially sharing information obtained through the subpoena with McNulty. (*Id.* at 28–29.) It explains that the personnel files contain sensitive, private information and that the EEOC cannot share the information with McNulty without violating the privacy rights of other employees. (*Id.*) In response, the EEOC bluntly contends that it is not obligated to agree to protect other employees' privacy rights from the charging party. (ECF No. 18 at 11–12.) The agency also points to provisions in Title VII and Supreme Court precedent permitting it to share information with McNulty as necessary to conduct its investigation. (*Id.* at 12.) Given the EEOC's refusal to make any concession to respect the privacy rights of its other employees, NML asks the Court to restrict the EEOC from disclosing to McNulty documents or information responsive to Request Nos. 1(i), 5, 6, and 10 (all which seek information within personnel files). (ECF No. 24 at 7.)

At oral argument, the Court ordered supplemental briefing on its authority to enter a protective order in connection with an agency subpoena, and the parties have made additional submissions setting forth their respective positions.[6] (ECF No. 23, 24, & 26.) In support of its confidentiality position, NML cites two provisions of Title VII, §§2000e-5(b), 2000e-8(e), which make it unlawful to make the contents of a charge or any information obtained by the EEOC in an investigation public. (ECF No. 24 at 3–10.) NML also cites the Supreme Court's decision in *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 601–04 (1981) and argues that an employer is entitled to assurances that a charging party will not see other employees' personnel files. (*Id.*) For its part, the EEOC's supplemental briefing focuses on provisions in Title VII that expressly *permit* the agency to disclose investigative material to the charging party. (ECF No. 26 at 2–6.) The agency also argues that NML is misreading *Associated Dry Goods* and that there is no reason to depart from Title VII's statutory allowance that the agency has permission to disclose investigatory materials to the person making the charge. (*Id.*)

In *Associated Dry Goods*, the Supreme Court considered the meaning of "public disclosure" under Title VII. 449 U.S. at 592. The case involved an employment discrimination

---

[6] NML's supplemental brief also includes additional relevancy arguments not previously raised. (ECF No. 24 at 10–13.) These additional arguments are beyond the scope of the supplemental briefing the Court permitted and will not be considered. (*See* ECF No. 23 at 2 ("[NML] has until May 8, 2026 to file a supplemental brief *concerning the privacy/confidentiality issue* discussed on the record." (emphasis added)).)

charge made by seven employees who alleged either sex or racial discrimination. *Id.* at 593. The employer refused to provide the EEOC with documents relating to its general personnel practices absent an agreement that the agency would not disclose the information to the charging parties. *Id.* The EEOC refused to agree to this condition, issued a subpoena, and declined to revoke it. *Id.* at 593–94. The employer then asked a district court to enjoin the EEOC, but the court ordered the subpoena enforced on the condition that the EEOC treat the charging parties as members of the "public" to whom it could not disclose information in its files. *Id.* at 594–95. The Fourth Circuit affirmed. *Id.* The Supreme Court granted certiorari and then reversed and remanded the case for further proceedings. *Id.* at 604. The Court held that Sections 2000e-5(b) and 2000e-8(e) do not *prohibit* disclosure to the charging party. *Id.* at 598–604. But the Court also made clear that a charging party is a member of a public with respect to charges filed by others—"[w]ith respect to all files other than his own, he is a stranger." *Id.* at 603. The Court agrees with the EEOC that under *Associated Dry Goods* the agency is allowed to share with McNulty, the charging party, information within his own investigative file that is relevant to his claim.

NML insists, however, that the Supreme Court's use of the word "file" in *Associated Dry Goods* refers solely to the charging party's own personnel file, not to all the information in the EEOC investigative files, which likely include information related to other employees. (ECF No. 24 at 4–6.) It therefore maintains that the EEOC may only lawfully share with McNulty investigative information pertaining to his own file. (*Id.*) NML also asks the Court to enter a protective order, keeping sensitive documents away from McNulty, and cites several administrative subpoena cases in support of its request. (*Id.*); *see EEOC v. St. John Hosp. & Med. Ctr.*, No. 12-50225, 2012 WL 38887626, at *10 (E.D. Mich. June 1, 2012) (entering a protective order after enforcing an administrative subpoena for the production of medical information); *see also EEOC v. Aon Consulting, Inc.*, 149 F.Supp.2d 601, 609 (S.D. Ind. 2001) (entering a protective order after enforcing an administrative subpoena for production of information concerning employment tests); *EEOC v. C&P Telephone Co.*, 813 F.Supp. 874, 876–77 (D.D.C. 1993) (doing the same); *EEOC v. Farmer's Pride, Inc.*, No. 12-MC-148, 2012 WL 5363145, at *9 (E.D. Pa. Oct. 31, 2012) (entering a protective order after enforcing an administrative subpoena to protect privacy interests in personnel files).

The Court does not read *Associated Dry Goods* as broadly as NML. In fact, in explaining its holding that a charging party is not a member of the public, the Supreme Court stated that the

charging party is a "private attorney general," whose role is parallel to that of the EEOC. *Associated Dry Goods*, 449 U.S. at 602–03. It further explained that limiting disclosure to a charging party would interfere with the charging party's role. *Id.* The Court separately noted that charging parties must agree not to disclose information to any other person, except as part of the normal course of litigation after a lawsuit is filed, before being allowed to access investigative files. *Id.* at 597–98 n.12. Accordingly, an order broadly preventing the EEOC from sharing information with McNulty would interfere with the agency's ability to conduct its investigation and improperly impede the goals of Title VII.

The parties' briefing, however, has confirmed that the Court has the authority to enter a protective order under Federal Rule of Civil Procedure 26(c) when asked to enforce an administrative subpoena. Indeed, the Seventh Circuit has implicitly recognized the Court's power to do so. In *Alight Solutions*, the Court of Appeals addressed whether a district court wrongly denied a request for a protective order in the context of an Employee Retirement Income Security Act (ERISA) administrative subpoena. 44 F.4th at 727. The district court denied the respondent's attempt to obtain a protective order in part because the Freedom of Information Act (FOIA) prohibited the Department of Labor from publicizing confidential information. *Id.* at 721. The Seventh Circuit affirmed, explaining that, while the information included confidential information like social security numbers, the respondent had not shown how disclosure would result in the information being revealed to a third party, given FOIA's protections. *Id.* at 727. *Alight Solutions* indicates that a protective order can be appropriate in the administrative subpoena context.

The Court finds good cause to enter a protective order here to protect other NML employees' privacy interests while also ensuring that the EEOC can investigate the charge of discrimination. The Court will therefore allow the EEOC to share only those portions of its investigatory files necessary to consult with McNulty on his specific claims of discrimination. The Court will preclude the EEOC from sharing with McNulty any materials obtained during the investigation that relate to his former colleagues' personnel files (including documents responsive to Requests 1(i), 5, 6, and 10). The EEOC must take affirmative steps to protect the company's and its employees' legitimate privacy interests and limit any disclosures to McNulty, and it is prohibited from sharing files or information except where necessary to consult with McNulty on the strength of his allegations. The Court will hold the EEOC and its counsel strictly responsible for any violations.

**CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the EEOC's administrative subpoena is enforced.

**IT IS FURTHER ORDERED** that the EEOC is precluded from sharing with McNulty the entirety of his former colleagues' personnel files (including documents responsive to Requests 1(i), 5, 6, and 10). The EEOC must take affirmative steps to protect the company's and its employees' legitimate privacy interests and limit any disclosures to McNulty, and it is prohibited from sharing files or information except where necessary to consult with McNulty on the strength of his allegations.

Dated at Milwaukee, Wisconsin on July 27, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge